# DAVID A. THOMPSON
# STECKLOW COHEN & THOMPSON

www.WYLIELAW.COM

217 CENTRE STREET, 6TH FLOOR
NEW YORK, NEW YORK 10013
TEL:   (212) 566-8000
FAX:   (212) 202-4952
DTHOMPSON@WYLIELAW.COM

December 16, 2014

**BY ECF**
Hon. George B. Daniels
United States District Judge
United States Courthouse
500 Pearl St.
New York, NY 10007-1312

      Re:      Garris-Rivers v. The Metropolitan Transportation Authority, et al.,
             13-cv-09034-GBD, regarding discovery sanctions issue raised by letter on
             November 10, 2014 (docket item 53)

Dear Honorable Judge Daniels:

      I write as counsel for the plaintiff in the above-captioned case, regarding the discovery issue first raised by the plaintiff in my letter of November 10, 2014 (docket item 53) (Ex. A). Briefly, the issue is as follows. One of the offenses the plaintiff was arrested for, allegedly, was committing disorderly conduct on platform D of the Jamaica station of the Long Island Railroad. Allegedly, the plaintiff, in her conversation with the defendant police officers, became loud and confrontational. The defendants contend that this conduct provided probable cause for the plaintiff's arrest.[1] The location where this incident occurred was under video surveillance. (*See* Reilly Tr. 29:18-24, Ex. B). Although the notice of claim filed by the plaintiff was received a mere eight (8) days after the incident, the defendants state that the video of the incident was not preserved, and has been destroyed.[2]

      Because the defendants have admittedly destroyed relevant evidence, the plaintiff seeks leave to file the motion for sanctions first discussed in my letter of November 10, 2014. Leave should be granted for the reasons discussed below.

      The legal standard for the imposition of sanctions has three elements, as follows: "Where a party seeks sanctions based on the spoliation of evidence, it must establish that (1) the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2)

---

[1] The defendants do not contend that this is the only justification for the plaintiff's arrest, but it is one of the alleged reasons for her arrest.

[2] In item number 32 of the plaintiff's document requests, the plaintiff requested production of "Any and all photographs or video of the Incident recorded by any equipment owned by the Defendants, maintained by the Defendants, or to which the Defendants have access."

1

the evidence was destroyed 'with a culpable state of mind'; and (3) the destroyed evidence was 'relevant' to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense." *Shrenuj United States v. Rosenthal & Rosenthal, Inc.*, 2014 U.S. Dist. LEXIS 40323 at * 20 (citing *Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 107 (2d Cir. 2002)). Courts in this Circuit have further clarified the meaning of these three elements.

**ELEMENT 1:** "The obligation to preserve evidence arises when 'a party reasonably anticipates litigation.'" *Cohalan v. Genie Indus.*, 2013 U.S. Dist. LEXIS 28532 (S.D.N.Y. Mar. 1, 2013) (quoting *Orbit One Commc'ns, Inc. v. Numerex Corp.*, 271 F.R.D. 429, 435 (S.D.N.Y. 2010)). "Once a party reasonably anticipates litigation, it must suspend its routine document retention/destruction policy and put in place a 'litigation hold' to ensure the preservation of relevant documents." *Regulatory Fundamentals Group LLC v. Governance Risk Mgmt. Compliance, LLC*, 2014 U.S. Dist. LEXIS 107616 (S.D.N.Y. Aug. 5, 2014).

**ELEMENT 2:** In this Circuit, a party manifests a culpable state of mind where "evidence was destroyed 'knowingly, even if without intent to [breach a duty to preserve it], **or** negligently.'" *Hawley v. Mphasis Corp.*, 302 F.R.D. 37, 47 (S.D.N.Y. 2014) (emphasis added) (quoting *Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 108 (2d Cir. Conn. 2002)). "Courts may choose to impose sanctions for ordinary negligence because 'it is cold comfort to a party whose potentially critical evidence has just been destroyed to be told that the spoliator did not act in bad faith.'" *Hawley*, 302 F.R.D. at 47 (S.D.N.Y. 2014) (quoting *Orbit One Commc'ns, Inc. v. Numerex Corp.*, 271 F.R.D. 429, 438 (S.D.N.Y. 2010)).

**ELEMENT 3:** "Relevant" in the spoliation context means something more than "minimally relevant," but not "too strict a standard" of relevance. *Byrnie v. Town of Cromwell Bd. of Educ.*, 243 F.3d 93, 109 (2d Cir. Conn. 2001). The Second Circuit has found relevance to be shown where the destroyed evidence could have "clarif[ied]" the basis of a defense, or addressed inconsistencies in the evidence. *Id.*

In this case, there can be little doubt that "a reasonable party in the same factual circumstances would have reasonably foreseen litigation." *Alexander Interactive, Inc. v. Adorama, Inc.*, 2014 U.S. Dist. LEXIS 84604 (S.D.N.Y. June 17, 2014). The LIRR Claims Department and the MTA Office of General Counsel both received notices of claim from the plaintiff on May 14, 2013, a mere eight (8) days after the incident. (Ex. C). By May 21, 2013 -- fifteen (15) days after the incident -- the LIRR Claims Department had assembled a 23-page incident report in response to the notice of claim, demonstrating that the defendants had actual and conscious notice that litigation was imminent. (Ex. D). Upon information and belief, the video of Platform D would have not have been deleted in the ordinary course of business until a

minimum of thirty (30) days after the incident had passed. The defendants received notice in plenty of time to have acted to preserve video of the incident.

There can be little doubt that the destruction of the video of the plaintiff's arrest was -- at a minimum -- negligent. In addition to having notice of the existence of the claim, the report of the LIRR Claims Department demonstrated that within fifteen (15) days after the incident the defendants knew that their police officers claimed that the plaintiff was arrested for, among other charges (all later dismissed), disorderly conduct on Platform D. The defendants therefore knew all the facts necessary to identify and preserve the relevant video. However, counsel for the defendants has represented that the video was not preserved, and was automatically deleted. The defendants breached their duty "to put in place a 'litigation hold' to ensure the preservation" the video. *Regulatory Fundamentals Group LLC, LLC*, 2014 U.S. Dist. LEXIS 107616. Such negligence is sufficient to justify sanctions. *See Residential Funding Corp.*, 306 F.3d at 108.

Nor can it reasonably be disputed that the destroyed video was "relevant." "[N]o genuine question exists that video footage depicting the scene of an accident ... is likely to contain relevant information," as that term is used in the spoliation context. *Riley v. Marriott Int'l, Inc.*, 2014 U.S. Dist. LEXIS 135728 (W.D.N.Y. Sept. 25, 2014). This general rule applies with special force in this case.

In a case with many factors in common with the defendants' allegations here, the New York Court of Appeals found videotape of the incident to be **not merely relevant, but decisive** in reaching the court's conclusion that there was no probable cause to arrest the defendant for disorderly conduct. *See People v Baker*, 20 N.Y.3d 354 (2013). Because of the similarities in the facts of Baker and the facts alleged by the defendants in this case, the Court of Appeal's decision shows that the video destroyed by the defendants in this case would have been relevant -- and possibly decisive -- in this case as well.

Baker was a case in which, as here, a civilian had a disagreement with the police in a public place, and the civilian was arrested for disorderly conduct based on their alleged conduct towards the police during that disagreement. In Baker, the defendant argued with the police on a city street, cursing at the police and causing a crowd to gather. *Id.* at 357. Here, the plaintiff allegedly raised her voice while disagreeing with the defendant police on Platform D, and allegedly caused passengers on the platform to "definitely pay[] attention ... to what's going on," "almost" causing a crowd to gather. (*See* Rau Tr. 28:22 - 29:8, Ex. E). Neither the defendant in Baker, nor the plaintiff here, were accused of any physically-threatening conduct.

The plaintiff denies that she raised her voice on the platform (*See* Ex F), but if the defendants' allegations were credited, the Court of Appeals decision in Baker shows that video could be decisive in determining whether the plaintiff's conduct in allegedly raising her voice and attracting attention provided probable cause for her arrest on the charge of disorderly conduct. In

3

Baker, the Court of Appeals found videotape of the incident to be decisive in demonstrating that -- even though the defendant in that case raised his voice and caused a crowd to gather -- as a matter of law "defendant's arrest for disorderly conduct was not supported by probable cause due to insufficient proof on the public harm element." *Id.* at 363.[3] In reaching this conclusion, the Court of Appeals relied heavily on video of the incident. The parallels between the facts in Baker and the defendants' allegations in this case show that in this case, video could have been as decisive as it was in Baker.

In Baker, the defendant came into vocal conflict with the police on a city street. The defendant "started backing away from the police vehicle towards the middle of the street, swearing at the officer," and then "repeated the profanity and accused [one of the police officers] of harassing him." *Baker*, 20 N.Y.3d at 357. By reviewing the video incident, the Court of Appeals was able to determine: "It is **clear from the videotape** that the public outburst was extremely brief, lasting about 15 seconds," and that the defendant's profanity was "not accompanied by menacing conduct." *Id.* at 362. On this basis, the court found that even though "a group of bystanders gathered around defendant" (an allegation that has not been made in this case), there was **no probable cause** for the defendant's arrest for disorderly conduct. Reviewing the video, the Court of Appeals held: "[t]he assembly here was comparable to the group that gathered to watch the bar fight in Pritchard because there is no basis to infer that these spectators were motivated by anything other than curiosity." *Id.* at 363 (citing *People v. Pritchard*, 27 NY2d 246 (1970)). The Court of Appeals concluded: "**As is evident from the videotape**, the incident occurred around dinner time on a heavily-populated city street bustling with car traffic and pedestrian activity," so that "there was no significant likelihood that defendant's brief statements--loud though they were--would disrupt peace and order in the vicinity." *Id.*

People v. Baker was decided on February 7, 2013, three months before the incident at issue here. The law of disorderly conduct set forth in that case is the law that applied when the plaintiff was arrested. (No Court of Appeals case since the incident has modified Baker's statement of the law of disorderly conduct). Baker shows that the allegations of P.O. Rau are insufficient to demonstrate probable cause to arrest the plaintiff based on her conduct on Platform D. However, presuming that the defendants are unwilling to concede this point, Baker shows that videotape of this incident would have been critically relevant to disputing the "public harm" element of the offense that the Court of Appeals found determinative under Baker's similar facts. As in Baker, video would have shown whether bystanders (if they reacted at all) reacted with

---

[3] It should be noted that the Court of Appeals was addressing the same question at issue here, whether probable cause existed at the time of the arrest for disorderly conduct. The court was **not** using video to determine whether the circumstances supported a guilty verdict on that charge.

mere "curiosity", whether the platform was "bustling" and thus less likely to be disrupted by mere noise, and whether the alleged disturbance was brief or prolonged.

One appropriate sanction would be an adverse inference instruction at trial. The Second Circuit held that it is within the discretion of a district judge to impose this sanction for the negligent destruction of evidence. *See United States v. Davis*, 531 Fed. Appx. 65, 69 (2d Cir. N.Y. 2013) (citing *Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 108 (2d Cir. Conn. 2002). *See also Valentini v. Citigroup, Inc.*, 2013 U.S. Dist. LEXIS 116473 (S.D.N.Y. Aug. 16, 2013) (describing range of sanctions available). *Cf. Shrenuj*, 2014 U.S. Dist. LEXIS 40323 (deferring determination of nature of sanction until time of trial). As the Second Circuit explained in *Residential Funding*:

> The sanction of an adverse inference may be appropriate in some cases involving the negligent destruction of evidence because each party should bear the risk of its own negligence ... if that is necessary to further the remedial purpose of the inference. It makes little difference to the party victimized by the destruction of evidence whether that act was done willfully or negligently. The adverse inference provides the necessary mechanism for restoring the evidentiary balance. The inference is adverse to the destroyer not because of any finding of moral culpability, but because the risk that the evidence would have been detrimental rather than favorable should fall on the party responsible for its loss. *Residential Funding*, 306 F.3d at 108 (quotations omitted).

Upon information and belief, the defendants contend that the plaintiff's arrest was independently justified by conduct by the plaintiff that occurred on a train, before the plaintiff and her arresting officers exited the train for the platform. It is my impression that the defendants consider that the principal justification for the plaintiff's arrest is to be found in her (alleged) conduct on the train itself. For this reason, it would not be a litigation-ending sanction simply to preclude argument by the defendants that the plaintiff's conduct on the platform provided probable cause for her arrest for disorderly conduct.

For the foregoing reasons, the plaintiff respectfully requests that the Court schedule a Rule 37.2 conference or briefing schedule for this motion.

Undersigned counsel will be traveling overseas from December 18, 2014 through January 9, 2015. I therefore respectfully request that the Court schedule any conference or briefing schedule to commence after my return.

Respectfully submitted,

David A. Thompson