IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X

TAMIKO GARRIS-RIVERS,

Index No. 13cv9034 (GBD)
(RLE)

ECF CASE

PLAINTIFF,

**Plaintiff's Memorandum of
Law in Opposition to the
Defendants' Motion for
Summary Judgment**

-against-

THE METROPOLITAN TRANSPORTATION
AUTHORITY, et al.,

DEFENDANTS.

------------------------------------------------------------------X

David A. Thompson, Esq. [DT3991]
*Stecklow Cohen & Thompson*
*Attorneys for Plaintiff*
217 Centre Street, 6th Floor
New York, New York 10012
Phone: (212) 566-8000
Fax: (212) 202-4952

**<u>TABLE OF CONTENTS</u>**

I.   Introduction ................................................................................................................... 4

II.  The Facts ...................................................................................................................... 5

III. The Applicable Legal Standards ................................................................................. 8

   A.   The Summary Judgment Standard ......................................................................... 8

   B.   The Legal Standard for Claims Under Section 1983 ............................................. 8

     Personal Involvement and Failure to Intervene ......................................................... 9

   C.   The Legal Standard for False Arrest ...................................................................... 9

     The Elements of the Cause of Action ......................................................................... 9

     Probable Cause is an Affirmative Defense ............................................................... 10

     Defendants Bear the Burden to Establish the Existence of Probable Cause ........................ 10

     Probable Cause is a Question for the Factfinder If Facts Are In Dispute ............................ 11

   D.   Federal Excessive Force and State-Law Assault & Battery ............................... 12

   E.   *Respondeat Superior* ......................................................................................... 13

IV.  Probable Cause for the Plaintiff's Arrest Was Lacking ........................................... 13

   A.   The Plaintiff Lacked Unlawful Intent .................................................................. 14

   B.   The Plaintiff Did Not Fail To Pay The Lawful Charge ....................................... 14

   C.   The Plaintiff Did Not Use Unlawful Means to Avoid Payment ......................... 14

V.   Qualified Immunity .................................................................................................... 16

VI.  Plaintiff's Assault, Battery and Excessive Force Claims  Cannot Be Dismissed .................. 18

VII. Certain Points Are Not Disputed ............................................................................... 19

   B.   The Personal Involvement of Defendants Buehler, Willet, and Shek ................ 19

   C.   Defamation ........................................................................................................... 19

   D.   Paragraph 54 of the Amended Complaint ............................................................ 20

VIII.      The Defendants Have Waived All Grounds For Summary Judgment Not Raised In Their Moving Papers ........................................................................................................ 20

IX.  Conclusion ................................................................................................................. 22

## Cases

*Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970) ................................................................ 8

*Am. Home Assur. Co. v. Panalpina, Inc.*, 2011 U.S. Dist. LEXIS 16677 (S.D.N.Y. 2011) ......... 21

*Anderson v. Branen*, 17 F.3d 552 (2d Cir. 1994) .................................................................. 9

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) .......................................................... 8

*Broughton v. State*, 37 N.Y.2d 451 (1975) ................................................................... 10, 11

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) .................................................................. 20

*Davis v. Rodriguez*, 364 F.3d 424 (2d Cir. 2004) ............................................................... 10

*Dickerson v. Napolitano*, 604 F.3d 732 (2d Cir. N.Y. 2010) .................................................. 11

*Domino Media, Inc. v. Kranis*, 9 F. Supp. 2d 374 (S.D.N.Y. 1998) ................................... 20, 21

*Fabrikant v. French*, 691 F.3d 193 (2d Cir. 2012) ............................................................. 21

*Fitzgerald v. City of Troy*, 2013 U.S. Dist. LEXIS 139056 (N.D.N.Y Sept. 27, 2013) ................ 21

*Garnett v. City of New York*, 2014 U.S. Dist. LEXIS 112440 (S.D.N.Y. Aug. 13, 2014) ............. 9

*Gomez v. City of New York*, 2008 U.S. Dist. LEXIS 41455 (S.D.N.Y. May 28, 2008) .......... 11, 16

*Gonzalez v. City of Schenectady*, 728 F.3d 149 (2d Cir. N.Y. 2013) ...................................... 16

*Guilbert v. Gardner*, 480 F.3d 140 (2d Cir. 2007) ............................................................... 8

*Guntlow v. Barbera*, 907 N.Y.S.2d 86 (N.Y. App. Div. 3d Dep't 2010) .................................. 10

*Harlow v. Fitzgerald*, 457 U.S. 800 (1982) ...................................................................... 16

*Jaegly v. Couch*, 439 F.3d 149 (2d Cir. N.Y. 2006) ...................................................... 10, 16

*Jenkins v. City of New York*, 478 F.3d 76 (2d Cir. 2007) ..................................................... 17

*Ky. v. Graham*, 473 U.S. 159 (1985) .............................................................................. 9

*Lepore v Town of Greenburgh*, 120 A.D.3d 1202 (N.Y. App. Div. 2d Dep't 2014) ................... 13

*Lore v. City of Syracuse*, 670 F.3d 127 (2d Cir. N.Y. 2012) ................................................. 9

*McBride v. BIC Consumer Prods. Mfg. Co.*, 583 F.3d 92 (2d Cir. 2009) ................................. 8

*O'Neill v. Krzeminski*, 839 F.2d 9 (2d Cir. 1988) ............................................................... 9

*Ornelas v. United States*, 517 U.S. 690 (1996) ............................................................ 11, 12

*Provost v. City of Newburgh*, 262 F.3d 146 (2d Cir. N.Y. 2001) ............................................ 9

*Ray v. Metropolitan Transp. Auth.*, 221 A.D.2d 613 (N.Y. App. Div. 2d Dep't 1995) ............... 13

*Rivera v. Rochester Genesee Reg. Transp. Auth.*, 702 F.3d 685, 693 (2d Cir. 2012) ........... 8, 11

*Rowley v. City of New York*, 2005 U.S. Dist. LEXIS 22241 (S.D.N.Y. Sept. 29, 2005) ............. 20

*Smolian v Port Auth. of N.Y. & N.J.*, 128 A.D.3d 796 (N.Y. App. Div. 2d Dep't 2015) ............. 12

*Smolian*, 128 A.D.3d 796 ............................................................................................ 19

*Travis v. Village of Dobbs Ferry*, 355 F. Supp. 2d 740, (S.D.N.Y. 2005) .................................. 9

*Trueman v. New York State Canal Corp.*, 451 Fed. Appx. 27 (2d Cir. N.Y. 2011) ..................... 10

*United States v. East River Hous. Corp.*, 2015 U.S. Dist. LEXIS 24924 (S.D.N.Y. Mar. 2, 2015)
................................................................................................................................. 21

*Vt. Teddy Bear Co. v. 1-800-Beargram Co.*, 373 F.3d 241 (2d Cir. 2004) .............................. 21

*Weather v. City of Mt. Vernon*, 474 Fed. Appx. 821 (2d Cir. N.Y. 2012) ................................ 12

*Weyant v. Okst*, 101 F.3d 845 (2d Cir. N.Y. 1996) ............................................................ 10

*Wu v. City of New York*, 934 F. Supp. 581 (S.D.N.Y. 1996) ................................................. 11

*Zellner v. Summerlin*, 494 F.3d 344 (2d Cir. N.Y. 2007) ................................................ 12, 17

## Statutes

Fed. R. Civ. P. 56(c) ..................................................................................................... 8

Penal Law § 165.15(3) ................................................................................................. 13

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

TAMIKO GARRIS-RIVERS,

                            PLAINTIFF,

            -against-

THE METROPOLITAN TRANSPORTATION
AUTHORITY, et al.,

                          DEFENDANTS.
-----------------------------------------------------------------X

Index No. 13cv9034 (GBD)
(RLE)

ECF CASE

**Plaintiff's Memorandum of
Law in Opposition to the
Defendants' Motion for
Summary Judgment**

The plaintiff, Tamiko Garris-Rivers, by her attorney David Thompson of Stecklow

Cohen & Thompson, hereby submits this memorandum of law in opposition to the defendants'

motion for summary judgment.

# I.      Introduction

1.      On May 6, 2013, Tamiko-Garris-Rivers boarded the 6:04 p.m. Long Island Rail

Road ("LIRR") train at Atlantic Terminal, bound for Ronkonkoma.  Because the plaintiff is

married to an LIRR employee, she carried a valid LIRR employee-spousal pass.  The pass

entitled the plaintiff to ride the train without buying a ticket.  She displayed the pass to the

conductor when requested.  Nevertheless, apparently for personal reasons, the conductor declared

that he intended to have pass revoked, and called Metropolitan Transportation Authority

("MTA") Police, who boarded the train at Jamaica Station.  Ms. Garris-Rivers showed these

officers her valid spousal pass.  After a discussion with these officers, during which Ms. Garris-

Rivers offered to buy an additional ticket, the Plaintiff voluntarily exited the train, together with

the officers.  On the platform, the officers placed Ms. Garris-Rivers under arrest.  The officers

confirmed that Ms. Garris-Rivers spousal pass was valid.  Despite this, the officers maintained

Ms. Garris-Rivers under arrest, charging her with theft of services and disorderly conduct.  The

District Attorney rejected the theft of services charge as baseless, substituting a charge of

obstruction of government administration instead.  All charges were dismissed at arraignment.

## II.    The Facts

2.    On May 6, 2013, Tamiko-Garris-Rivers boarded the 6:04 p.m. Long Island Rail

Road ("LIRR") at Atlantic Terminal headed to Ronkonkoma.  (Plaintiff's Affirmative 56.1

Statement ("Pl. Aff. 56.1") ¶ 16).  At that time, Ms. Garris-Rivers' husband, John Rivers, was

employed by the Long Island Rail Road.  (Pl. Aff. 56.1 ¶ 17).  Because of his employment with

the Long Island Rail Road, Mr. Rivers had the right to obtain a spousal pass (the "spousal pass")

for his wife, Ms. Garris-Rivers.  (Pl. Aff. 56.1 ¶ 18).  The spousal pass entitled Ms. Garris-Rivers

to ride the Long Island Rail Road without purchasing a ticket.  (Pl. Aff. 56.1 ¶ 19).  On May 6,

2013, Ms. Garris-Rivers was in possession of her spousal pass.  (Pl. Aff. 56.1 ¶ 20).  Ms. Garris-

Rivers' spousal pass was valid.  (Pl. Aff. 56.1 ¶ 21).

3.    During the trip, the plaintiff displayed her pass in lieu of a ticket, in exactly the

manner in which such a pass is intended to be used.  (Pl. Aff. 56.1 ¶¶ 19, 23).  The plaintiff

displayed the pass to the assistant conductor, Defendant Jonathan Mancini.  (Pl. Aff. 56.1 ¶ 23).

However, Mr. Mancini seemingly took offense at the plaintiff's personal manner.  For her part,

the plaintiff was concerned that Mr. Mancini may have wished to unjustifiably take the plaintiff's

valid spousal pass.  Mr. Mancini apparently reported the interaction as a fare dispute, despite the

fact that the plaintiff displayed her valid pass to him multiple times.  (Pl. Aff. 56.1 ¶ 22).

4.    As a result of Mr. Mancini's actions, several of the defendant police officers, and

defendant Benjamin Gardiner, another LIRR employee, boarded the train at its next stop, Jamaica

Station.  The officers who boarded were Officers Rau, Reilly, Olivares and Haggerty.  (Pl. Aff.

56.1 ¶ 34; Rau Tr. 16:18 – 17:13, Ex. 8).

5.    The plaintiff showed her spousal pass to the defendants multiple times while on

the train.  (Pl. Aff. 56.1 ¶ 23).  While on the train, Ms. Garris-Rivers offered to purchase a ticket.

(Pl. Aff. 56.1 ¶ 24).  Defendant Gardiner later stated in a report submitted to his employer: "She said something along the lines of …. I'll just pay for a ticket."  (Pl. Aff. 56.1 ¶ 25).  Nevertheless, the defendants did not accept the plaintiff's spousal pass, and did not accept her offer to buy a ticket.

6.　　　The plaintiff voluntarily got off the train about four minutes after the Arresting Officers arrived.  (Pl. Aff. 56.1 ¶ 26).   The plaintiff showed her spousal pass to the defendants again after exiting the train.  (Pl. Aff. 56.1 ¶ 27).  The defendants took possession of the pass on the platform.  (Pl. Aff. 56.1 ¶ 27).   Throughout the incident, the plaintiff showed her valid spousal pass to each of the defendants **multiple times**.  (Pl. Aff. 56.1 ¶ 22).

7.　　　Nevertheless, the defendants arrested the plaintiff.  Officer Rau placed the plaintiff in handcuffs, and became the plaintiff's official arresting officer.  (Pl. Aff. 56.1 ¶ 40). Officers Reilly, Olivares and Haggerty, as well as Benjamin Gardiner and Jonathan Mancini, participated in the plaintiff's arrest.  (Pl. Aff. 56.1 ¶¶ 34, 36-37).  The plaintiff was arrested without a warrant.  (Pl. Aff. 56.1 ¶ 33).  In addition, Officers Reilly, Olivares and Haggerty were present when Officer Rau unlawfully arrested the plaintiff, and did nothing to stop her unlawful arrest from happening.  (Pl. Aff. 56.1 ¶ 35).  Benjamin Gardiner was present when the plaintiff's unlawful arrest occurred, and did nothing to stop her unlawful arrest from happening.  (Pl. Aff. 56.1 ¶ 38).  All of the foregoing individuals were employees of the MTA and/or LIRR, and were acting under color of state law.  (Def. 56.1 ¶¶ 3-12).

8.　　　The defendants knew the plaintiff had a valid spousal pass that entitled the plaintiff to ride the train.  (Pl. Aff. 56.1 ¶ 28).  In particular, Officer Rau knew that the plaintiff had a valid spousal pass.  (Pl. Aff. 56.1 ¶ 29).  Officer Rau personally examined the spousal pass and compared it to the plaintiff's driver's license.  In doing so, he could not have avoided learning that the pass was valid and that it belonged to the plaintiff.  (Pl. Aff. 56.1 ¶ 30).   The defendants knew the charge of theft of services was invalid.  (Pl. Aff. 56.1 ¶ 31).  Despite knowing that the charge of theft of services was invalid, the defendants arrested the plaintiff and

charged her with theft of services. (Pl. Aff. 56.1 ¶ 32). Sergeant McDermott approved the plaintiff's unlawful arrest and charges. (Pl. Aff. 56.1 ¶ 43).

9. Ms. Garris-Rivers was brought to the defendant police officer's "base," or precinct, which is in the Air Train building of Jamaica station and was placed in a holding cell. (Pl. Aff. 56.1 ¶ 41). In the course of this false arrest, the defendants made, and threatened to make, unwanted and offensive physical contact with the plaintiff. (Pl. Aff. 56.1 ¶ 39). Officer Rau did so by placing the plaintiff in handcuffs. (Pl. Aff. 56.1 ¶ 40). Officer Eloise Broderick subjected the plaintiff to a search that involved physically offensive contact with the plaintiff, including touching the plaintiff's breasts. (Pl. Aff. 56.1 ¶ 42).

10. Ms. Garris-Rivers was taken to central booking in Queens for processing. (Pl. Aff. 56.1 ¶ 45). Meanwhile, Officer Rau told the District Attorney's office that the plaintiff committed theft of services, and told the DA's office that she should be charged with that crime. (Pl. Aff. 56.1 ¶ 44).

11. As a result of the foregoing wrongful acts by the defendants, the plaintiff was unlawfully confined for a period of approximately 24 hours. (Pl. Aff. 56.1 ¶ 46). All charges against the plaintiff were then dismissed. (Pl. Aff. 56.1 ¶ 47).

12. As a result of the forgoing, the plaintiff suffered physical, mental and emotional injuries, including sleeplessness, mental distress, and persistent stomach problems. (Pl. Aff. 56.1 ¶ 48).

13. The plaintiff filed timely notices of claim with both the LIRR and the MTA. (Pl. Aff. 56.1 ¶¶ 6-7). The plaintiff complied with all legal requirements to bring claims against those entities. (Pl. Aff. 56.1 ¶¶ 6-8). The plaintiff timely filed her complaint on December 20, 2013, which was then amended on May 13, 2014. (Pl. Aff. 56.1 ¶ 13).

14. The amended complaint states causes of action against the following individual defendants: MTA Police Officer Robert Rau ("Officer Rau"), MTA Police Officer Matthew Reilly ("Officer Reilly"), MTA Police Officer Jouan Olivares ("Officer Olivares"), MTA Police

Officer Michael Haggerty ("Officer Haggerty"), MTA Sergeant Chris McDermott ("Sergeant McDermott"), MTA Officer Eloise Broderick ("Officer Broderick"), MTA Officer Greg Buehler ("Officer Buehler"), MTA Officer Shek ("Officer Shek"), LIRR Employee Benjamin Gardiner ("Gardiner"), and LIRR Employee John Mancini ("Mancini").

## III.    The Applicable Legal Standards

### A.    The Summary Judgment Standard

15.    Summary judgment is appropriate only when there is no genuine dispute as to material facts and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  Material facts are those that may affect the outcome of the case.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute as to a material fact is "genuine" if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party.  *Id.*  The court may not weigh the evidence, and must view the evidence in the light most favorable to the nonmoving party.  *Id.* at 255.

16.    Here, as the moving party, the defendants bear the burden to show the absence of a genuine dispute of any material fact.  *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).

17.    "'A genuine issue exists for summary judgment purposes where the evidence, viewed in the light most favorable to the nonmoving party, is such that a reasonable jury could decide in that party's favor.'"  *Rivera v. Rochester Genesee Reg. Transp. Auth.*, 702 F.3d 685, 693 (2d Cir. 2012) (quoting *Guilbert v. Gardner*, 480 F.3d 140, 145 (2d Cir. 2007)).  In determining whether a genuine dispute exists, the Court must "'constru[e] all the evidence in the light most favorable to the non-movant and draw[] all reasonable inferences in [her] favor.'"  *Id.* (quoting *McBride v. BIC Consumer Prods. Mfg. Co.*, 583 F.3d 92, 96 (2d Cir. 2009)).

### B.    The Legal Standard for Claims Under Section 1983

18.     "[T]o establish personal liability in a § 1983 action, it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right." *Lore v. City of Syracuse,* 670 F.3d 127, 168 (2d Cir. N.Y. 2012) (quoting *Ky. v. Graham*, 473 U.S. 159, 166 (1985)).

### PERSONAL INVOLVEMENT AND FAILURE TO INTERVENE

19.     Generally, a defendant is liable for a Constitutional wrong if they were personally involved in the wrong.  Personal involvement and liability can be established by showing that the defendant: "(i) personally participated in the alleged constitutional violation, (ii) was grossly negligent in supervising subordinates who committed the wrongful acts, or (iii) exhibited deliberate indifference to the rights of the plaintiff by failing to act on information indicating that unconstitutional acts were occurring." *Provost v. City of Newburgh*, 262 F.3d 146, 154 (2d Cir. N.Y. 2001).

20.     However, personal involvement is neither an element of, nor a requirement for, a claim for failure to intervene.  "A law enforcement officer has an affirmative duty to intercede on the behalf of a citizen whose constitutional rights are being violated in his presence by other officers." *O'Neill v. Krzeminski*, 839 F.2d 9, 11 (2d Cir. 1988).  "The requirement that an officer be personally involved in the arrest distinguishes a false arrest claim from a failure-to-intervene claim relating to an arrest, which imposes liability on an officer who is not personally involved in an arrest but nevertheless knew that an arrest lacked probable cause and did nothing to prevent it." *Garnett v. City of New York*, 2014 U.S. Dist. LEXIS 112440 (S.D.N.Y. Aug. 13, 2014) (citing *Wong v. Yoo*, 649 F. Supp. 2d 34, 61 (E.D.N.Y. 2009), *Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994) and *Travis v. Village of Dobbs Ferry*, 355 F. Supp. 2d 740, 752-53 (S.D.N.Y. 2005)).

### C.     The Legal Standard for False Arrest

### THE ELEMENTS OF THE CAUSE OF ACTION

21. The elements of a claim of false arrest under § 1983 are substantially the same as the elements of a false arrest claim under New York law, and they are as follows: "(1) the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged." *Weyant v. Okst*, 101 F.3d 845, 853 (2d Cir. N.Y. 1996). *See also Broughton v. State*, 37 N.Y.2d 451, 456 (1975).

## PROBABLE CAUSE IS AN AFFIRMATIVE DEFENSE

22. A § 1983 claim for false arrest "derives from his Fourth Amendment right to remain free from unreasonable seizures, which includes the right to remain free from arrest absent probable cause." *Jaegly v. Couch*, 439 F.3d 149, 151-152 (2d Cir. N.Y. 2006) (citing *Weyant*, 101 F.3d at 852). A warrantless arrest is "presumptively unlawful." *Trueman v. New York State Canal Corp.*, 451 Fed. Appx. 27, 29 (2d Cir. N.Y. 2011) (citing *Guntlow v. Barbera*, 907 N.Y.S.2d 86, 90 (N.Y. App. Div. 3d Dep't 2010)). The existence of probable cause constitutes an affirmative defense to a false arrest claim. *See id*.

23. "[P]robable cause to arrest exists when the officers have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." *Weyant*, 101 F.3d at 852 (citations omitted). The court looks to the law of the state in which the arrest occurred in order to determine the existence or non-existence of probable cause. *See Jaegly*, 439 F.3d at 151-152. *Accord Davis v. Rodriguez*, 364 F.3d 424, 433 (2d Cir. 2004) ("In analyzing § 1983 claims for unconstitutional false arrest, we have generally looked to the law of the state in which the arrest occurred.")

## DEFENDANTS BEAR THE BURDEN
## TO ESTABLISH THE EXISTENCE OF PROBABLE CAUSE

24.     Defendants contend that the plaintiff bears the burden to prove the absence of probable cause, citing an single unreported case from the Eastern District. This is not correct.

25.     As the Second Circuit has held: "When an arrest is not made pursuant to a judicial warrant, the **defendant** in a false arrest case bears the burden of proving probable cause as an affirmative defense." *Dickerson v. Napolitano*, 604 F.3d 732, 751 (2d Cir. N.Y. 2010) (emphasis added) (citing *Broughton*, 37 N.Y.2d at 458). *See also Ackerson*, 702 F.3d at 19 (stating that probable cause is an "affirmative defense"); *Trueman*., 451 Fed. Appx. at 29 (same). *See also Gomez v. City of New York*, 2008 U.S. Dist. LEXIS 41455, 12-14 (S.D.N.Y. May 28, 2008)(Daniels, J.) ("where the arrest is made without a warrant, the government bears the burden of establishing probable cause")( citing *Wu v. City of New York*, 934 F. Supp. 581, 586 (S.D.N.Y. 1996)).

26.     As explained in <u>Broughton</u>:

> Whenever there has been an arrest and imprisonment without a warrant, the officer has acted extrajudicially and the presumption arises that such an arrest and imprisonment are unlawful. The cases uniformly hold that where the arrest or imprisonment is extrajudicial, that is, without legal process or color of legal authority, it is not necessary to allege want of probable cause in a false imprisonment action. Indeed, the burden is on the defendant to prove the opposite. … As a matter of pleading the defendant has the burden of proving legal justification as an affirmative defense and the defendant will be precluded from introducing such evidence under a general denial. *Broughton*, 37 N.Y.2d at 458.

### PROBABLE CAUSE IS A QUESTION FOR THE FACTFINDER IF FACTS ARE IN DISPUTE

27.     The defendants argue that probable cause is a question of law that "need not be submitted to a jury." (Def. Memo p. 4). This is not correct. Probable cause is a "mixed question of law and fact." *Ornelas v. United States*, 517 U.S. 690, 696 (1996). As the Supreme Court explained in <u>Ornelas</u>:

> The principal components of a determination of reasonable suspicion or probable cause will be the events which occurred leading up to the stop or search, and then the decision whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to reasonable suspicion or to probable cause. The first part of the analysis involves only a determination of

historical facts, but the second is a mixed question of law and fact. *Ornelas*, 517 U.S. at 696.

28.     Where the factual portion of such a mixed law-fact question is disputed, the factfinder must determine these factual issues. *See Zellner v. Summerlin*, 494 F.3d 344, 368 (2d Cir. N.Y. 2007). As the Second Circuit explained: "If there is no dispute as to the material historical facts, the matter of whether the officer's conduct was objectively reasonable is an issue of law to be determined by the court. If there is such a dispute, however, the factual questions must be resolved by the factfinder." *Id.* at 368 (citations and quotations omitted).

### D.    Federal Excessive Force and State-Law Assault & Battery

29.     Under New York law, "an assault and battery cause of action may be based on contact during an unlawful arrest." *Smolian v Port Auth. of N.Y. & N.J.*, 128 A.D.3d 796 (N.Y. App. Div. 2d Dep't 2015). In Smolian, the Second Department reversed dismissal of assault and battery claims against police officers whose sole contact with the plaintiff consisted of handcuffing him during arrest. The police officer defendants were alleged to have "handcuffed and transported [the plaintiff] to the Port Authority police station." *Id.* The Second Department explained:

> The assault and battery causes of action are premised on the individual Port Authority police officers' contact with the plaintiff during the allegedly unlawful arrest. Since an assault and battery cause of action may be based on contact during an unlawful arrest, the questions of fact regarding whether the plaintiff's arrest was supported by probable cause also preclude summary judgment on the causes of action for assault and battery asserted against the Port Authority and the individual Port Authority police officers. *Id.*

30.     The Second Circuit has held that the threshold for excessive force as a constitutional tort is low, where the plaintiff was falsely arrested and did not resist. *See Weather v. City of Mt. Vernon*, 474 Fed. Appx. 821, 824 (2d Cir. N.Y. 2012). In Weather, the police officers twisted the plaintiff's arm and shoved him into a wall, apparently causing no injury. The Second Circuit took into consideration the facts that the plaintiff was being arrested for a low-level, non-violent offense, and the plaintiff was in fact innocent, and affirmed defendants'

liability for the Constitutional tort of excessive force. The Second Circuit explained: "The law protecting a person against excessive force in this situation is clearly established. Weather was breaking no law, was not resisting arrest, and was not placing himself or others in danger." As in Weather, a jury should be allowed to determine whether the plaintiff's handcuffing and the subsequent rough and offensive search of her person violated this standard.

### E. *Respondeat Superior*

31.     Under New York State law, "municipalities may be liable, under the doctrine of respondeat superior, for the common law torts, such as false arrest, malicious prosecution, assault, and battery, committed by their employees*." Lepore v Town of Greenburgh*, 120 A.D.3d 1202, 1204 (N.Y. App. Div. 2d Dep't 2014). The doctrine of *respondeat superior* "renders an employer vicariously liable for a tort committed by an employee while acting within the scope of his employment, even if the duties were done irregularly or with disregard of instruction." *Ray v. Metropolitan Transp. Auth.*, 221 A.D.2d 613, 615 (N.Y. App. Div. 2d Dep't 1995).

32.     On this motion, the defendants have not contested that the LIRR and MTA are vicariously responsible for the state-law torts committed by their employees, the individual defendants in this case. Because these defendants have failed to raise any argument that *respondeat superior* does not apply to them in this case, such argument is waived on this motion.

## IV.     Probable Cause for the Plaintiff's Arrest Was Lacking

33.     The defendants argue that there was probable cause to arrest the plaintiff for theft of services, under Penal Law § 165.15(3). This is the **only basis** for probable cause argued by the defendants. Because the defendants have not moved for summary judgment on their affirmative defense of probable on any other basis, the Court need consider **only** whether probable cause existed to arrest the plaintiff for violation of Penal Law § 165.15(3).

34.     Penal Law § 165.15(3) states:

> A person is guilty of theft of services when … With intent to obtain railroad, subway, bus, air, taxi or any other public transportation service without payment

of the lawful charge therefor, or to avoid payment of the lawful charge for such transportation service which has been rendered to him, he obtains or attempts to obtain such service or avoids or attempts to avoid payment therefor by force, intimidation, stealth, deception or mechanical tampering, or by unjustifiable failure or refusal to pay;

35. Essentially, the offense boils down to four elements: 1) with unlawful intent, 2) obtaining a service, and 3) avoiding payment therefor, 4) by improper means (where the improper means are limited to the following: "force, intimidation, stealth, deception or mechanical tampering, or by unjustifiable failure or refusal to pay").

36. There is no question that this case involves a "public transportation service" within the scope of the statute, and that the plaintiff made use of the service. The question to be decided is whether there was probable cause to believe that the plaintiff obtained the service: 1) with unlawful intent, 2) "without payment of the lawful charge therefor," 3) using "force, intimidation, stealth, deception or mechanical tampering, or by unjustifiable failure or refusal to pay."

### A. The Plaintiff Lacked Unlawful Intent

37. It is undisputed that the plaintiff lawfully possessed a spousal pass which entitled Ms. Garris-Rivers to ride the Long Island Rail Road without purchasing a ticket. (Pl. Aff. 56.1 ¶¶ 18-19). On May 6, 2013, Ms. Garris-Rivers was in possession of her spousal pass. (Pl. Aff. 56.1 ¶ 20). Ms. Garris-Rivers' spousal pass was valid. (Pl. Aff. 56.1 ¶ 21). These facts unambiguously negate the element of unlawful intent.

### B. The Plaintiff Did Not Fail To Pay The Lawful Charge

38. The plaintiff's possession of a valid spousal pass negates the element of failure to pay the lawful charge. The spousal pass as represents an exemption from the obligation to pay, and so, the fact that the plaintiff possessed a valid spousal pass entitling her to ride the train without payment of any other fare negates this element of the offense as well.

### C. The Plaintiff Did Not Use Unlawful Means to Avoid Payment

39.     Because the plaintiff had a pass which exempted her from the requirement to pay a fare, none of the plaintiff's conduct can be said to have "avoided" payment. This fact alone establishes that the plaintiff did not use unlawful means to "avoid" payment.

40.     The defendants cannot dispute that the plaintiff's pass was valid. (Pl. Aff. 56.1 ¶ 21). The defendants cannot dispute that the plaintiff showed her spousal pass to the defendants multiple times while on the train. (Pl. Aff. 56.1 ¶ 23). The defendants' sole disputed factual questions relate to whether the plaintiff displayed the pass long enough, and whether the plaintiff was under a duty to hand the pass to the conductor for in-hand examination. Holding a valid pass up for inspection for an allegedly insufficient amount of time, or failing to hand the valid pass to the conductor, cannot be said to be "force, intimidation, stealth, deception or mechanical tampering, or by unjustifiable failure or refusal to pay." The plaintiff was exempt from the duty to pay. When the plaintiff held the pass up or out for inspection multiple times, she could hardly be said to be using criminally unjustifiable means – punishable by up to a year in prison – of displaying her valid pass.

41.     Moreover, this is not the entire story. While on the train, Ms. Garris-Rivers offered to purchase a ticket. (Pl. Aff. 56.1 ¶ 24). Defendant Gardiner later stated in a report submitted to his employer: "She said something along the lines of …. I'll just pay for a ticket." (Pl. Aff. 56.1 ¶ 25). The defendants did not accept her offer to buy a ticket. The plaintiff's rebuffed attempt to pay for a ticket further negates the element of the offense that the plaintiff was guilty of "unjustifiable failure or refusal to pay."

42.     There was simply no reason – apart from a possible dislike of the plaintiff personally – to arrest the plaintiff.

43.     As the incident progressed from the train, to the platform, to the MTA police "base" or stationhouse, the defendant confirmed, in more and more ways, the total absence of probable cause to arrest or charge the plaintiff for theft of services. The defendants had seen the plaintiff's valid pass multiple times on the train, and they saw it more times on the platform. (Pl.

Aff. 56.1 ¶¶ 23, 27).  The plaintiff gave the defendants the opportunity to compare her spousal

pass to her drivers license before the officers placed her under arrest.  (Pl. Aff. 56.1 ¶ 23).  The

defendants took possession of the pass on the platform.  (Pl. Aff. 56.1 ¶ 27).   Throughout the

incident, the plaintiff showed her valid spousal pass to each of the defendants **multiple times**.

(Pl. Aff. 56.1 ¶ 22).  Officer Rau personally examined the spousal pass and compared it to the

plaintiff's driver's license.  In doing so, he could not have avoided learning that the pass was

valid and that it belonged to the plaintiff.  (Pl. Aff. 56.1 ¶ 30).  The other defendants knew and

discussed the fact that the plaintiff's pass was valid.  (Pl. Aff. 56.1 ¶ 28).  While the plaintiff's

arrest was still being documented at the base, the defendants determined that there was no legal

basis for a charge of theft of services.  (Pl. Aff. 56.1 ¶ 31).

44.     Despite **consciously** knowing that the charge of theft of services was invalid, the

defendants arrested the plaintiff and charged her with theft of services.  (Pl. Aff. 56.1 ¶ 32).  The

defendants should be held accountable for that.

## V.     Qualified Immunity

45.     The doctrine of qualified immunity provides that "government officials are

protected from liability only 'insofar as their conduct does not violate clearly established statutory

or constitutional rights of which a reasonable person would have known.'" *Gomez*, 2008 U.S.

Dist. LEXIS 41455 (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

46.     It is clearly established that "the Fourth Amendment right to be free from

unreasonable seizure includes the right to be free from arrest without probable cause." *Gomez*,

2008 U.S. Dist. LEXIS 41455 at *27 (citing *Jaegly*, 439 F.3d at 151 and *Weyant*, 101 F.3d at

852).

47.     The right to be free from arrest without probable cause was clearly established

well before the plaintiff's arrest on May 6, 2013.  *See Gonzalez v. City of Schenectady*, 728 F.3d

149, 157 (2d Cir. N.Y. 2013) (holding that the right was clearly established on or before May 16,

2006).

48.     Thus, in a false arrest case, "[t]he essential inquiry in determining whether qualified immunity is available to an officer accused of false arrest is whether it was objectively reasonable for the officer to conclude that probable cause existed." *Zellner*, 494 F.3d at 369-370 (citing *Jenkins v. City of New York*, 478 F.3d 76, 87 (2d Cir. 2007)).

49.     As is the case for probable cause, qualified immunity is a mixed question of law and fact, and disputed factual questions must be decided by the factfinder. *See Zellner*, 494 F.3d at 368.

50.     The premise for the defendants' argument for qualified immunity is set forth in their memo of law as follows: "Plaintiff's arrest was predicated upon Defendant Mancini's objectively reasonable attempt to ensure that Plaintiff was in possession of a valid train pass.  In fact, Plaintiff was not in possession of a valid train pass, as explained further herein."  (Def. Memo p. 17).  The argument is made without citation to the record, and the defendants' papers do not, in fact, "explain further" elsewhere.  The record not only offers no support for the argument, but directly contradicts it.

51.     In contradiction to the statement in the defendants' memo that "Plaintiff was not in possession of a valid train pass," their 56.1 statement says: "Rather than produce a ticket, **Plaintiff produced a spouse pass**."  (Def. 56.1 ¶ 30) (emphasis added).  The defendants' 56.1 statement does not take a position on whether the pass was valid or invalid.  Thus, any argument that the pass was invalid was waived.  Moreover, the plaintiff has demonstrated from multiple sources in the record that **the pass was valid**.  (Pl. Aff. 56.1 ¶ 21).

52.     As stated above, throughout the incident, the plaintiff showed her valid spousal pass to each of the defendants **multiple times**.  (Pl. Aff. 56.1 ¶ 22).  Officer Rau personally examined the spousal pass and compared it to the plaintiff's driver's license.  In doing so, he could not have avoided learning that the pass was valid and that it belonged to the plaintiff.  (Pl. Aff. 56.1 ¶ 30).  The other defendants knew and discussed the fact that the plaintiff's pass was valid.  (Pl. Aff. 56.1 ¶ 28).  While the plaintiff's arrest was still being documented at the base, the

defendants determined that there was no legal basis for a charge of theft of services. (Pl. Aff. 56.1 ¶ 31). Despite knowing that the charge of theft of services was invalid, the defendants arrested the plaintiff and charged her with theft of services. (Pl. Aff. 56.1 ¶ 32).

53.    Thus, the factual premise upon which the defendants base their claim for qualified immunity is not merely unsupported – the opposite (that the plaintiff had in her possession a valid spousal pass) is an **undisputed** fact. The undisputed fact that the plaintiff had a valid spousal pass should also be considered along with the fact that, while still on the train, the plaintiff also offered to purchase a ticket in order to resolve the dispute. (Pl. Aff. 56.1 ¶¶ 24-25).

54.    Properly formulated, then, the qualified immunity question is this: "Was it objectively reasonable to arrest the plaintiff, who possessed and presented a spousal pass of confirmed validity, and who additionally offered to pay the fare, for theft of service?"

55.    This is not a difficult question. The plaintiff's possession of a valid spousal pass and her offer to pay negate three of the four elements of the offense of theft of service. It was not reasonable to believe that the plaintiff possessed the *mens rea* of intent to obtain services without payment of the charge due. It was not reasonable to believe that the plaintiff actually did fail to offer payment (whether in cash or through use of the pass) of any fare due. It was not reasonable to believe that the plaintiff used the improper means set forth in the statute ("force, intimidation, stealth, deception or mechanical tampering, or by unjustifiable failure or refusal to pay") to avoid payment.

56.    For the foregoing reasons, it was not objectively reasonable to believe that there was probable cause that the plaintiff committed theft of service. The defendants are not entitled to qualified immunity.

## VI.    Plaintiff's Assault, Battery and Excessive Force Claims  Cannot Be Dismissed

57.    Because the defendants have failed to establish probable cause for the plaintiff's arrest, the have filed to establish entitlement to judgment on the plaintiff's claims for assault and

battery.  *Smolian*, 128 A.D.3d 796.  The plaintiff was not merely handcuffed and locked up, she was subjected to an aggressive search that involved a police officer manipulating her breasts. These facts state ac claim for assault and battery.  For similar reasons, given the low threshold set by the Second Circuit, the plaintiff's excessive force claims survive also.

## VII.  Certain Points Are Not Disputed

### A.  Intentional Infliction of Emotional Distress

58.     The plaintiff does not dispute that, under the facts adduced, the plaintiff does not have a claim for intentional infliction of emotional distress.  The plaintiff is entitled to compensation for her emotional and mental damages, but the defendants' liability arises under the other causes of action discussed herein.

### B.     The Personal Involvement of Defendants Buehler, Willet, and Shek

59.     The plaintiff agrees that the facts do not substantiate wrongdoing or liability on the part of defendants Buehler and Shek.  Defendant "Willet" appears to be a non-existent person, the result of the plaintiff associating the word "willet" as the name of one of the arresting officers. The plaintiff does not dispute the dismissal of these parties.

60.     The plaintiff notes that the defendants have – correctly – not attempted to argue that any of the other defendants lack the personal involvement required for liability.  Similarly, the plaintiffs have not made any argument that the other defendants are not subject to liability for failure to intervene.

### C.     Defamation

61.     The defendants argue that police officers are normally not subject to defamation claims, and they appear to be correct on this point.  (Def. Memo pp  15-16).  The plaintiff does not dispute the dismissal of this claim against the police officer defendants.  The argument advanced by the defendants does not, however, encompass the false statements made by

defendant Jonathan Mancini. The plaintiff understands the defendants motion as not seeking summary judgment on this claim on that defendant's behalf.

### D. Paragraph 54 of the Amended Complaint

62. The defendants argue that paragraph 54 of the amended complaint has not been established by the evidence. (Def. Memo pp. 10-14). The plaintiff does not dispute the dismissal of paragraph 54 of the complaint.

## VIII. The Defendants Have Waived All Grounds For Summary Judgment Not Raised In Their Moving Papers

63. The defendants, as the party seeking summary judgment, bear the initial burden of informing the court of the basis for its motion, and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the moving party will have the burden of proof at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. *Id*. at 322–23.

64. A defendant who moves for summary judgment is on notice of all of the issues raised in the complaint, and must address these in its primary motion papers, or waive the right to seek summary judgment thereon. *Rowley v. City of New York*, 2005 U.S. Dist. LEXIS 22241 (S.D.N.Y. Sept. 29, 2005) (rejecting argument that plaintiff's opposition "opened the door" to issues that the moving defendant raised for the first time on reply, because the issue was evidence "[t]hroughout [the plaintiffs'] Amended Complaint"). *Accord Domino Media, Inc. v. Kranis*, 9 F. Supp. 2d 374, 387 (S.D.N.Y. 1998) aff'd, 173 F.3d 843 (2d Cir. 1999) ("New arguments first raised in reply papers in **support** of a motion will not be considered.") (emphasis in original).

65. The movant for summary judgment must present sufficient legal argument and facts in its principal moving papers. **New legal arguments** may not be raised for the first time on reply. *See Rowley*, 2005 U.S. Dist. LEXIS 22241, at 13-14 (rejecting argument made by movant The City of New York in their summary judgment reply papers) (reviewing cases). *Accord*

*Fitzgerald v. City of Troy*, 2013 U.S. Dist. LEXIS 139056 (N.D.N.Y Sept. 27, 2013)

("Defendants failed to properly raise this argument as a grounds for summary judgment on Plaintiffs' First Amendment retaliation claims. Defendants' motion can be denied on that basis alone.")  **New factual allegations** may not be presented for the first time on reply.  *United States v. East River Hous. Corp.*, 2015 U.S. Dist. LEXIS 24924, 106-107 (S.D.N.Y. Mar. 2, 2015) (holding that movant's "Declaration and Exhibit submitted in conjunction with East River's reply should not be considered because they improperly raise new issues.").  *Accord Domino Media,* F. Supp. 2d at  at(refusing to consider "factual allegations" first raised in reply).  **New evidence** presented for the purpose of raising new legal or factual issues may not be presented for the first time on reply.  *See East River Hous. Corp.*, 2015 U.S. Dist. LEXIS 24924, *106-107.

66.     Put another way, where a movant does not raise an issue in their primary moving papers, this means that **the movant is not asking the court to render summary judgment on that issue**.  *See Am. Home Assur. Co. v. Panalpina, Inc.*, 2011 U.S. Dist. LEXIS 16677 (S.D.N.Y. 2011).

67.     If the moving party meets its initial burden, the opposing party must then "set forth specific facts showing that there is a genuine issue for trial" in order to defeat the motion. Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 250.  However, if the moving party fails to meet its burden of production, them summary judgment must be denied even in the absence of opposition. As the Second Circuit explained:

> Federal Rule of Civil Procedure 56 provides that if a party fails to properly support or address another party's assertion of fact, the court may 'grant summary if the motion and supporting materials — including the facts considered undisputed — show that the movant is entitled to it." Fed. R. Civ. P. 56(e)(3). We have "made clear" that where a nonmoving party "chooses the perilous path of failing to submit a response to a summary judgment motion," the district court still has an obligation to determine whether summary judgment is appropriate.  If the evidence submitted with the summary judgment motion fails to meet "the movant's burden of production, then summary judgment must be denied even if no opposing evidentiary matter is presented." *Fabrikant v. French,* 691 F.3d 193, 215 fn. 18 (2d Cir. 2012) (quoting *Vt. Teddy Bear Co. v. 1-800-Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004)).

68.     In the present case, the plaintiff bears the burden simply to show that she was arrested without a warrant, and that she suffered harm as a result.  The defendants bear the burden on all other factual and legal issues.  Accordingly, on almost all issues in this case, the defendants have waived factual and legal arguments not made in their initial moving papers.

## IX.     Conclusion

69.     The defendants have utterly failed in their burden to show that the undisputed facts entitle them to summary judgment.  To the contrary, on this issues discussed herein, the Court could grant summary judgment to the plaintiff.  For the foregoing reasons, except as stipulated otherwise herein, the defendants' motion should be denied in its entirety.

DATED:     New York, New York
           July 1, 2015

Respectfully submitted,

_____
//s//

DAVID A. THOMPSON [DT 3991]
STECKLOW COHEN & THOMPSON
ATTORNEYS FOR PLAINTIFF
217 Centre Street, 6th Floor
Phone:  (212) 566-8000
Fax:    (212) 202-4952
dave@sctlaw.nyc