IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X

| | |
|---|---|
| TAMIKO GARRIS-RIVERS, | Index No. 13cv9034 (GBD) (RLE) |
| | ECF CASE |
| PLAINTIFF, | |
| -against- | **Plaintiff's Affirmative 56.1 Statement** |
| THE METROPOLITAN TRANSPORTATION AUTHORITY, et al., | |
| DEFENDANTS. | |

------------------------------------------------------------------X

Plaintiff Tamiko Garris-Rivers, by her attorney, David A. Thompson of Stecklow Cohen & Thompson, submits this statement of material facts concerning which there is no issue to be tried.

I. **Overview**

1. On May 6, 2013, Tamiko-Garris-Rivers boarded the 6:04 p.m. Long Island Rail Road ("LIRR") at Atlantic Terminal headed to Ronkonkoma, carrying a valid LIRR employee-spousal pass. She displayed the pass to the conductor when requested. Nevertheless the conductor declared that he intended to have pass taken away, and called Metropolitan Transportation Authority ("MTA") Police, who boarded the train at Jamaica Station. After a discussion with these officers in which Ms. Garris-Rivers offered to buy an additional ticket, the Plaintiff exited the train on her own volition, together with the officers. On the platform, the officers placed Ms. Garris-Rivers under arrest. The officers confirmed that Ms. Garris-Rivers spousal pass was actually valid. Despite this, the officers maintained Ms. Garris-Rivers under arrest, charging her with Theft of Services and Disorderly Conduct. The District Attorney

rejected the Theft of Services charge as baseless, substituting a charge of Obstruction of Government Administration instead. Both charges were dismissed at arraignment.

## II. Procedural History

2. On May 6, 2013 Ms. Garris-Rivers was arrested at the Jamaica LIRR.

3. Her arresting officer, Defendant Robert Rau, charged her with Theft of Services (N.Y. Pen. Law §165.15(3)) and disorderly conduct (N.Y. Pen. Law §240.20(2)). (Omniform Arrest Report, Ex. 20; Reilly Tr., 38:9-13, Ex. 9; MTA Incident Report, p. 1, Ex. 14).

4. The charges actually submitted by the Queens District Attorney's Office were obstructing governmental administration (Penal Law § 195.05) and disorderly conduct (N.Y. Pen. Law §240.20(2). (MTA Incident Report, pp. 19-20, Ex. 14).

5. The charges against Ms. Garris-Rivers were dismissed the next day. Transcript of GML 50-H Examination of Plaintiff ("Pl. 50-H Tr."), 51:15-52:13, Ex. 6).

6. On May 14, 2013 Ms. Garris-Rivers filed a notice of claim with the office of M.T.A. General Counsel. (Plaintiff's Notice of Claim, Ex. 5).

7. On May 14, 2013 Ms. Garris-Rivers filed a notice of claim with the LIRR. (Plaintiff's Notice of Claim, Ex. 5).

8. On September 19, 2013, Ms. Garris-Rivers participated in a N.Y. Gen. Mun. § 50-H examination. (Pl. 50-H Tr., p. 1, Ex. 6).

9. On December 20, 2013, Ms. Garris-Rivers filed a Complaint (the "12/20/2103 Complaint") commencing the present action. (12/20/2013 Complaint, Ex. 1).

10. The 12/20/2103 Complaint named the Metropolitan Transportation Authority ("MTA") and the LIRR (the "Municipal Defendants") as defendants.[1] (12/20/2013 Complaint, Ex. 1).

11. The 12/20/2103 Complaint named individuals as "John Doe" defendants. (12/20/2013 Complaint, Ex. 1).

---

[1] The City of New York, originally named as a defendant, was later dismissed from the case.

12. On January 28, 2014, Defendants filed their answer (the "1/28/2014 Answer") to the complaint. (1/28/2014 Answer, Ex. 2).

13. On May 13, 2014, the plaintiff filed an amended complaint (the "5/13/2014 Amended Complaint," or, the "Amended Complaint"). (Amended Complaint, Ex. 3).

14. The Amended Complaint named the following individual defendants:

    a. MTA Police Officer Robert Rau ("Officer Rau").

    b. MTA Police Officer Matthew Reilly ("Officer Reilly").

    c. MTA Police Officer Jouan Olivares ("Officer Olivares").

    d. MTA Police Officer Michael Haggerty ("Officer Haggerty").

    e. MTA Sergeant Chris McDermott ("Sergeant McDermott"). (This defendant was named as "Officer" McDermott, but the defendant's correct rank is Sergeant).

    f. MTA Officer Eloise Broderick ("Officer Broderick").

    g. MTA Officer Greg Buehler ("Officer Buehler").

    h. MTA Officer Shek ("Officer Shek").

    i. LIRR Employee Benjamin Gardiner ("Gardiner").

    j. LIRR Employee John Mancini ("Mancini").

15. On May 29, 2014, Defendants filed their answer to the amended complaint (the "5/29/2014 Amended Answer," or, "Amended Answer"). (Amended Answer, Ex. 4).

## III. Facts

16. On May 6, 2013, Tamiko-Garris-Rivers boarded the 6:04 p.m. Long Island Rail Road ("LIRR") at Atlantic Terminal headed to Ronkonkoma. (Pl. Dep. Tr. 34:6-17).

17. At that time, Ms. Garris-Rivers' husband, John Rivers, was employed by the Long Island Rail Road. (Pl. 50-H Tr. 11:7-16, Ex. 6).

18. Because of his employment with the Long Island Rail Road, Mr. Rivers had the right to obtain a purple spousal pass (the "spousal pass") for his wife, Ms. Garris-Rivers. (Pl. 50-H Tr. 10:11- 11:17, Ex. 6).

19. The spousal pass entitled Ms. Garris-Rivers to ride the Long Island Rail Road without purchasing a ticket. (Pl. 50-H Tr. 11:18-12:12, Ex. 6).

3

20. On May 6, 2013, Ms. Garris-Rivers was in possession of her spousal pass. (Pl. 50-H Tr. 10:8-23, Ex. 6; Pl. Dep. Tr. 73:5-16 Ex. 7).

21. On May 6, 2013, Ms. Garris-Rivers' spousal pass was valid. (Pl. 50-H Tr. 51:5-8, Ex. 6; Pl. Dep. Tr. 73:5-16 Ex. 7; 6/26/2013 Statement of Benjamin Gardiner, p. 2, Ex. 19; Transcript of 10/27/2014 Deposition of Officer Rau ("Rau Tr.") 33:13-23 Ex. 8).

22. The plaintiff showed her valid spousal pass to each of the defendants multiple times. (Pl. Dep. Tr. 41:15-21, 43:9-15, 56:8-14, 58:5-9, 60:5-25, 72:6-18 Ex. 7; Pl. 50-H Tr. 10:4-10, 12:6-12, 15:5-19, 22:2-3, 43:8 – 44:19, Ex. 6; Mancini Tr. 43:24 - 44:20, Ex. 10).

23. The plaintiff showed her spousal pass to the defendants multiple times while on the train. (Pl. Dep. Tr. 41:15-21, 43:9-15, Ex. 7; Pl. 50-H Tr. 10:4-10, 15:5-19, 22:2-3, Ex. 6; Mancini Tr. 43:24 - 44:20, Ex. 10). The plaintiff gave the defendants the opportunity to compare her spousal pass to her drivers license before the officers placed her under arrest. (Pl. Dep. 58:4-12, Ex. 7).

24. While on the train, Ms. Garris-Rivers offered to purchase a ticket. (6/26/2013 Statement of Benjamin Gardiner, p.1, Ex. 19).

25. Defendant Gardiner stated: "She said something along the lines of …. I'll just pay for a ticket." (6/26/2013 Statement of Benjamin Gardiner, p. 1, Ex. 19).

26. The voluntarily plaintiff got off the train about four minutes after the Arresting Officers arrived. (Reilly Tr. 18:13-19, Ex. 9).

27. The plaintiff showed her spousal pass to the defendants after exiting the train. (Pl. Dep. Tr. 58:5-9, 60:6-15, Ex. 7; Pl. 50-H Tr., 44:13-19, Ex. 6; 6/26/2013 Statement of Benjamin Gardiner, p. 1, Ex. 19). The defendants took possession of the pass on the platform. (Pl. 50-H Tr. 43:8-19).

28. The defendants knew the plaintiff had a valid pass. (Pl. 50-H Tr. 50:21 – 51:14, Ex. 6, Pl. Dep. Tr. 72:6 - 73:18, Ex. 7; 6/26/2013 Statement of Benjamin Gardiner, p. 2, Ex. 19; Rau Tr. 33:13-23, Ex. 8).

29. Officer Rau knew that the plaintiff had a valid spousal pass. (Rau Tr. 33:13-23, Ex. 8).

30. Officer Rau personally examined the spousal pass and compared it to the plaintiff's driver's license. In doing so, he could not have avoided learning that the pass was valid and that it belonged to the plaintiff. (Rau Tr. 47:2-25, Ex. 8; Mancini Tr. 53:10-21, Ex. 10).

31. The defendants knew the charge of theft of services was invalid. (Pl. 50-H Tr. 50:21 – 51:14, Ex. 6.; Pl. Dep. Tr. 70:18 – 73:18, Ex. 7).

32. Despite knowing that the charge of theft of services was invalid, the defendants arrested the plaintiff and charged her with theft of services. (Rau Tr. 37, 6-15, Ex. 8; Pl. Ex. 14, p. 10; Pl. Ex. 14, p. 21; P. Ex. 20, p. 1).

33. The plaintiff was arrested without a warrant. (Rau Tr. 37:2-5, Ex. 8).

34. Officers Reilly, Olivares and Haggerty participated in the plaintiff's arrest. (Rau Tr. 16:18 – 17:13, 31:8-16, Ex. 8; Pl. Dep. Tr. 69:4-10, Ex. 7).

35. In addition, these officers were present when Officer Rau unlawfully arrested the plaintiff, and did nothing to stop her unlawful arrest from happening. (Rau Tr. 16:18 – 17:13, 31:8-16, Ex. 8; Pl. Dep. Tr. 69:4-10).

36. Benjamin Gardiner participated in the plaintiff's arrest. (Rau. Tr. 21:3-22:12, 23:13-24:5, 31:17-19, Ex. 8; Reilly Tr. 14:20 - 17:3 Ex. 9).

37. Jonathan Mancini instigated and participated in the plaintiff's arrest. (Reilly Tr. 14:20 - 17:3 Ex. 9; Rau Tr. 21:3-22:12, 23:13-24:5, Ex. 8).

38. In addition, Benjamin Gardiner was present when the plaintiff's unlawful arrest occurred, and did nothing to stop her unlawful arrest from happening. (Rau. Tr. 21:9-19, 31:17-19, Ex. 8).

39. In the course of this false arrest, the defendants made, and threatened to make, unwanted and offensive physical contact with the plaintiff. (Pl. 50-H Tr. 31:13-17, Ex. 6; Pl. Dep. Tr. 62:7 – 63:10, 72:6 – 78:3, Ex. 7; Rau Tr. 29:9 - 30:3, Ex.8; Reilly Tr. 22:3-8, Ex. 9).

40. Officer Rau placed the plaintiff in handcuffs, and became the plaintiff's official arresting officer. (Pl. 50-H Tr. 31:13-17, Ex. 6; Rau Tr. 29:9 - 30:3, Ex.8; Reilly Tr. 22:3-8, Ex. 9; Pl. Ex. 20, p. 3).

41. Ms. Garris-Rivers was brought to the defendant police officer's "base," or precinct, which is in the Air Train building of Jamaica station and was placed in a holding cell. (Rau Tr. 30:3 -24, Ex. 8; Reilly Tr. 22:12-16, Ex. 9).

42. Officer Broderick subjected the plaintiff to a search that involved physically offensive contact with the plaintiff, including the plaintiff's breasts. (Pl. Dep. Tr. 62:7 – 63:10, 72:6 – 78:3, Ex. 7; Rau Tr. 32:17-25; Reilly Tr. 24:9-13, Ex. 9).

43. Sergeant McDermott approved the plaintiff's unlawful arrest and charges. (Pl. Ex. 20, p. 3).

44. Officer Rau told the District Attorney's office that the plaintiff committed theft of services. (Def. 56.1 ¶ 55; Rau Tr. 37, 6-15, Ex. 8).

45. Ms. Garris-Rivers was taken to central booking in Queens for processing. (Pl. Dep. Tr. 87:12 - 89:18; Pl. 50-H Tr. 46:2-7, Ex. 6).

46. The plaintiff was unlawfully confined for a period of approximately 24 hours. (Pl. 50-H Tr. 46:5-13, Ex. 6; Pl. Ex. 18).

47. All charges against the plaintiff were dismissed. (Def. 56.1 ¶ 57).

48. As a result of the forgoing, the plaintiff suffered physical, mental and emotional injuries, including sleeplessness, mental distress, and persistent stomach problems. (Pl. 50-H pp. 59-71, Ex. 6).

DATED: New York, New York
July 1, 2015

Respectfully submitted,

_____//s//_____
DAVID A. THOMPSON [DT 3991]

STECKLOW COHEN & THOMPSON
ATTORNEYS FOR PLAINTIFF
217 Centre Street, 6th Floor
Phone: (212) 566-8000
Fax: (212) 202-4952
dave@sctlaw.nyc