IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
TAMIKO GARRIS-RIVERS,　　　　　　　　　　Index No.
　　　　　　　　　　　　　　　　　　　　　　13-cv-9034 (GBD) (RLE)

　　　　　　　　　　　　　　　　　　　　　　ECF CASE

　　　　　　　　　PLAINTIFF,

　　-against-

　　　　　　　　　　　　　　　　　　　　　　**MEMORANDUM OF**
　　　　　　　　　　　　　　　　　　　　　　**LAW IN SUPPORT**
　　　　　　　　　　　　　　　　　　　　　　**OF PLAINTIFF'S**
　　　　　　　　　　　　　　　　　　　　　　**MOTION *IN LIMINE***

THE METROPOLITAN TRANSPORTATION
AUTHORITY, et al.,

　　　　　　　　　DEFENDANTS.
------------------------------------------------------------------X

# TABLE OF CONTENTS

I. Introduction and Relief Requested ........................................................................................... 4
II. The Legal Standards ................................................................................................................ 4
   A. Motion *in Limine* ............................................................................................................. 4
   B. Probable Cause is Determined Based on Information Actually Known to the Arresting Officer(s) at the Time of Arrest ............................................................................. 2
   C. A Party Is Bound By Their Rule 56.1 Statement ............................................................ 3
   D. Federal Rules of Evidence 401 and 403 .......................................................................... 4
   E. Federal Rule of Evidence 901 .......................................................................................... 4
III. Argument ................................................................................................................................ 5
   A. Evidence of Plaintiff's Pre-May 6, 2013 Use of the Spousal Pass is Inadmissible ........................................................................................................................ 5
      Plaintiff's Pre-May 6, 2013 Use of the Spousal Pass Is Subject to Defendants' Judicial Admission .......................................................................................................... 6
      The Arresting Officers Knew Nothing of Plaintiff's Pre-May 6, 2013 Use of the Spousal Pass ........................................................................................................ 6
      Evidence of Pre-May 6, 2013 Use of the Pass Would be Confusing for the Jury and Time-Consuming ............................................................................................... 7
      Defendants Have Provided No Foundation for Their Legal Theory Concerning This Evidence ............................................................................................... 8
IV. Evidence of the Alleged Rules For Spousal Pass Use is Inadmissible .................................... 9
   A. The Corporate Policy and Procedure Is Not an Authentic Document ............................. 9
   B. The Corporate Policy and Procedure Is Not Relevant ................................................... 10
   C. The Corporate Policy and Procedure Would Mislead and Confuse the Jury ... 11
V. Conclusion ............................................................................................................................. 12

# TABLE OF AUTHORITIES

**Cases**
*Adams v. City of New York*, 993 F. Supp. 2d 306, 328 (E.D.N.Y. 2014) ................................. 3
*Brown v. N.Y. City Dep't of Educ.*, 755 F.3d 154 (2d Cir. N.Y. 2014) ............................... 3, 6
*Caldarola v. Calabrese*, 298 F.3d 156 (2d Cir. N.Y. 2002) ...................................................... 2
*Campbell v. City of New York*, 2004 U.S. Dist. LEXIS 7656 (S.D.N.Y. April 30, 2004) ..... 3
*Cohan v. Movtady*, 751 F. Supp. 2d 436 (E.D.N.Y. 2010) ....................................................... 3
*Dallas v. Goldberg*, 143 F. Supp. 2d 312 (S.D.N.Y. 2001) ..................................................... 3
*Gibbs ex rel. Estate of Gibbs v. CIGNA Corp.*, 440 F.3d 571 (2d Cir. 2006) ......................... 3
*Hoodho v. Holder*, 558 F.3d 184 (2d Cir. 2009) .................................................................. 4, 7
*Lowth v. Town of Cheektowaga*, 82 F.3d 563 (2d Cir. 1996) .................................................. 2
*Luce v. United States*, 469 U.S. 38 (1984) ............................................................................... 2
*Meyers v. City of New York,* 2015 U.S. Dist. LEXIS 145847 (S.D.N.Y. Oct. 27, 2015) ....... 2
*O'Brien v. City of Yonkers*, 2013 U.S. Dist. LEXIS 43551 (S.D.N.Y. Mar. 22, 2013) .......... 3
*Palmieri v. Defaria*, 88 F.3d 136, 141 (2d Cir. 1996) .............................................................. 2
*Panetta v. Crowley*, 460 F.3d 388 (2d Cir. N.Y. 2006) ............................................................ 2
*Saleh v. City of New York*, 2007 U.S. Dist. LEXIS 92193, (S.D.N.Y. Dec. 17, 2007) ........... 3
*Spruill v. Levy*, 2008 U.S. Dist. LEXIS 45686 S.D.N.Y. June 12, 2008) ................................ 3
*Stansbury v. Wertman*, 721 F.3d 84 (2d Cir. 2013) ....................................................... 2, 7, 11
*United States v. Herbin*, 367 Fed. Appx. 208 (2d Cir. Vt. 2010) ............................................ 4
*United States v. Roberts-Rahim*, 2015 U.S. Dist. LEXIS 143827 (E.D.N.Y. Oct. 22, 2015) ............................................................................................................................................. 4, 8
*United States v. Simpson*, 929 F. Supp. 2d 177 (E.D.N.Y. Mar. 8, 2013) ............................... 5
*United States v. Vayner*, 769 F.3d 125 (2d Cir. N.Y. 2014) .................................................... 5
*United States v. Ware*, 399 F. App'x 659 (2d Cir. 2010) .................................................... 4, 8
*Vazquez-Mentado v. Buitron*, 2013 U.S. Dist. LEXIS 74398 (N.D.N.Y. May 28, 2013) ....... 3
*Weider v. City of New York*, 2013 U.S. Dist. LEXIS 60890 (E.D.N.Y. Apr. 29, 2013) ......... 3

**Rules**
Fed. R. Evid. 401 ........................................................................................................................ 4
Fed. R. Evid. 403 ........................................................................................................................ 4
Fed. R. Evid. 901 .................................................................................................................. 5, 10

The plaintiff, Tamiko Garris-Rivers, by her attorney David Thompson of Stecklow & Thompson, hereby submits this memorandum of law in opposition to the defendants' motion for summary judgment.

## I. Introduction and Relief Requested

1. As the Court may recall, the plaintiff was arrested on an eastbound LIRR train at Jamaica Station on May 6, 2013. Because her husband works for the LIRR, the plaintiff possessed a valid "spousal" pass allowing her to ride without purchasing a ticket. Nevertheless, one of the charges at arrest was theft of service. This is a motion *in limine* seeking to exclude evidence concerning the plaintiff's use of the spousal pass on occasions prior to the incident in question, and a purported Corporate Policy and Procedure allegedly governing how such passes are to be used. Specifically, the plaintiff seeks an Order:

   a. Excluding evidence of the plaintiff's use of the pass prior to May 6, 2016, as irrelevant because it was not within the knowledge of the arresting officers at the time of arrest, and because it is the subject of a judicial admission by the defendants in their Rule 56.1 statement.
   b. Excluding evidence of purported Corporate Policy and Procedure of the LIRR or MTA regarding the allowed use of spousal passes, as irrelevant because it was not within the knowledge of the arresting officers at the time of arrest, because the Corporate Policy and Procedure document offered in evidence is not authentic, and because it is relevant only to an issue which is the subject of a judicial admission by the defendants.

## II. The Legal Standards

### A. Motion *in Limine*

2. The purpose of a motion *in limine* is to allow the trial court to rule on the admissibility and relevance of certain anticipated evidence before that evidence is

actually offered at trial. *See Luce v. United States*, 469 U.S. 38, 40 n.2 (1984); *Palmieri v. Defaria*, 88 F.3d 136, 141 (2d Cir. 1996).

  **B.**  **Probable Cause is Determined Based on Information Actually Known to the Arresting Officer(s) at the Time of Arrest**

  3.  In a false arrest action, "only probable cause existing at the time of arrest will validate the arrest and relieve the defendant of liability." *Meyers v. City of New York,* 2015 U.S. Dist. LEXIS 145847 (S.D.N.Y. Oct. 27, 2015).

  4.  In determining whether a warrantless arrest was supported by probable cause, a "court must consider **only those facts available to the officer at the time of the arrest and immediately before it**." *Stansbury v. Wertman*, 721 F.3d 84, 89 (2d Cir. 2013) (emphasis added) (quoting *Panetta v. Crowley*, 460 F.3d 388, 395 (2d Cir. N.Y. 2006)). *Accord Caldarola v. Calabrese*, 298 F.3d 156, 162 (2d Cir. N.Y. 2002); *Lowth v. Town of Cheektowaga*, 82 F.3d 563, 569 (2d Cir. 1996). *See also O'Brien v. City of Yonkers*, 2013 U.S. Dist. LEXIS 43551 *33 (S.D.N.Y. Mar. 22, 2013) ("only information known to Detectives McCabe and Skully at the time of the arrest can affect the probable cause determination").

  5.  "Evidence of which the arresting officer had no knowledge at the time the challenged arrest occurred is clearly irrelevant to a determination of whether the officer had probable cause to make the arrest." *Dallas v. Goldberg*, 143 F. Supp. 2d 312, 317 (S.D.N.Y. 2001) (citing FRE 401 and excluding evidence of plaintiff's possession of drug paraphernalia in false arrest case). *Accord Adams v. City of New York*, 993 F. Supp. 2d

306, 328 (E.D.N.Y. 2014) (emphasis added) (collecting cases)[1] ("courts have **rejected** evidence that arose subsequent to an arrest … as probative of probable cause.")

### C. A Party Is Bound By Their Rule 56.1 Statement

6. A party is bound by the facts set forth in their Rule 56.1 statement. *See Brown v. N.Y. City Dep't of Educ.*, 755 F.3d 154, 158 (2d Cir. N.Y. 2014) (citing *Gibbs ex rel. Estate of Gibbs v. CIGNA Corp.*, 440 F.3d 571, 578 (2d Cir. 2006) (stating that parties are bound by factual admissions made to court); *Cohan v. Movtady*, 751 F. Supp. 2d 436, 443 (E.D.N.Y. 2010) ("[P]arties are bound by their concessions in Rule 56.1 Statements.")).

7. "Facts admitted by a party are judicial admissions that bind that party throughout the litigation." *Hoodho v. Holder*, 558 F.3d 184, 191 (2d Cir. 2009). They "have the effect of withdrawing a fact from issue and dispensing wholly with the need for proof of the fact. Thus, a judicial admission, unless allowed by the court to be withdrawn, is conclusive in the case." *Id.* (quoting 2 MCCORMICK ON EVID. § 254 (6th ed. 2006)) "Admissions by parties are not subject to judicial scrutiny to ensure that the admissions are fully supported by the underlying record. … This rule of non-inquiry promotes efficiency and judicial economy by facilitating the concession of specific issues." *Id.* (citation and quotation omitted).

---

[1] The court in Adams cited the following (parentheticals in original): *Weider v. City of New York*, No.09-CV-3914, 2013 U.S. Dist. LEXIS 60890, 2013 WL 1810751 at *7 n.5 (E.D.N.Y. Apr. 29, 2013) ("because these facts came to light after Plaintiff's actual arrest, they are irrelevant to the question of whether the officers had probable cause"); *Vazquez-Mentado v. Buitron*, No. 12-CV-0797, 2013 U.S. Dist. LEXIS 74398, 2013 WL 2318636, at *6 (N.D.N.Y. May 28, 2013) ("One of the purposes of probable cause and warrant requirements and the extensive jurisprudence on the issues is to ensure that post facto knowledge or information is not used to justify arrest and detention." (collecting cases)); *Spruill v. Levy*, No. 04-CV-7316, 2008 U.S. Dist. LEXIS 45686, 2008 WL 2413899, at *4 (S.D.N.Y. June 12, 2008) ("The police may not rely on information gained after-the-fact to show that probable cause existed at the time of arrest." (citing *Saleh v. City of New York*, No. 06-CV-1007, 2007 U.S. Dist. LEXIS 92193, 2007 WL 4437167, at *8 (S.D.N.Y. Dec. 17, 2007))); *Campbell v. City of New York*, No. 02-CV-5186, 2004 U.S. Dist. LEXIS 7656, 2004 WL 943570, at *4 (S.D.N.Y. April 30, 2004)), report and recommendation adopted, No. 04-CV-7316, 2008 U.S. Dist. LEXIS 64468, 2008 WL 3884358 (S.D.N.Y. Aug. 21, 2008).

### D. Federal Rules of Evidence 401 and 403

8. Evidence is relevant if it has a tendency "to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." *United States v. Herbin*, 367 Fed. Appx. 208, 209 (2d Cir. Vt. 2010) (citing Fed. R. Evid. 401). "Relevant evidence, however, 'may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.'" *Id.* (citing Fed. R. Evid. 403).

9. It is proper to exclude evidence on a defense that is, as a matter of law, not available to the defendants, because to admit such evidence would "mislead or confuse the jury." *United States v. Roberts-Rahim*, 2015 U.S. Dist. LEXIS 143827, 22-23 (E.D.N.Y. Oct. 22, 2015) (citing Fed. R. Evid. § 403; *United States v. Ware*, 399 F. App'x 659, 661-62 (2d Cir. 2010); *United States v. Simpson*, 929 F. Supp. 2d 177, 198 (E.D.N.Y. Mar. 8, 2013); *United States v. Carneglia*, 2009 U.S. Dist. LEXIS 8450, 2009 WL 185725, at *1-2 (E.D.N.Y. Jan. 27, 2009)).

### E. Federal Rule of Evidence 901

10. "The requirement of authentication is a condition precedent to admitting evidence" *United States v. Vayner*, 769 F.3d 125, 129-130 (2d Cir. N.Y. 2014) (citations and quotations omitted). "A document may not be admitted into evidence unless it is shown to be genuine." *Id.* "Rule 901 of the Federal Rules of Evidence governs the authentication of evidence and provides, in pertinent part: 'To satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." *Id.* (citing

Fed. R. Evid. 901(a)) "This requirement is satisfied if sufficient proof has been introduced so that a reasonable juror could find in favor of authenticity or identification." *Id.*

### III. Argument

    **A.    Evidence of Plaintiff's Pre-May 6, 2013 Use of the Spousal Pass is Inadmissible**

    11.    The defendants have argued that the plaintiff's was properly arrested for theft of service on May 6, 2013 because her spousal pass had become invalid by reason of her alleged misuse of it prior to the date of arrest. While the defendants provided no factual basis for this argument, in discussion with counsel for the defendants I confirmed that defendants intend to present proof on this point.

    12.    Evidence concerning the Plaintiff's pre-May 6, 2013 use of her spousal pass, including whether it was or was not in compliance with usage rules, is inadmissible under FRE 401 because it is irrelevant. It is irrelevant for two reasons.

    13.    First, the defendants are bound by the factual position they took on this issue in their Rule 56.1 Statement: "Both before and after the incident in question, Plaintiff paid for regular LIRR tickets for her travel to and from work because "you can't use [the spouse pass] every day." (Defendants' June 1, 2015 Rule 56.1 ¶ 58). By presenting this statement as an undisputed fact, the defendants have taken the plaintiff's pre-May 6, 2013 use of her spousal pass out of dispute. According to this statement of fact, the plaintiff paid for tickets and did not use her spousal pass with any frequency, or at all, prior to the incident. Second, there is no evidence in the record that any of the defendants had knowledge of whether, or how, the plaintiff used her spousal pass prior to May 6, 2013. Therefore, even if the plaintiff had violated the rules for use of the spousal

5

pass, (and even if such misuse could invalidate the pass without any affirmative action being taken by the LIRR to revoke it) the plaintiff's pre-May 6, 2013 use of her spousal pass cannot provide a probable cause for the plaintiff's arrest.

### PLAINTIFF'S PRE-MAY 6, 2013 USE OF THE SPOUSAL PASS IS SUBJECT TO DEFENDANTS' JUDICIAL ADMISSION

14. The plaintiff's pre-May 6, 2013 use of her spousal pass is irrelevant because defendants intend to offer it to disprove a judicial admission made by the defendants. The defendants will attempt to prove that before May 6, 2013 the plaintiff violated the usage rules of the spousal pass by using it for her daily commute to and from work. In their Rule 56.1 statement, however, the defendants asserted the following fact as undisputed: "Both before and after the incident in question, Plaintiff paid for regular LIRR tickets for her travel to and from work because 'you can't use [the spouse pass] every day.'" (Defendants' June 1, 2015 Rule 56.1 ¶ 58). The defendants are bound by this statement. *See Brown*, 755 F.3d at 158. This admission "withdraw[s] the fact from issue" "dispens[es] wholly with the need for proof of the fact," and "is conclusive in the case." *Hoodho*, 558 F.3d at 191. Because this issue is conclusively determined by the defendants' admission, the defendants must be precluded from offering evidence on the subject.

### THE ARRESTING OFFICERS KNEW NOTHING OF PLAINTIFF'S PRE-MAY 6, 2013 USE OF THE SPOUSAL PASS

15. The case law is clear that for the defendants to meet their burden to prove the affirmative defense of probable cause, they may only present facts **actually known** to the arresting officers at the time of the arrest. *See Stansbury*, 721 F.3d at 89.

16. There is no evidence that any of the arresting officers knew anything about the plaintiff's pre-May 6, 2013 use of her spousal pass when they arrested her. There is

6

no evidence that any of the defendants had ever seen the plaintiff before, or knew anything about her activities. Indeed, defendant Jonathan Mancini, the conductor on the train on May 6, 2013, testified that he had never seen her before. (Ex. A, Mancini Tr. 37: 19 – 38:11). No defendant witness provided any testimony concerning the plaintiff's pre-May 6, 2013 use of her spousal pass. None of the documents created contemporaneously with the plaintiff's arrest make any reference whatsoever to the plaintiff's pre-May 6, 2013 use of her spousal pass.

17. Because the plaintiff's pre-May 6, 2013 use of her spousal pass was unknown to the arresting officers at the time of the arrest, it is irrelevant to the existence of probable cause, and no such evidence should be presented to the jury. *See Stansbury*, 721 F.3d at 89.

### EVIDENCE OF PRE-MAY 6, 2013 USE OF THE PASS WOULD BE CONFUSING FOR THE JURY AND TIME-CONSUMING

18. As stated above, facts concerning the plaintiff's pre-May 6, 2013 use of her spousal pass are not relevant to the determination of probable cause. Accordingly admission of such evidence would "mislead or confuse the jury," because the jury would naturally (but incorrectly) believe that the evidence bore some relation to one of the ultimate facts the jury is tasked with deciding. *See Roberts-Rahim*, 2015 U.S. Dist. LEXIS 143827, 22-23 (citing Fed. R. Evid. § 403; *Ware*, 399 F. App'x at 661-62 and other authority).

19. The sole source of evidence on the plaintiff's use of her pass is the plaintiff's own testimony. In deposition, the plaintiff's testimony on this issue took up 29 pages of transcript. The testimony addresses six years of commuting, from two different workplaces, as well as varying circumstances that affected the manner in which the

plaintiff commuted, such as whether the plaintiff would be meeting with her husband during the commute. (Ex. B, Garris-Rivers, pp. 9-37). In duration of time, a recapitulation of this testimony would take at least forty minutes.

20. In their 56.1 statement, the defendants summarized that testimony as follows: "Both before and after the incident in question, Plaintiff paid for regular LIRR tickets for her travel to and from work." (Defendants' June 1, 2015 Rule 56.1 ¶ 58). If the defendants intend to demonstrate that the plaintiff used her spousal pass **improperly**, thereby invalidating it, the would somehow have take the plaintiff through the same subject matter and obtain different testimony than that which was obtained in the plaintiff's deposition. The defendants can only hope or speculate that they may be able to do so. It is not worth wasting the jury's time on so speculative an endeavor.

### DEFENDANTS HAVE PROVIDED NO FOUNDATION FOR THEIR LEGAL THEORY CONCERNING THIS EVIDENCE

21. The Defendants have not established either a factual or legal foundation connecting evidence of the plaintiff's pre-May 6, 2013 use of her pass with the defendants' defense of probable cause.

22. The defendants apparently will contend that plaintiff's pre-May 6, 2013 use of her spousal pass invalidated her pass, and that this invalidation of her pass occurred automatically when the pass was allegedly misused, without any action (such as revocation of the pass) having been taken by the LIRR. The defendants have introduced no evidence that this is, in fact, how LIRR spousal passes work. Therefore, even if there were no other objection to the introduction of this evidence, the lack of any foundation requires its exclusion.

## IV. Evidence of the Alleged Rules For Spousal Pass Use is Inadmissible

23. In their Rule 56.1 Statement for the defendants' motion for summary judgment, the defendants placed emphasis on a "Corporate Policy and Procedure" (See alleged Corporate Policy and Procedure, annexed hereto as Ex. C) of the LIRR which the defendants allege was applicable to the plaintiff's use of her spousal pass, and which they contend she violated. The exact relevance of the Corporate Policy and Procedure was not explained by the defendants in their motion for summary judgment – it was not mentioned in any argument in the defendants' memorandum of law. The plaintiff respectfully requests that the document be excluded from evidence as both irrelevant and unauthenticated.

24. This document should be excluded as being unauthenticated, and indeed, un-authentic on its face.

25. This document should be excluded as irrelevant because: 1) there is no evidence the arresting officers knew of its contents when they made the arrest, and 2) the issue of whether the plaintiff's pre-May 6, 2013 use of her spousal pass violated this policy is precluded from dispute by the defendants' admission.

### A. The Corporate Policy and Procedure Is Not an Authentic Document

26. The defendants disclosed the "Corporate Policy and Procedure" without any authentication that the document was, in fact, the effective policy and procedure at on May 6, 2013 when the plaintiff was arrested. The document bears no certificate of authentication by a document custodian or one with first-hand knowledge, Furthermore, the document states on its face that it is an "uncontrolled" version of the Corporate Policy and Procedure, and that the "online version is most current."

27. The defendants provided no evidence that the document was a correct and complete copy of Corporate Policy and Procedures effective on May 6, 2013. In fact, the document itself says that it is an "uncontrolled" copy, and that the "online version is most current." Def. Rule 56.1 ¶¶ 59-63, Mot. Sum. J. Ex F (bottom of each page). The "online version" of the document was never produced by the defendants.

28. "Federal Rule of Evidence 901(a) requires that an item of evidence be 'authenticated' through introduction of evidence sufficient to warrant a finding that the item is what the proponent says it is." *Crawford v. Tribeca Lending Corp.*, 815 F.3d 121, 126 (2d Cir. 2016) (citing Fed. R. Evid. 901). With respect to the Corporate Policy and Procedures, no such evidence, whether testimonial or otherwise, was ever disclosed. No such evidence was presented on summary judgment. On its face, the document contains a warning that it is not reliable because it is "uncontrolled,' and that the online version is the version that is "most current" and can be relied on. There is no basis for the Court to conclude that this document is what it must be if it were to have any relevance at all: a true copy of the Corporate Policy and Procedures as they were in effect on May 6, 2013.

29. In addition, there is no testimony establishing that there are no other policies and practices applicable to the use of spousal passes that are not part of the purported Corporate Policy and Procedures document. In other words, there is no testimony establishing that this Corporate Policy and Procedures document is a complete expression of the policies governing these passes.

**B.     The Corporate Policy and Procedure Is Not Relevant**

30. As discussed above, probable cause for the plaintiff's arrest can be found only on the basis of information **actually known** to the arresting officers at the time of the arrest. *See Stansbury*, 721 F.3d at 89. There is no evidence that the arresting officers

knew of this Corporate Policy and Procedures when making the plaintiff's arrest.  In addition, this document relates to a

31.  Furthermore, there is no testimony that – even if this were an authentic document – it is in fact a policy that applies to the kind of pass the plaintiff was using on May 6, 2013.  To the contrary, there is testimony that the sole written policy concerning the use of the policy is written on the pass itself.  The conductor, defendant Jonathan Mancini, testified as follows:

> Q.  Where is the rule, if there is one, written down that defines how often a pass can be used?
> A.  It's written on the pass itself.  (Ex. A, Mancini Tr. 13:20-22).

32.  There is no witness testimony to support the contention that, contrary Conductor Mancini's statement, the alleged Corporate Policy and Procedure governed the use of the plaintiff's pass.

### C. The Corporate Policy and Procedure Would Mislead and Confuse the Jury

33.  The Corporate Policy and Procedure should be excluded because it would mislead and confuse the jury.  As Conductor Mancini testified, written on the pass itself is a policy regarding its use, which states that it is not to be used for "daily commute."  Conductor Mancini explained his understanding of what this means:

> Q. Are there any terms or conditions imposed on a spouse or dependent pass that affect its validity other than the expiration date?
> A. They're exempt for daily use.
> Q. How do you determine whether a pass is being improperly used on a daily basis?
> A. If you see the same person every day.
> Q. How often is a person with a spouse or dependent pass permitted to use the pass?
> A. Anything other than every day.

> Q. Every other day would be okay?
>
> A. I would say that is okay. (Ex. A, Mancini Tr. 13:8-18).

34. The Corporate Policy and Procedure, on the other hand, is nine pages of terms, and a jury would be asked, if it considered the document, to do a coordinated reading of various clauses not unlike contract terms. Especially in the absence of any foundation establishing that this alleged Corporate Policy and Procedure was actually what governed use of the plaintiff's pass, there is no reason to subject the jury to the task of interpreting this document. Making jury confusion especially likely is the fact that the defendants disclosed no witness capable of testifying to the meaning and application of this document: the jury would be left to their own devices to make of it what they could.

## V.    Conclusion

35. For the foregoing reasons, the plaintiff respectfully request that this Court issue an order:

    a. Excluding evidence of the plaintiff's use of the pass prior to May 6, 2016, and
    b. Excluding evidence of purported Corporate Policy and Procedure of the LIRR or MTA regarding the allowed use of spousal passes.

DATED:	New York, N.Y.
	May 26, 2016

                                                Respectfully submitted,

                                          _____//s//_____
                                          David A. Thompson, Esq.
                                          Stecklow & Thompson
                                          *Attorneys for the Plaintiff*
                                          217 Centre Street, 6th Floor
                                          New York, N.Y. 10013
                                          Phone: (212) 566-8000
                                          Fax:    (212) 202-4952
                                          dave@sctlaw.nyc