IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
TAMIKO GARRIS-RIVERS,

                                        Index No. 13-cv-9034 (GBD) (RLE)

                                        ECF CASE

                      PLAINTIFF,

        -against-

                                      **PLAINTIFF'S PROPOSED JURY INSTRUCTIONS**

THE METROPOLITAN TRANSPORTATION
AUTHORITY, THE METROPOLITAN
TRANSPORTATION AUTHORITY POLICE
DEPARTMENT, THE LONG ISLAND RAIL ROAD,
et al.

                    DEFENDANTS.
-----------------------------------------------------------------X

# PART I: GENERAL INSTRUCTIONS

## I.    Introductory Remarks

### A.    Juror Attentiveness

1.    Members of the jury, you are about to begin your final duty, which is to decide the fact issues in this case. Before you do that, I will instruct you on the law. Please pay close attention to me.  I will go slowly and will be as clear as possible.

### B.    Role of the Court

2.    You have now heard all of the evidence in the case as well as the final arguments of the lawyers for the parties. My duty at this point is to instruct you as to the law. It is your duty to accept these instructions of law and apply them to the facts as you

determine them, just as it has been my duty to preside over the trial and decide what testimony and evidence is relevant under the law for your consideration.

3.      On these legal matters, you must take the law as I give it to you. If any attorney has stated a legal principle different from any that I state to you in my instructions, it is my instructions that you must follow.

4.      You should not single out any instruction as alone stating the law, but you should consider my instructions as a whole when you retire to deliberate in the jury room. You will receive a copy of these instructions to take with you into the jury room.

5.      You should not be concerned about the wisdom of any rule that I state. Regardless of any opinion that you may have as to what the law may be — or ought to be — it would violate your sworn duty to base a verdict upon any view of the law other than the one I give you.

### C.      Role of the Jury

6.      As I have said, your role is to consider and decide the fact issues that are in this case. You, the members of the jury, are the sole and exclusive judges of the facts. You decide what the evidence means; you determine the credibility or believability of the witnesses; you resolve whatever conflicts may be in the testimony; you draw whatever reasonable inferences and conclusions you decide to draw from the facts as you have determined them; and you determine the weight of the evidence.

7.      In determining the facts, you must rely upon your own recollection of the evidence. What the lawyers have said in their opening statements, in their closing arguments, in their objections, or in their questions, is not evidence. Nor is anything I may have said during the trial or may say during these instructions about a fact issue to be taken instead of your own independent recollection. What I say is not evidence. It is

2

your own independent recollection of the evidence that controls. Similarly, remember that a question put to a witness is never evidence. Only the answer is evidence. However, you may not consider any answer that I directed you to disregard or that I directed struck from the record.

8.      If there is any difference or contradiction between what any lawyer has said and what you decide the evidence showed, or between anything I may have said and what you decide the evidence showed, it is your view of the evidence — not the lawyers' and not mine — that controls.

9.      Because you are the sole and exclusive judges of the facts, I do not mean to indicate any opinion as to the facts or what your verdict should be. The rulings I have made during the trial are not indicative of my views of what your decision should be as to whether Ms. Garris-Rivers or the defendants have presented the more convincing evidence.

10.      I also ask you to draw no inference from the fact that upon occasion I asked questions of certain witnesses. These questions were intended only for clarification or to move things along. They were not intended to suggest any opinions on my part as to the verdict you should render or whether any of the witnesses may have been more credible or less credible than any of the other witnesses. It is important that you understand that I wish to convey no opinion as to the verdict you should render in this case, and that if I did convey such an opinion, you would not be obliged in any way to follow it.

11.      In determining the facts, you must weigh and consider the evidence without regard to sympathy, prejudice, or passion for or against any party. I will later discuss with you how to decide on the credibility – or believability – of the witnesses.

### D.   The Parties

12.     This is a civil case.  The plaintiff, TAMIKO GARRIS-RIVERS, is the party who brought this lawsuit.

13.     There is more than one defendant.  The METROPOLITAN TRANSIT AUTHORITY (which I may also call the MTA), the LONG ISLAND RAIL ROAD (which I may also call the LIRR), POLICE OFFICER ROBERT RAU, POLICE OFFICER MATTHEW REILLY, POLICE OFFICER JOUAN OLIVARES, POLICE OFFICER MICHAEL HAGGERTY, LIRR EMPLOYEE JOHN MANCINI, and LIRR EMPLOYEE BENJAMIN GARDNER are the defendants.  The defendants are the parties against whom the lawsuit was brought.

14.     In these instructions, I will use the term "the individual defendants" to refer collectively to the defendants who are human beings.  Two of the defendants, the MTA and the LIRR, are not human beings.  When I use the term "the individual defendants" I am not referring to the MTA and the LIRR.

### E.   Separate Verdicts

15.     As I mentioned earlier, the plaintiff has brought claims against more than one defendant.  You should consider each claim against each defendant separately.  Similarly, you should consider each defendant's defenses separately.  Your verdict must be based solely upon the evidence about the plaintiff and each defendant separately.

16.     If you find that the plaintiff has proven her claims against one defendant, it does not necessarily mean that you must reach the same verdict for every defendant.  You might find that the plaintiff has proven her claims against some defendants, but not against others.  You might find that some defendants have proven their defenses, but that others have not.

17.     Therefore, your final verdict could be that all of the defendants are liable to the plaintiff, or that none of them are liable to the plaintiff, or that some of them are liable to the plaintiff but others are not.

### F.     Burden of Proof

18.     The plaintiff, Tamiko Garris-Rivers, is bringing claims against the defendants.  The defendants, for their part, are raising defenses against those claims.  To prove a claim or a defense, the plaintiff or defendant must prove certain basic facts necessary to establish the claim or defense.  We call these basic facts the "elements" of the claim or defense.  Let me explain what I mean.  If I wanted to prove that you got wet because it is raining outside, I would have to prove certain basic facts: **First**, that you got wet; **Second**, that it is raining outside; and **Third,** that the rain outside is what caused you to get wet.  So, in my example, these three basic facts are the "elements" I need to prove in order to prove that you got wet because it is raining outside.

19.     The plaintiff, Tamiko Garris-Rivers, has the burden (or obligation) of proving each element of her claims by a preponderance of the evidence.  The defendants have the burden (or obligation) of proving each element of their defenses by a preponderance of the evidence.  Later on, I will explain more about the difference between a **claim** made by the plaintiff and a **defense** raised by the defendants.

20.     Establishing a fact by a preponderance of the evidence means proving that the fact is more likely true than not true. A preponderance of the evidence means the greater weight of the credible evidence. It does not mean the greater number of witnesses or the greater length of time taken by either side. The phrase refers to the quality of the evidence, that is, its convincing quality and the effect that it has on your minds.  A

preponderance of the evidence is at least slightly more convincing to you than the evidence opposing it.

21.     The law requires Ms. Garris-Rivers to meet the burden of proving each element of her claims.  This means that the evidence that supports each element of the claim must appeal to you as more nearly representing what took place than the evidence opposing it.  If it does not, or if it weighs so evenly that you are unable to say which is more likely, then Ms. Garris-Rivers **has not** proven her claim by a preponderance of the evidence.  In that case, you must decide the question in favor of the defendant.  If the evidence favoring Ms. Garris-Rivers' claims outweighs the evidence opposed to them, even if only by a little bit, then Ms. Garris-Rivers **has** proven her claim by a preponderance of the evidence.

22.     The law requires the defendants to meet the burden of proving the elements of their defenses.  This means that the evidence that supports each element of the defense must appeal to you as more nearly representing what took place than the evidence opposed to the claim.  If it does not, or if it weighs so evenly that you are unable to say which is more likely, then the defendants **have not** proven their defense by a preponderance of the evidence.  In that case, you must decide the question in favor of the plaintiff.  If the evidence favoring the defendants' defenses outweighs the evidence opposed to them, even if only by a little bit, then the defendants **have** proven their defense a preponderance of the evidence.

23.     Some of you have heard of proof "beyond a reasonable doubt," which is the proper standard of proof for a **criminal** trial.  However, a civil case does not use the standard of proof "beyond a reasonable doubt."  Neither the plaintiff nor the defendants have to satisfy that requirement, and therefore you should put it out of your mind.

### G.   Evidence and What Is Not Evidence

24.   The evidence from which you are to decide what the facts are consists of:

>    a.      The sworn testimony of witnesses, on both direct and cross-examination, regardless of who called the witness;
>    b.      Documents that have been admitted into evidence, regardless of who submitted the document into evidence;
>    c.      Any facts to which all the lawyers have agreed or stipulated; and
>    d.      Any fact which I have instructed you to accept as true.

25.   Nothing else is evidence; not what the lawyers say, not what I say, and not anything you may have heard outside the courtroom.  Certain documents may have been shown to witnesses without being admitted into evidence.  These documents are not evidence.  The attorneys may have created demonstrative exhibits that were shown to you for the purpose of helping to explain the evidence or to make an argument.  These demonstrative exhibits are not evidence.

26.   You will have access to the documents that have been admitted into evidence while you deliberate.  During deliberations, you can ask for sworn witness testimony to be read back to you.

### H.   Direct and Circumstantial Evidence

27.   There are two kinds of evidence: **direct** and **circumstantial**.  Direct evidence is direct proof of a fact, such as testimony by a witness about what that witness personally experienced through his own senses — something seen, felt, touched, heard, or tasted. Circumstantial evidence is evidence that tends to prove a disputed fact by proof of other related facts.

28.   To give a simple example, suppose that when you came into the courthouse today the sun was shining and it was a nice day, but that the courtroom blinds were drawn and you could not look outside. Then later, as you were sitting here, people began walking in with wet umbrellas and, soon after, others walked in with wet raincoats.

29.     Now, on our assumed facts, you cannot look outside of the courtroom and you cannot see whether or not it is raining. So you have no direct evidence of that fact. But, on the combination of the facts about the umbrellas and the raincoats, it would be reasonable for you to conclude that it had begun raining.

30.     That is all there is to circumstantial evidence. Using your reason and experience, you can infer from established facts the existence or the nonexistence of some other fact.

31.     The law makes no distinction between direct and circumstantial evidence. Circumstantial evidence is of no less value than direct evidence and you can consider either or both, and can give them such weight as you conclude is appropriate.

## I.      Inferences

32.     During the trial you may have heard the attorneys use the term "inference," and in their arguments they may have asked you to infer, on the basis of your reason, experience, and common sense, from one or more proven facts, the existence of some other facts.  An inference is a logical conclusion that a disputed fact exists, because of another fact that has been shown to exist.

33.     There are times when different possible inferences that might be drawn from a single set of facts, whether proved by direct or circumstantial evidence. It is for you, and you alone, to decide what inferences or conclusions you will draw.  The process of drawing inferences from facts in evidence is not a matter of guesswork or speculation. An inference is a deduction or conclusion that you, the jury, are permitted to draw — but not required to draw — from the facts that have been established by either direct or circumstantial evidence. In drawing inferences you should exercise your common sense.

34.     So, while you are considering the evidence presented to you, you are permitted to draw, from the facts that you find to be proven, such reasonable inferences as would be justified in light of your experience.

### J.     Credibility of Witnesses

35.     You have had the opportunity to observe all the witnesses.  These instructions apply to your determination of the credibility of the witnesses that actually appeared and testified during this trial.  It is now your job to decide how believable each witness was in his testimony.

36.     How do you determine where the truth lies?  You should use all the tests for truthfulness that you would use in determining matters of importance to you in your everyday life.  You should consider any bias or hostility that a witness may have shown for or against any party as well as any interest the witness has in the outcome of the case. It is your duty to consider whether the witness has permitted any such bias or interest to affect his or her testimony.

37.     You should consider the opportunity the witness had to see, hear, and know the things about which they testified, the accuracy of their memory, their candor or lack of candor, their intelligence, the reasonableness and probability of their testimony, and its consistency or lack of consistency and its corroboration or lack of corroboration with other believable testimony. You watched the witnesses testify.  Everything a witness said or did on the witness stand counts in your determination. How did the witness appear?  What was the witness's demeanor while testifying? Often, it is not what people say but how they say it that moves us.

38.     In deciding whether to believe a witness, keep in mind that people sometimes forget things.  You need to consider, therefore, whether the witness's

testimony reflects an innocent lapse of memory or an intentional falsehood, and that may depend on whether it has to do with an important fact or with only a small detail.

39.     The fact that a witness has been convicted of a felony offense, or a crime involving dishonesty or false statement, is another factor you may consider in deciding whether you believe that witness.  However, an accusation or an arrest that does not result in a conviction is not a factor you should consider.

40.     If you find that any witness has willfully testified falsely as to any material fact (that is, as to an important matter), the law permits you to disregard completely the entire testimony of that witness based on the idea that a person who intentionally testifies falsely about one material fact is likely to testify falsely about everything.  You are not required, however, to consider such a witness as totally unworthy of belief.  You can accept as much of the witness's testimony as you believe to be true, and disregard what you feel is false. As the sole judges of the facts, you must decide which of the witnesses you will believe, what portion of their testimony you accept, and what weight you will give to it.

41.     Lastly, the testimony of a law enforcement officer should be considered by you just as any other evidence in this case, and in evaluating an officer's credibility you should use the same guidelines which you apply to the testimony of any witness. You should not give either greater or lesser credibility to the testimony of a witness merely because he or she is a law enforcement officer.

### K.     Impeachment by Prior Inconsistent Statements

42.     You have heard evidence that at some earlier time a witness has said or done something that counsel argues is inconsistent with the witness's trial testimony. If

you find that a witness made an earlier statement that conflicts with his trial testimony, you may consider that fact in deciding how much of his trial testimony, if any, to believe.

43.     In making this determination, you may consider whether there was, in fact, any inconsistency; whether the witness purposely made a false statement or whether it was an innocent mistake; whether the inconsistency concerns an important fact, or whether it had to do with a small detail; whether the witness had an explanation for the inconsistency, and whether that explanation appeals to your common sense. It is your duty, based upon all the evidence and your own good judgment, to decide how much weight to give to the inconsistency.

44.     You should keep in mind, of course, that a simple mistake by a witness does not necessarily mean that the witness was not telling the truth as he or she remembers it, because people naturally tend to forget some things or remember other things inaccurately. So, if a witness has made a misstatement, you need to consider whether it was simply an innocent lapse of memory or an intentional falsehood; and the significance of that may depend on whether it has to do with an important fact or with only an unimportant detail.

**L.     Interest in Outcome**

45.     In evaluating the credibility of the witnesses, you can take into account any evidence that a witness may benefit in some way from the outcome of this case. You can also take into account any evidence that the witness has an interest in testifying falsely for any other reason.  Such an interest in the outcome might create a motive to testify falsely and might sway a witness to testify in a way that advances the witness's own interest.  Therefore, if you find that any witness whose testimony you are

considering might have an interest in the outcome of this trial, then you can bear that factor in mind when evaluating the credibility of his or her testimony.

46.     Each of the parties to this case (that is, the plaintiff and each of the defendants) has an interest in the outcome of this case.  Several of the witnesses are employed by the defendants the Long Island Rail Road or the Metropolitan Transit Authority.  Their relationship with and employment by the Long Island Rail Road or the Metropolitan Transit Authority might make these witnesses interest are matters for you to consider when deciding if the witness has an interest in the outcome of the case.

47.     You can consider the interest or benefit of a witness, together with your observation of the witnesses, the testimony you have heard, and the other evidence that has been presented, in determining what weight you will give to their testimony.

48.     Keep in mind, however, that it does not automatically follow that testimony given by an interested witness is to be disbelieved. There are many people who, no matter what their interest in the outcome of the case may be, or what benefit they might obtain, would not testify falsely.  It is for you to decide, based upon your own perceptions and common sense, how much, if at all, the witness's interest has affected his or her testimony.

## PART II: SUBSTANTIVE LAW

49.     I will now give you instructions on the law relating to the specific claims made by the plaintiff, and the defenses raised by the defendants.  As I explained earlier, the plaintiff brings claims against individual defendants (that is, defendants who are people), and against the MTA and the LIRR (which are not people).  The law that relates to the plaintiff's claims against the individual defendants is somewhat different from the

law that relates to the plaintiff's claims against the MTA and the LIRR.  I will first describe the law that relates to the individual defendants.

50.     The plaintiff is bringing two different claims against each of the individual defendants, POLICE OFFICER ROBERT RAU, POLICE OFFICER MATTHEW REILLY, POLICE OFFICER JOUAN OLIVARES, POLICE OFFICER MICHAEL HAGGERTY, LIRR EMPLOYEE JOHN MANCINI, and LIRR EMPLOYEE BENJAMIN GARDNER.  The first claim is called False Arrest.  The second claim is called Failure to Intervene.  The plaintiff bears the burden to prove the elements of these claims by a preponderance of the evidence.

51.     The plaintiff is bringing a claim against the defendants the METROPOLITAN TRANSIT AUTHORITY and the LONG ISLAND RAIL ROAD. This claim is that the MTA and LIRR are responsible for harm wrongfully caused by their employees, the individual defendants.  The MTA and the LIRR are liable only if you find that one or more of their employees wrongfully harmed the plaintiff.

52.     The individual defendants raise the same defense to both of these claims. This defense is called Probable Cause.  The defendants bear the burden to prove this defense by the preponderance of the evidence.

53.     I will first instruct you on the elements that the plaintiff must prove to prove her claims.  Then, I will instruct you on what the defendants must prove to prove their defense.

## I.     False Arrest[1]

---

[1]     Because case law in the Second Circuit states that the elements of false arrest under Section 1983 and common law false arrest are the same, the plaintiff believes it is unnecessary to separately instruct the jury on these two claims.  Separate instruction of two parallel claims could be needlessly confusing to the jury.

54.     The plaintiff, TAMIKO GARRIS-RIVERS, is bringing a claim for false arrest against each of the individual defendants, POLICE OFFICER MATTHEW REILLY, POLICE OFFICER JOUAN OLIVARES, POLICE OFFICER MICHAEL HAGGERTY, LIRR EMPLOYEE JONATHAN MANCINI, and LIRR EMPLOYEE BENJAMIN GARDNER.  In her claim for false arrest, the plaintiff claims that she was arrested without a lawful reason, violating her rights under the Fourth Amendment to the United States Constitution and under state law.

55.     In order to reach a verdict on this claim, you will first have to consider whether TAMIKO GARRIS-RIVERS has met her burden of proof on the elements of her claim against one or more of the individual defendants.  I will explain what these elements are in a moment.  If the plaintiff does not prove the elements of her claim against at least one defendant, then you do not need to consider this claim any further.

56.     If you find that she has met her burden against at least one individual defendant, then for each such individual defendant you must then consider whether that defendant has met their burden of proof for the elements of their defense of probable cause.  I will explain what the elements of this defense are later on.  If you find that the defendant has met their burden of proof on this defense, then your verdict must be for that defendant on this claim.  If you find that the defendant did not meet their burden, then your verdict must be for the plaintiff on this claim.

**A.     The Elements of the Claim of False Arrest**

57.     There are four elements[2] to the plaintiff's claim of false arrest: (1) the defendant intentionally confined the plaintiff, (2) the plaintiff was conscious of her confinement, (3) the plaintiff did not consent to the confinement and (4) the plaintiff's

---

[2]     *Weyant v. Okst*, 101 F.3d 845, 853 (2d Cir. N.Y. 1996).  *See also Broughton v. State*, 37 N.Y.2d 451, 456 (1975).

arrest was not privileged by a warrant for her arrest.[3]  The plaintiff, TAMIKO GARRIS-

RIVERS, must prove each of these elements by a preponderance of the evidence.

58.      If the plaintiff proves these elements, then the plaintiff is entitled to a

verdict in her favor, unless the individual defendant proves their defense of probable

cause.[4]

### ELEMENT 1: THE DEFENDANT INTENDED TO CONFINE THE PLAINTIFF

59.      To prove her claim for false arrest, the first element that the plaintiff must

prove by a preponderance of the evidence is that the defendant intentionally confined the

plaintiff.   There is no dispute that the plaintiff was confined when the plaintiff was

arrested.  Therefore, for each individual defendant, the plaintiff must prove that the

particular defendant was personally involved in the plaintiff's arrest, and that the

defendant acted intentionally.[5]

60.      A particular defendant is personally involved in the plaintiff's arrest if the

defendant personally participated in the arrest.[6]  A police officer can be personally

---

[3]      *Marom v. City of New York*, 2016 U.S. Dist. LEXIS 28466, *16  (S.D.N.Y. Mar. 7, 2016).  Judge Castel wrote: "[A]s a matter of substantive law, there is a presumption that 'whenever there has been an arrest and imprisonment without a warrant' the arrest is unlawful. 'Where an officer makes an arrest without a warrant, the presumption arises that the plaintiff's arrest was unlawful.'  In such cases, it is defendants who bear the burden 'of proving that probable cause existed for the plaintiff's arrest' as an affirmative defense.  Thus, the requirement that plaintiffs 'show that . . . [their] confinement was not otherwise privileged' is satisfied simply by alleging that the arrest was made without a warrant.  The defendants bear the burden of proving that probable cause existed for the plaintiff's arrest." (quoting *Broughton v. State*, 37 N.Y.2d 451 458 (1975), *cert den. sub nom. Schanbarger v. Kellogg*, 423 U.S. 929 (1975); *Jenkins v. City of New York*, 478 F.3d 76, 88 (2d Cir. 2007); *Savino v. City of New York*, 331 F.3d 63, 76 (2d Cir. N.Y. 2003)).

[4]      *See Warren v. Pataki*, 2016 U.S. App. LEXIS 8975, *33 (2d Cir. N.Y. May 17, 2016) (plaintiff entitled to nominal damages "[a]bsent a showing of causation [of the plaintiffs' injuries by the defendants' unconstitutional acts] and actual injury").

[5]      *Patterson v. Cty. of Oneida*, N.Y., 375 F.3d 206, 229 (2d Cir. 2004).

[6]      *Provost v. City of Newburgh*, 262 F.3d 146, 154 (2d Cir. N.Y. 2001).  *See also Warren v. Pataki*, 2016 U.S. App. LEXIS 8975, * 19-20 (2d Cir. N.Y. May 17, 2016) (five *Colon* factors still applicable in Second Circuit) (citing *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995)).

involved in an arrest even if that officer is not the arresting officer.[7]  For example, a police officer can be personally involved in an arrest by ordering the arrest, or helping another officer perform the arrest.[8]  A person who is not a police officer can be personally involved in an arrest if that person instigated or caused the arrest.[9]

61.     A particular defendant acted intentionally if the defendant's actions were done knowingly — that is, the defendant's actions were done voluntarily and deliberately, and not by accident.  It is not necessary to find that a defendant specifically intended to deprive the plaintiff of her rights, or to cause her harm, in order to find in favor of the plaintiff.  Although the plaintiff must show that the defendant acted intentionally, the defendant's actual motivation is irrelevant.  That means that if the defendant falsely arrested the plaintiff, it does not matter whether defendant had good motivations.  At the same time, if the plaintiff's arrest was lawful, then a defendant's bad motivations are also irrelevant.

### ELEMENT 2: THE PLAINTIFF WAS CONSCIOUS OF HER CONFINEMENT

62.     To prove her claim for false arrest, the second element of the claim that the plaintiff must prove by a preponderance of the evidence is that the plaintiff was conscious of her confinement.  The parties agree that the plaintiff was conscious of her confinement.

63.     Therefore, I instruct you that you must find for the plaintiff on this element of her claim.

---

[7]     *See Mack v. Town of Wallkill*, 253 F. Supp. 2d 552, 558 (S.D.N.Y. 2003).

[8]     *Provost v. City of Newburgh*, 262 F.3d 146, 155 (2d Cir. N.Y. 2001).

[9]     "[E]ven where there is no claim that a defendant actually restrained or confined a plaintiff, a claim of false arrest or false imprisonment may lie where a plaintiff can 'show that . . . defendants instigated his arrest, thereby making the police . . . agents in accomplishing their intent to confine the plaintiff.'"  *Weintraub v. Bd. of Educ. of N.Y.,* 423 F. Supp. 2d 38, 56 (E.D.N.Y. 2006) (quoting *Carrington v. City of New York*, 201 A.D.2d 525, 527, 607 N.Y.S.2d 721 (2d Dept.1994).

### ELEMENT 3: THE PLAINTIFF DID NOT CONSENT TO THE CONFINEMENT

64.     To prove her claim for false arrest, the third element of the claim that the plaintiff must prove by a preponderance of the evidence is that the plaintiff did not consent to her confinement.  The parties agree that the plaintiff did not consent to her confinement.

65.     Therefore, I instruct you that you must find for the plaintiff on this element of her claim.

### ELEMENT 4: THE CONFINEMENT WAS NOT PRIVILEGED BY A WARRANT FOR HER ARREST

66.     To prove her claim for false arrest, the fourth element of the claim is that the plaintiff must prove by a preponderance of the evidence is that the plaintiff's arrest was not privileged by a warrant for her arrest.  To meet this burden, the plaintiff must show that at the time of her arrest, there was no warrant for her arrest.[10]  The parties are in agreement that at the time of her arrest, there was no warrant for the plaintiff's arrest.

67.     Therefore, I instruct you that you must find that the plaintiff has proven this element of her claim.

## B.      The Defendants' Defense of Probable Cause

---

[10]     *Marom v. City of New York*, 2016 U.S. Dist. LEXIS 28466, *16  (S.D.N.Y. Mar. 7, 2016).  Judge Castel wrote: "[A]s a matter of substantive law, there is a presumption that 'whenever there has been an arrest and imprisonment without a warrant' the arrest is unlawful. 'Where an officer makes an arrest without a warrant, the presumption arises that the plaintiff's arrest was unlawful.'  In such cases, it is defendants who bear the burden 'of proving that probable cause existed for the plaintiff's arrest' as an affirmative defense.  Thus, the requirement that plaintiffs 'show that . . . [their] confinement was not otherwise privileged' is satisfied simply by alleging that the arrest was made without a warrant.  The defendants bear the burden of proving that probable cause existed for the plaintiff's arrest."  (quoting *Broughton v. State*, 37 N.Y.2d 451 458 (1975), *cert den. sub nom. Schanbarger v. Kellogg*, 423 U.S. 929 (1975); *Jenkins v. City of New York*, 478 F.3d 76, 88 (2d Cir. 2007); *Savino v. City of New York*, 331 F.3d 63, 76 (2d Cir. N.Y. 2003)).

68.     If the plaintiff meets her burden to prove each of the four elements of this claim against a particular defendant, then it becomes the defendant's burden to prove by a preponderance of the evidence that there was probable cause for the plaintiff's arrest.

69.     I will explain what probable cause means a little later.

## II.     Failure to Intervene

70.     The plaintiff, TAMIKO GARRIS-RIVERS, contends that the defendants violated the plaintiff's constitutional rights by arresting her, and that the individual defendants, POLICE OFFICER MATTHEW REILLY, POLICE OFFICER JOUAN OLIVARES, POLICE OFFICER MICHAEL HAGGERTY, LIRR EMPLOYEE JONATHAN MANCINI, and LIRR EMPLOYEE BENJAMIN GARDNER, should be liable for that violation because each one of them had a duty to take action to stop the violation, but failed to do so.

71.     In order to reach a verdict on this claim, you will first have to consider whether TAMIKO GARRIS-RIVERS has met her burden of proof on the elements of her claim against one or more of the individual defendants.  I will explain what these elements are in a moment.  If the plaintiff does not prove the elements of her claim against at least one defendant, then you do not need to consider this claim any further.

72.     If you find that she has met her burden against at least one individual defendant, then for each such individual defendant you must then consider whether that defendant has met their burden of proof for the elements of their defense of probable cause.  I will explain what the elements of this defense are later on.  If you find that the defendant has met their burden of proof on this defense, then your verdict must be for that defendant on this claim.  If you find that the defendant did not meet their burden, then your verdict must be for the plaintiff on this claim.

### A.   The Elements of the Failure to Intervene

73.     There are four elements of a claim of failure to intervene: 1) the plaintiff's

constitutional rights were violated; 2) a reasonable person in the defendant's position

would know that the plaintiff's constitutional rights were being violated; 3) the defendant

had a realistic opportunity to intervene and prevent the harm; and 4) the defendant did not

take reasonable steps to intervene.[11]  The plaintiff, TAMIKO GARRIS-RIVERS, must

prove each of these elements by a preponderance of the evidence.  The plaintiff does not

have to prove that a defendant was personally involved in the arrest in order for you to

reach a verdict against that defendant on this claim.[12]

#### ELEMENT 1: THE PLAINTIFF'S CONSTITUTIONAL RIGHTS WERE VIOLATED

74.     To prove her claim for failure to intervene, the first element of the claim

that the plaintiff must prove by a preponderance of the evidence is that the plaintiff's

constitutional rights were violated.

75.     In this case, the sole constitutional right that the plaintiff claims was

violated is her right not to be falsely arrested.

76.     If you reach the verdict that any defendant is liable to the plaintiff for her

claim of false arrest, then the plaintiff has demonstrated that her constitutional rights were

violated, and you must find this element of the plaintiff's claim for failure to intervene

has been proven.

---

[11]     *See Jackson v. City of York*, 939 F. Supp. 2d 219, 231 (E.D.N.Y. 2013).

[12]      "The requirement that an officer be personally involved in the arrest distinguishes a false arrest claim from a failure-to-intervene claim relating to an arrest, which imposes liability on an officer who is not personally involved in an arrest but nevertheless knew that an arrest lacked probable cause and did nothing to prevent it."  *Garnett v. City of New York*, 2014 U.S. Dist. LEXIS 112440 (S.D.N.Y. Aug. 13, 2014) (citing *Wong v. Yoo*, 649 F. Supp. 2d 34, 61 (E.D.N.Y. 2009), *Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994) and *Travis v. Village of Dobbs Ferry*, 355 F. Supp. 2d 740, 752-53 (S.D.N.Y. 2005).

### ELEMENT 2: A REASONABLE PERSON IN THE DEFENDANT'S POSITION WOULD KNOW THAT THE PLAINTIFF'S CONSTITUTIONAL RIGHTS WERE BEING VIOLATED

77.     To prove her claim for failure to intervene, the second element of the claim that the plaintiff must prove by a preponderance of the evidence is that a reasonable person in the individual defendant's position would know that the victim's constitutional rights were being violated.

78.     In this case, that means that to prove this element of her claim, the plaintiff must show that the individual defendant knew facts that would allow a reasonable person to understand that the plaintiff was being falsely arrested, and that there was no probable cause for her arrest.

79.     For each individual defendant, you should consider the facts actually known to the individual defendant at the time that the victim's constitutional rights were being violated.  However, it is not necessary for the plaintiff to prove that the particular defendant actually came to the conclusion that the plaintiff was being arrested without probable cause.  Instead, you must decide whether reasonable person who knew what the defendant knew would conclude that the plaintiff was being arrested without probable cause.

### ELEMENT 3: THE DEFENDANT HAD A REALISTIC OPPORTUNITY TO INTERVENE AND PREVENT THE HARM;

80.     To prove her claim for failure to intervene, the third element of the claim that the plaintiff must prove by a preponderance of the evidence is that the defendant had a realistic opportunity to intervene and prevent the violation of the plaintiff's constitutional rights.

81.     In this case, that means that to prove this element of her claim, the plaintiff must show that the individual defendant had a realistic opportunity to intervene and

prevent the plaintiff from being arrested, or that the individual defendant could have intervened and caused the plaintiff to be released after she was under arrest.

82.     In considering this element of the claim, you should consider that an individual defendant cannot be found liable for failing to intervene if there was no realistic or reasonable way for the defendant to prevent the violation of the plaintiff's rights.  It is for you, the jury, to decide what the individual defendant reasonably and realistically could have done under the circumstances.

### ELEMENT 4: THE DEFENDANT DID NOT TAKE REASONABLE STEPS TO INTERVENE

83.     To prove her claim for failure to intervene, the fourth element of the claim that the plaintiff must prove by a preponderance of the evidence is that the individual defendant did not take reasonable steps to intervene.

84.     If, in your consideration of the previous element of this claim, you found that there **was** a realistic or reasonable way for the defendant to prevent the violation of the plaintiff's rights, then you must consider whether the defendant took action.  If the defendant acted, and undertook a realistic or reasonable effort to prevent the violation of the plaintiff's rights, then your verdict must be for the defendant on this element of the claim, even if the defendant's efforts did not succeed.  On the other hand, if the defendant did not take action, then your verdict must be for the plaintiff on this element of the claim.

85.     If, in your consideration of the previous element of this claim, you found that there **was no** realistic or reasonable way for the defendant to prevent the violation of the plaintiff's rights, then you must find for the defendant on this element of the claim.

**B.     The Defendants' Defense of Probable Cause**

86.     If the plaintiff meets her burden to prove each of the four elements of this claim against a particular defendant, then it becomes the defendant's burden to prove by a preponderance of the evidence that there was probable cause for the plaintiff's arrest.

87.     I will explain what probable cause means a little later.

## III.    Employer Liability

88.     The plaintiff, TAMIKO GARRIS-RIVERS, contends that the individual defendants unlawfully arrested her, and that the METROPOLITAN TRANSIT AUTHORITY and the LONG ISLAND RAIL ROAD should be liable for that violation because each of the individual defendants was an employee of the MTA and the LIRR. Such a claim is sometimes called employer liability.

89.     In order to reach a verdict on this claim, you will first have to consider whether TAMIKO GARRIS-RIVERS has met her burden of proof on the elements of her claim against either the MTA or the LIRR.  I will explain what these elements are in a moment.  If the plaintiff does not prove the elements of her claim against at least one of the MTA of the LIRR defendants, then you do not need to consider this claim any further.

90.     If you find that she has met her burden against the MTA or the LIRR, then for each such defendant you must then consider whether that defendant has met their burden of proof for the elements of their defense of probable cause.  I will explain what the elements of this defense are later on.  If you find that the defendant has met their burden of proof on this defense, then your verdict must be for that defendant on this claim.  If you find that the defendant did not meet their burden, then your verdict must be for the plaintiff on this claim.

91.     To prove this claim against the MTA or the LIRR, the plaintiff must prove the following elements by a preponderance of the evidence: 1) an employee of the MTA

or the LIRR committed a tort against the plaintiff; 2) when the tort was committed, the employee was performing his or her duties for the MTA or the LIRR; 3) the employee's tortuous conduct was generally foreseeable and a natural part of the employment; and 4) as a result of the employee's tortuous conduct the plaintiff was harmed.[13]

### ELEMENT 1: AN EMPLOYEE OF THE MTA OR THE LIRR COMMITTED A TORT AGAINST THE PLAINTIFF

92.     To prove her claim for employer liability against the MTA or the LIRR, the first element of the claim that the plaintiff must prove by a preponderance of the evidence is that an employee of the MTA or the LIRR committed a tort against the plaintiff.

93.     A tort is a legally actionable wrong under state law.  Under New York State law there is a tort called false arrest, which has the same elements and defenses to the claim for false arrest which I instructed you on earlier.

94.     It is undisputed that defendants JONATHAN MANCINI and BENJAMIN GARDNER were employees of the LIRR.

95.     It is undisputed that defendants POLICE OFFICER ROBERT RAU, POLICE OFFICER MATTHEW REILLY, POLICE OFFICER JOUAN OLIVARES, and POLICE OFFICER MICHAEL HAGGERTY were employees of the MTA.

96.     Therefore, if you find that the plaintiff met her burden to prove the elements of her claim for false arrest against any employee of the MTA or the LIRR, then you must also find that the plaintiff met her burden to prove this element of her claim against the MTA or the LIRR.  However, the defendants can still raise the defense of probable cause, on which they have the burden of proof.

---

[13]     *See Adams v. New York City Transit Auth.,* 211 A.D.2d 285, 294 (N.Y. App. Div. 1st Dep't 1995).

### ELEMENT 2: WHEN THE TORT WAS COMMITTED, THE EMPLOYEE WAS PERFORMING HIS OR HER DUTIES FOR THE MTA OR THE LIRR

97.     To prove her claim for employer liability against the MTA or the LIRR, the second element of the claim that the plaintiff must prove by a preponderance of the evidence is that when the tort was committed, the employee was performing his or her duties for the MTA or the LIRR.

98.     It is undisputed in this case that each of the individual defendants was performing of his duties for the MTA or the LIRR at the relevant time.  Therefore, I instruct you to find for the plaintiff on this element of the claim.

### ELEMENT 3: THE EMPLOYEE'S TORTUOUS CONDUCT WAS GENERALLY FORESEEABLE AND A NATURAL INCIDENT OF THE EMPLOYMENT

99.     To prove her claim for employer liability against the MTA or the LIRR, the third element of the claim that the plaintiff must prove by a preponderance of the evidence is that the employee's tortuous conduct was generally foreseeable and a natural part of the employment.[14]

100.     An act is generally foreseeable to the employer if a reasonable person in the position of the employer would understand that an employee might do an act of the same or similar kind while performing their duties for the employer.  An employee's acts are a natural part of the employment if they are performed by the employee as part of their employment, and not for solely personal motives unrelated to the employer's business.  An employee's actions can be a natural part of the employment even if the employee acts negligently or intentionally.

### ELEMENT 4: AS A RESULT OF THE EMPLOYEE'S TORTUOUS CONDUCT THE PLAINTIFF WAS HARMED

---

[14]     *See Judith M. v. Sisters of Charity Hosp.*, 93 N.Y.2d 932, 933 (N.Y. 1999).

101.    To prove her claim for employer liability against the MTA or the LIRR, the fourth element of the claim that the plaintiff must prove by a preponderance of the evidence is that as result of the employee's tortuous conduct the plaintiff was harmed.

102.    The plaintiff must show that there is a causative relationship between wrongful conduct of the employee, and a harm or damages caused to the plaintiff.  I will discuss causation and harm or damages in more detail later on.  You should use the instructions I will provide you concerning causation, harm and damages to determine whether the causative relationship required for this element of the plaintiff's claim has been established.  Based on those instructions I will give you, if you find that the employee's caused harm to the plaintiff, then your verdict must be for the plaintiff on this element of the claim.

### B.    The Defendants' Defense of Probable Cause

103.    If the plaintiff meets her burden to prove each of the four elements of this claim against wither the MTA or the LIRR, then it becomes that defendant's burden to prove by a preponderance of the evidence that there was probable cause for the plaintiff's arrest.

## IV.    The Defense of Probable Cause

104.    I will now explain the defense of probable cause.  The defendants raise as their defense that the plaintiff's arrest was justified by probable cause.  The defendants raise this defense to all of the plaintiff's claims.

105.    It is each of the defendants, not the plaintiff, that bear the burden to prove by a preponderance of the evidence that the plaintiff's arrest was justified by probable

cause. [15]  If a defendant meets their burden to prove this defense, then your verdict should be for that defendant, even if the plaintiff met her burden to prove all the elements of her claim.  However, if the plaintiff has proven the elements of a claim, and the defendant fails to meet their burden to prove that that the plaintiff's arrest was justified by probable cause, then your verdict on that claim must be in favor of the plaintiff.

106.    Probable cause to arrest exists when an officer has knowledge of, or reasonably trustworthy information about, facts and circumstances which are enough to cause a reasonable person to believe that by the person to be arrested is committing, or has committed, a crime or offense.[16]  Probable cause requires more than mere suspicion; however, it does not require that the officer have evidence sufficient to prove guilt beyond a reasonable doubt.

107.    When you consider whether there was probable cause for the plaintiff's arrest, you should base your decision on the facts and circumstances actually known to the officer at the time of the arrest.[17]  Facts learned by the police after the plaintiff was no

---

[15]    As the Second Circuit has held: "When an arrest is not made pursuant to a judicial warrant, the defendant in a false arrest case bears the burden of proving probable cause as an affirmative defense."  *Dickerson v. Napolitano*, 604 F.3d 732, 751 (2d Cir. N.Y. 2010) (emphasis added) (citing *Broughton v. State*, 37 N.Y.2d 451, 458 (1975)).  *See also Rosario v. Amalgamated Ladies' Garment Cutters' Union, Local 10, etc., 605 F.2d 1228, 1248 (2d Cir. N.Y. 1979)* ("The defendant in an action for false arrest has the burden of proving legal justification as an affirmative defense.")*; Ackerson v. City of White Plains,* 702 F.3d 15, 19 (2d Cir. N.Y. 2012) (stating that probable cause is an "affirmative defense"); *Trueman v. New York State Canal Corp.*, 451 Fed. Appx. 27, 29 (2d Cir. N.Y. 2011) (same).  *See also Gomez v. City of New York*, 2008 U.S. Dist. LEXIS 41455, 12-14 (S.D.N.Y. May 28, 2008) (Daniels, J.) ("where the arrest is made without a warrant, the government bears the burden of establishing probable cause")( citing *Wu v. City of New York*, 934 F. Supp. 581, 586 (S.D.N.Y. 1996)).*See also Zellner v. Summerlin*, 494 F.3d 344, 373 (2d Cir. N.Y. 2007) ("as to any act that defendants contended Zellner performed, and which they wished to argue provided either probable cause or arguable probable cause for his arrest, it was incumbent on defendants to have the jury decide whether Zellner in fact performed that act.").

[16]    *See Panetta v. Crowley*, 460 F.3d 388, 395 (2d Cir. 2006).

[17]    *See Devenpeck v. Alford*, 543 U.S. 146, 152 (2004).

longer in their custody are not to be considered. This is true whether such facts might tend to favor the plaintiff or favor the police.

108.    In this case, the defendants say that there was probable cause to arrest the plaintiff for theft of service, which is a criminal misdemeanor, or for disorderly conduct, which is a non-criminal violation. Technically, disorderly conduct is not a crime, but to avoid confusion, I will refer to both theft of service and disorderly conduct as crimes in these instructions. The defendants can prove their affirmative defense of probable cause by proving, with a preponderance of the evidence, that probable cause existed for either of these two crimes.

109.    The crimes of theft of service and disorderly conduct each have elements, similarly to the way in which each of the claims I discussed previously has several elements.

110.    To prove that probable cause existed for either the crime of theft of service and the crime of disorderly conduct, a defendant must prove that probable cause existed for each element of that crime.[18]

### A.    Disorderly Conduct -- Penal Law 240.20(2)

111.    Disorderly conduct is a violation defined by Penal Law 240.20(2). Penal Law 240.20(2) states: "A person is guilty of disorderly conduct when, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof: He makes unreasonable noise."[19]

112.    This offense of disorderly conduct therefore has three elements: (1) the person's conduct must be 'public' in nature, (2) the person must act with 'intent to cause

---

[18]    *Provost v. City of Newburgh*, 262 F.3d 146, 157 (2d Cir. N.Y. 2001).
[19]    N.Y. Penal Law § 240.20(2).

public inconvenience, annoyance or alarm' or with recklessness as to 'a risk thereof,' and (3) the person must make unreasonable noise.[20]

113.    A police officer would be justified in believing that the plaintiff, TAMIKO GARRIS-RIVERS committed disorderly conduct only if a reasonable person in the same circumstances would have believed that her conduct satisfied all three elements of Penal Law 240.20(2).

### PENAL LAW 240.20(3) ELEMENT 1: THE PERSON'S CONDUCT MUST BE 'PUBLIC' IN NATURE

114.    The first element of Penal Law 240.20(2) is that the TAMIKO GARRIS-RIVERS' conduct must be "public" in nature.

115.    To prove that TAMIKO GARRIS-RIVERS' conduct was "public" in nature, the defendants must show that it occurred in a public place, and also that the situation extended beyond the exchange between the individual disputants to a point where it became a potential or immediate public problem.[21]

116.    In this case, it is undisputed that the plaintiff's was in a public place at all relevant times.  Therefore, you must decide whether conduct by the plaintiff became a potential or immediate public problem involving people other than the plaintiff and the defendants.

### PENAL LAW 240.20(3) ELEMENT 2: INTENT TO CAUSE PUBLIC INCONVENIENCE, ANNOYANCE OR ALARM

---

[20]    *Provost v. City of Newburgh*, 262 F.3d 146, 157 (2d Cir. N.Y. 2001).
[21]    *People v Baker*, 20 N.Y.3d 354, 359-360 (2013) (citing *People v Weaver*, 16 NY3d 123, 128 (2011)) ("As we have previously explained, this element performs an important narrowing function. … The significance of the public harm element in disorderly conduct cases cannot be overstated. In virtually all of our prior decisions, the  validity of disorderly conduct charges has turned on the presence or absence of adequate proof of public harm.").  *See also People v. Weaver*, 16 N.Y.3d 123, 128 (2011) ("a person may be guilty of disorderly conduct only when the situation extends beyond the exchange between the individual disputants to a point where it becomes "a potential or immediate public problem") (citing *People v. Munafo*, 50 N.Y.2d 326, 331 (1980)).

117.    The second element of Penal Law 240.20(2) is that the TAMIKO GARRIS-RIVERS' conduct must demonstrate that the plaintiff acted intentionally or recklessly to cause "public inconvenience, annoyance, and alarm."

118.    The phrase "public inconvenience, annoyance, and alarm" means more than a minor disturbance of the peace.  It refers to a breach of the peace[22] causing public harm.[23]

119.    The plaintiff acted intentionally if her conscious objective was to cause breach of the peace causing public harm.[24]  The plaintiff acted recklessly if she was aware of a substantial and unjustifiable risk that a breach of the peace causing public harm would occur, and consciously disregarded that risk.  To be reckless, the risk must be of such nature and degree that disregard of the risk constitutes a gross deviation from the standard of conduct that a reasonable person would observe in the situation. [25]

### PENAL LAW 240.20(3) ELEMENT 3:
### UNREASONABLE NOISE

---

[22]    The New York Court of Appeals equates the term "breach of the peace" with "public inconvenience, annoyance or alarm," the governing phrase of the disorderly conduct statute. *People v. Tichenor*, 89 N.Y.2d 769, 774 (1997), cert. denied 522 U.S. 918.  *See also People v Baker*, 20 N.Y.3d 354, 360 (2013) (requirement of actual or threatened "public disorder").

[23]    "The significance of the public harm element in disorderly conduct cases cannot be overstated. In virtually all of our prior decisions, the validity of disorderly conduct charges has turned on the presence or absence of adequate proof of public harm. To determine whether the record supports an inference that the requisite mens rea was present, we have employed a contextual analysis that turns on consideration of many factors, including the time and place of the episode under scrutiny; the nature and character of the conduct; the number of other people in the vicinity; whether they are drawn to the disturbance and, if so, the nature and number of those attracted; and any other relevant circumstances. We have clarified that the risk of public disorder does not have to be realized but the circumstances must be such that defendant's intent to create such a threat (or reckless disregard thereof) can be readily inferred."  *People v Baker*, 20 N.Y.3d 354, 360 (2013).

[24]    *See* NY Penal Law § 15.05(1); *People v. Bakolas*, 59 N.Y.2d 51, 54 (1983) (holding Penal Law 240.20(3) not unconstitutionally vague because the statute requires intent or recklessness to create the result of public disturbance, so that "no inadvertently disturbing act may be punished").

[25]    *See* NY Penal Law § 15.05(3).

120.    The term "unreasonable noise" means "a noise of a type or volume that a reasonable person, under the circumstances, would not tolerate."[26]

## B.    Theft of Service -- Penal Law § 165.15(3)

121.    Theft of Service is a misdemeanor defined by Penal Law § 165.15(3). Under Penal Law §165.15(3), a person is guilty of theft of services when, "with intent to obtain . . . public transportation . . . service without payment of the lawful charge therefor, . . . [s]he obtains or attempts to obtain such service or avoids or attempts to avoid payment therefor by force, intimidation, stealth, deception or mechanical tampering, or by unjustifiable failure or refusal to pay."[27]

122.    There are four elements to this crime: 1)  the person must act intentionally, 2) to obtain public transportation services, 3) without payment the required charge, 4) by avoiding or attempting to avoid payment by force, intimidation, stealth, deception or mechanical tampering, or by unjustifiable failure or refusal to pay."[28]

123.    To show that the there was probable cause to arrest the plaintiff for theft of services, the defendants bear the burden to prove that a reasonable person would believe that all four elements of the crime were satisfied by the plaintiff's conduct.

### ELEMENT 1: INTENT

124.    The first element of the crime of theft of services is that the person must act intentionally.  For the crime of theft of services, the intent required is the "intent to steal transit services."[29]

---

[26]      *Provost v. City of Newburgh*, 262 F.3d 146, 159 (2d Cir. N.Y. 2001) (quoting *People v. Bakolas*, 59 N.Y.2d 51, 53 (1983)).

[27]      *See Simpson v. City of New York*, 793 F.3d 259, 265 (2d Cir. N.Y. 2015).

[28]      *See Simpson v. City of New York*, 793 F.3d 259, 265 (2d Cir. N.Y. 2015).

[29]      *Simpson v. City of New York*, 793 F.3d 259, 267 fn. 7 (2d Cir. N.Y. 2015).

125.   To show that the there was probable cause to believe that that the plaintiff's conduct satisfied the first element of the crime of theft of services, the defendants bear the burden to prove that a reasonable person would believe that the plaintiff intended to steal transit services.

### ELEMENT 2: TO OBTAIN PUBLIC TRANSPORTATION SERVICES

126.   The second element of the crime of theft of services is that the person must have obtained public transportation services.  The parties agree that the plaintiff obtained public transportation services.  Therefore I instruct you that you must find for the defendants on this element of the crime.

### ELEMENT 3: WITHOUT PAYMENT OF THE REQUIRED CHARGE

127.   The third element of the crime of theft of services is that the person must have obtained public transportation services without paying the required charge.

128.   To show that the there was probable cause to believe that the plaintiff's conduct satisfied the third element of the crime of theft of services, the defendants bear the burden to prove that a reasonable person would believe that the plaintiff was required to pay a charge for the service, but did not do so.

### ELEMENT 4: BY AVOIDING OR ATTEMPTING TO AVOID PAYMENT BY IMPROPER MEANS

129.   The fourth element of the crime of theft of services is that the person must have avoided or attempted to avoid payment by force, intimidation, stealth, deception or mechanical tampering, or by unjustifiable failure or refusal to pay.

130.   It is undisputed that the plaintiff did not use force, intimidation, stealth, deception or mechanical tampering.

131.   To show that the there was probable cause to believe that the plaintiff's conduct satisfied the third element of the crime of theft of services, the defendants bear

the burden to prove that a reasonable person would believe the plaintiff avoided or attempted to avoid payment by an unjustifiable failure or refusal to pay.

### C.    Facts Negating Probable Cause

132.    If you find that the defendants **have** met their burden to show that probable cause existed to believe that the plaintiff committed a crime, you must then consider whether the police later learned any new facts that clearly showed that probable cause did not exist after all.

133.    If a police officer has probable cause to make an arrest, the officer is not required to conduct more investigation to eliminate the possibility that the person arrested is innocent.  However, a police officer is not allowed to deliberately disregard facts known to him which establish that there is no probable cause for the arrest.[30]  If the officer learns new facts which conclusively show that the person arrested did not commit a crime, the police officer no longer has probable cause, and must release the person who has been arrested.[31]

134.    Therefore, what you should consider is whether, during any part of the plaintiff was in the direct custody of the defendants, the defendants learned any facts that in the eyes of a reasonable person would show that there was no probable cause to believe that the plaintiff committed a crime.  You are only to consider information the police acquired while the plaintiff was still in their custody.  The plaintiff bears the burden to prove that the police learned these new facts, and to convince you that the new

---

[30]    *See Jocks v. Tavernier*, 316 F.3d 128, 136 (2d Cir. N.Y. 2003); *Kerman v. City of New York*, 261 F.3d 229, 241 (2d Cir. N.Y. 2001).  *See also Selvaggio v. Patterson*, 93 F. Supp. 3d 54, 70-71 (E.D.N.Y. 2015).

[31]    *See Kerman v. City of New York*, 261 F.3d 229, 240-241 (2d Cir. N.Y. 2001) (holding that police were initially justified in seizing the plaintiff, but finding questions of fact as to whether continuing to hold him was lawful in light of facts allegedly learned by police during the first hour plaintiff was in custody).

information was the kind of information that, to a reasonable person, would clearly show that the plaintiff's arrest was no longer justified. The plaintiff's burden of proof is by the preponderance of the evidence.

135.    If you find that the police learned such information, and that there was no longer probable cause to justify the plaintiff's arrest, then from the time the police learned that information, the defense of probable cause is no longer available to them. You must find the responsible officers liable to the plaintiff for that part of her confinement which occurred after the new information was acquired.

## V.    Conclusion on Liability

136.    If you find that the plaintiff <u>has met</u> her burden of proof on the elements of her claims against a defendant, and you also find that the defendant has not met his burden of proof on the elements of the defense of probable cause, then you must bring a verdict <u>for the plaintiff</u> on the issue of liability for that claim against that defendant. For each claim where you find that the <u>plaintiff</u> has won on liability, you must then consider the issues of causation and damages.

137.    On the other hand, if you find that the plaintiff <u>did not meet</u> her burden of proof on the elements of her claims against a defendant, or you find that the defendant <u>did meet</u> his burden of proof on the elements of the defense of probable cause, then you must bring a verdict <u>for the defendant</u> on the issue of liability for that claim. For each claim where claim where you find that the defendant has won on liability, your consideration of that claim is complete.

## Part III.    DAMAGES

## I.    Damages

138.    I am now going to instruct you on damages.  Just because I am instructing you on how to award damages does not mean that I have any opinion on whether or not one or more of the defendants should be held liable.

### A.    Compensatory Damages

139.    If you find one or more of the defendants liable for any of the plaintiff's claims, then you must also consider the issue of compensatory damages.  You must award the plaintiff, TAMIKO GARRIS-RIVERS, an amount that will fairly compensate her for any harm or injury she actually sustained as a result of the defendants' wrongful acts or omissions.

140.    I instruct you that, under the law, if you find more than one defendant liable to the plaintiff, then each of these defendants will be jointly responsible for the damages awarded in compensation for the harm or injury you find that the plaintiff suffered.[32]  This means that you do not need to decide what amounts of compensatory damages, if any, a particular defendant should be liable for.

141.    If you have found that a particular defendant is liable to the plaintiff on her claim of false arrest or failure to intervene, then you have found that the defendant in question is liable, directly or indirectly, for the plaintiff's arrest and confinement.

142.    All of the harms and injuries claimed by the plaintiff occurred, she contends, during her arrest and confinement, or as a result of her arrest and confinement. In deciding what harms and injuries the plaintiff has proven that she suffered, you must consider whether the plaintiff has proven, by a preponderance of the evidence, that the she suffered the harm or injury and that it was caused by the plaintiff's arrest or confinement.

---

[32]    *See, e.g., DiSorbo v. Hoy*, 343 F.3d 172, 182 (2d Cir. N.Y. 2003).

143.    In order to demonstrate that she is entitled to compensatory damages for a particular injury or harm, the plaintiff must show that the harm or injury would not have occurred if she had not been arrested or confined.  The plaintiff must also show that plaintiff's arrest and confinement played a substantial part in bringing about the harm or injury,[33] and that the harm injury was either a direct result or a reasonably probable consequence of the plaintiff's arrest.[34]

144.    However, there can be more than one cause of an injury.  To find that the plaintiff's arrest and confinement caused a harm or injury to the plaintiff, you need not find that the plaintiff's arrest and confinement was only cause, or the nearest cause, either in time or space.  However, if the plaintiff's harm or injury was caused by a later, independent event that intervened between the plaintiff's arrest or confinement and the plaintiff's injury, the defendants are not liable unless the harm or injury was reasonably foreseeable by the defendant.[35]

145.    Compensatory damages must not be based on speculation or sympathy.  They must be based on the evidence presented at trial, and only on that evidence.  As I have said, the plaintiff has the burden of proving compensatory damages by a preponderance of the evidence.

146.    However, the plaintiff is asking you to award damages for some harms and injuries that, by their nature, do not have a monetary value that is subject to direct proof.  For example, the plaintiff is asking you to award compensatory damages for the

---

[33]    *Aegis Ins. Servs. v. 7 World Trade Co., L.P.*, 737 F.3d 166, 179 (2d Cir. N.Y. 2013) (citing *Nallan v. Helmsley-Spear, Inc.*, 50 N.Y.2d 507, 520-21 (1980) (using language of "substantial causative factor") and *Derdiarian v. Felix Contracting Corp.*, 51 N.Y.2d 308, 314-15, (1980) (using language of "substantial cause")).

[34]    *See Aegis Ins. Servs. v. 7 World Trade Co., L.P.*, 737 F.3d 166, 177 (2d Cir. N.Y. 2013).

[35]    *See Higazy v. Templeton*, 505 F.3d 161, 176 (2d Cir. N.Y. 2007); *Maldonado v. City of New York*, 2014 U.S. Dist. LEXIS 26239 (S.D.N.Y. Feb. 26, 2014).

time that the plaintiff spent in confinement. For this kind of harm, the plaintiff is not required to prove that the time she spent in confinement has a specific numerical value in money. Instead, it is your role, as the jury, to determine how much compensation is appropriate to award, based on the evidence the plaintiff has presented concerning the nature and effects of the harm or injury.

147. The plaintiff, TAMIKO GARRIS-RIVERS, claims the following items of damages:

> a. The reasonable value of the time of the plaintiff's arrest and confinement.
> b. Physical harm to the plaintiff during and after plaintiff's arrest and confinement, including ill health, physical pain, or discomfort, and any such physical harm that plaintiff is reasonably certain to experience in the future. In assessing such harm, you should consider the nature and extent of the harm or injury and whether it is temporary or permanent; and
> c. Emotional and mental harm to the plaintiff during and after the plaintiff's arrest and confinement, including fear, humiliation, and mental anguish, and any such emotional and mental harm that the plaintiff is reasonably certain to experience in the future.

148. In assessing damages, you must not consider attorney fees or the costs of litigating this case. Attorney fees and costs, if relevant at all, are for the court and not the jury to determine. Therefore, attorney fees and costs should play no part in your calculation of any damages.

## B. Nominal Damages

149. If you return a verdict for the plaintiff, but the plaintiff has failed to prove compensatory damages, then you must award nominal damages of $ 1.00. If you find a defendant liable, then you must award the plaintiff at least nominal damages. [36]

150. A person whose federal rights were violated is entitled to a recognition of that violation, even if she suffered no actual injury. Nominal damages (of $1.00) are

---

[36] *See Warren v. Pataki*, 2016 U.S. App. LEXIS 8975, *33 (2d Cir. N.Y. May 17, 2016) (plaintiff entitled to nominal damages "[a]bsent a showing of causation [of the plaintiffs' injuries by the defendants' unconstitutional acts] and actual injury").

designed to acknowledge the deprivation of a federal right, even where no actual injury occurred.

151.    However, if you find actual injury, you must award compensatory damages (as I instructed you), rather than nominal damages.

### C.    Punitive Damages

152.    In addition to compensatory or nominal damages, you may consider awarding the plaintiff punitive damages.  Each defendant is responsible only for the punitive damages, if any, that you find should be awarded based on that particular defendant's conduct.

153.    A jury may award punitive damages to punish a defendant, or to deter the defendant and others like the defendant from committing such conduct in the future. Where appropriate, the jury may award punitive damages even if the plaintiff suffered no actual injury and so receives nominal rather than compensatory damages.

154.    You may only award punitive damages if you find that a particular defendant acted maliciously or wantonly in violating plaintiff's federally protected rights. In this case there are multiple defendants.  You must make a separate determination whether each defendant acted maliciously or wantonly.  However, I instruct you that under the law, you cannot award punitive damages against the governmental defendants the METROPOLITAN TRANSPORTATION AUTHORITY or the LONG ISLAND RAIL ROAD.

155.    A violation is malicious if it was prompted by ill will or spite towards the plaintiff.  A defendant is malicious when he consciously desires to violate federal rights of which he is aware, or when he consciously desires to injure the plaintiff in a manner he knows to be unlawful.  A conscious desire to perform the physical acts that caused

plaintiff's injury, or to fail to undertake certain acts, does not by itself establish that a defendant had a conscious desire to violate rights or injure plaintiff unlawfully.

156.    A violation is wanton if the person committing the violation recklessly or callously disregarded the plaintiff's rights.

157.    If you find that it is more likely than not that a particular defendant acted maliciously or wantonly in violating plaintiff's federal rights, then you may award punitive damages against that defendant.   However, an award of punitive damages is discretionary; that is, if you find that the legal requirements for punitive damages are satisfied, then you may decide to award punitive damages, or you may decide not to award them.

158.     I will now discuss some considerations that should guide your exercise of this discretion.

159.    If you have found that the defendant in question acted maliciously or wantonly in violating plaintiff's federal rights, then you should consider the purposes of punitive damages.  The purposes of punitive damages are to punish a defendant for a malicious or wanton violation of the plaintiff's federal rights, or to deter the defendant and others like the defendant from doing similar things in the future, or both.  Thus, you may consider whether to award punitive damages to punish the defendant.  You should also consider whether actual damages standing alone are sufficient to deter or prevent the defendant from again performing any wrongful acts he may have performed.  Finally, you should consider whether an award of punitive damages in this case is likely to deter other persons from performing wrongful acts similar to those the defendant may have committed.

160.    If you decide to award punitive damages, then you should also consider the purposes of punitive damages in deciding the amount of punitive damages to award. That is, in deciding the amount of punitive damages, you should consider the degree to which the defendant should be punished for his wrongful conduct toward the plaintiff, and the degree to which an award of one sum or another will deter the defendant or others from committing similar wrongful acts in the future.

161.    In considering the purposes of punishment and deterrence, you should consider the nature of the defendant's action. You should also consider the amount of harm actually caused by the defendant's act, as well as the harm the defendant's act could have caused and the harm that could result if such acts are not deterred in the future.

162.    The extent to which a particular amount of money will adequately punish a defendant, and the extent to which a particular amount will adequately deter or prevent future misconduct, may depend upon the defendant's financial resources.  Therefore, if you find that punitive damages should be awarded against the defendant, you may consider the financial resources of the defendant in fixing the amount of such damages.

## Part IV.    Concluding Instructions

## I.    Selection of Foreperson; Right to See Exhibits and Hear Testimony:

### A.    Communications with the Court

163.    You will shortly retire to the jury room to begin your deliberations. As soon as you get to the jury room, please select one of your number as the foreperson, to preside over your deliberations and to serve as your spokesperson if you need to communicate with the Court.

164.    At the start of your deliberations, you will choose a foreperson.  The job of the foreperson is to communicate with the court on behalf of the entire jury.  For example, the foreperson will be the person to let me know when you have reached a verdict.  However, when you are deliberating, each of you is equally important in deciding the verdict of the jury.

165.    You will be bringing with you into the jury room a copy of my instructions of law.  I will shortly send you as well a verdict form on which to record your verdict.  If you want to see any of the exhibits, please send me a note requesting the exhibits you'd like to review.

166.    If you want any of the testimony, that can also be provided, either in a written transcript, or the court reporter can read the testimony back to you.  Please be as specific as you possibly can be in requesting portions of testimony.

167.    Any of your requests, in fact any communication with the Court, should be made to me in writing, signed by your foreperson, and given to the marshal, who will be available outside the jury room throughout your deliberations. After consulting with counsel, I will respond to any question or request you have as promptly as possible, either in writing or by having you return to the courtroom so that I can speak with you in person.

168.    You should not, however, tell me or anyone else how the jury stands on any issue until you have reached your verdict and recorded it on your verdict form.

**B.    Verdict; Need for Unanimity; Duty to Consult**

169.    You will be given a verdict sheet that you are to use to record your verdict. The verdict sheet asks you to reach a verdict on questions of fact, which are some of the facts you must necessarily consider and decide to reach a final verdict.  The verdict sheet

is divided into two parts.  Part I is for you to use to record your verdict on issues of

liability for the plaintiff's claims.  Part II is for you to use to record your verdict on issues

of damages.  The questions are numbered.  Some questions have more than one part.

There are instructions in the verdict sheet that explain how to use it to record your

verdict.  You are required to answer and reach a verdict on some of the questions.  For

other questions, you will need to reach a verdict only if your verdict in response to earlier

questions requires it.  For example, whether you will be required to respond to the

questions about damages will depend on your verdicts in response to the questions about

liability.  Please keep in mind that the instructions on the verdict sheet are intended to

help you use it by going through it step by step, and they are not meant to substitute for

the instruction on the law I have just given you.

170.    In your deliberations to reach your verdict, you have the duty and the right

to consider all the credible evidence presented and to give full consideration to what the

evidence means, in light of the instructions on the law I have given you today.  Do not

think that you are limited in your deliberations to think about and discuss only those

issues stated in the questions on the verdict sheet.  The purpose of the verdict sheet is to

record the verdict, after you have deliberated on the issues that must be decided in

whatever way you feel is the best way for you to fulfill your duty.

171.    Each of you must decide the case for yourself, after consideration, with

your fellow jurors, of the evidence in the case; and your verdict must be unanimous.  In

deliberating, bear in mind that while each juror is entitled to his or her opinion, each

should exchange views with his or her fellow jurors.  That is the very purpose of jury

deliberation: to discuss and consider the evidence; to listen to the arguments of fellow

jurors; to present your individual views; to consult with one another; and to reach a verdict based solely and wholly on the evidence.

172.    If, after carefully considering all the evidence and the arguments of your fellow jurors, you entertain a conscientious view that differs from the others, you are not to yield your view simply because you are outnumbered. On the other hand, you should not hesitate to change or modify an earlier opinion that, after discussion with your fellow jurors, no longer persuades you.

173.    In short, the verdict must reflect each juror's conscientious determination and it must also be unanimous.

DATED:      NEW YORK, N.Y.
            JUNE ___, 2016