IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
TAMIKO GARRIS-RIVERS,

                                     PLAINTIFF,

     -against-

THE METROPOLITAN TRANSPORTATION
AUTHORITY, et al.,

                                DEFENDANTS.
-------------------------------------------------------------------X

Index No.
13-cv-9034 (GBD) (RLE)

ECF CASE

**PLAINTIFF'S
MEMORANDUM OF
LAW IN OPPOSITION
TO DEFENDANTS'
PROPOSED JURY
INSTRUCTIONS**

The plaintiff, TAMIKO GARRIS-RIVERS, by her attorney David Thompson, of

the firm of Stecklow & Thompson, hereby submits this memorandum of law in

opposition to the defendants' proposed jury instructions, which were filed by the

defendants on June 17, 2016.

## I.    Summary

On June 17, 2016, the defendants submitted proposed jury instructions. The

plaintiffs object to these instructions, and respectfully request that the Court decline to

adopt them. The plaintiff objects to these proposed instructions generally and in their

entirety. Taken as a whole, the instructions do **not** accurately reflect the legal principles

which the jury must apply. The instructions are presented without adequate citation to

case law. The instructions are repetitive and conflicting, and are likely to confuse the

jury. The instructions fail to address many matters concerning which the plaintiff

proposed instructions. The instructions even incorporate instructions concerning claims

which have been dismissed (battery and excessive force).  The plaintiff objects to each

such defect in the defendants' proposed instructions, but will not discuss each such defect

herein.

The plaintiff particularly objects to certain portions of the proposed instructions

discussed in more detail herein:

a.    The instructions improperly place the burden of proof for probable cause, which is an affirmative defense, on the plaintiff (See Part II below);

b.    The defendants' proposed definition of probable cause is confusing and contrary to second circuit case law (See Part III below);

c.    The defendants' proposed instruction on the crime of Theft of Service is unsupported and misleading (See Part IV below);

d.    The defendants' proposed instruction on failure to intervene is misleadingly limited to excessive force (See Part V below);

e.    The jury should not be instructed on qualified immunity, or allowed to decide the issue (See Part VI below);

f.    The defendants' proposed instruction on credibility is incomplete and incorrect (See Part VII below); and

g.    The defendants' proposed instruction on a 'pendent' state law claim for false arrest is unnecessary (See Part VIII below);.

## II.    The Instructions Improperly Place The Burden of Proof for Probable Cause on the Plaintiff

The defendants' proposed instructions on probable cause, which can be found

within the instruction on the claim for false arrest, incorrectly place the burden of proof

on that issue on the plaintiff.  ("Plaintiff has the burden of establishing by a

preponderance of the evidence that she was arrested without probable cause.").

The Second Circuit has held: "When an arrest is not made pursuant to a judicial

warrant, the **defendant** in a false arrest case bears the burden of proving probable cause

as an affirmative defense."  *Dickerson v. Napolitano*, 604 F.3d 732, 751 (2d Cir. N.Y.

2010) (emphasis added) (citing *Broughton v. State*, 37 N.Y.2d 451, 4558 (1975).  Accord

Trueman v. New York State Canal Corp., 451 Fed. Appx. 27, 29 (2d Cir. N.Y. 2011) ("a

warrantless arrest is 'presumptively unlawful,' [and] the existence of probable cause constitutes an affirmative defense to a false arrest claim.").  This Court has previously reached the same conclusion: "where the arrest is made without a warrant, the government bears the burden of establishing probable cause." *Gomez v. City of New York*, 2008 U.S. Dist. LEXIS 41455 (S.D.N.Y. May 28, 2008) (*citing  Wu v. City of New York,* 934 F. Supp. 581, 586 (S.D.N.Y. 1996)).

The defendants provided no citation for their assignment of the burden of proof on this affirmative defense to the plaintiff.  The defendants' proposed instruction is inaccurate, and the Court should decline to adopt it.

## III.    The Defendants' Proposed Definition of Probable Cause Is Confusing and Contrary to Second Circuit Case Law

The defendants have asked for an instruction concerning probable cause, which they have incorporated into the requested charge for false arrest.

The requested charge, as it relates to the definition of probable cause, is:

> [Probable cause] means that the police officer who made the arrest must have information at the time of the arrest that would lead a reasonable person who possesses the same official expertise as that officer to conclude that the person being arrested has committed or is about to commit a crime.  Probable cause to arrest exists when authorities have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to cause a person of reasonable caution to believe that the person to be arrested has committed or is committing a crime. It requires only a probability or a substantial chance that a crime has taken or is taking place.  …  A police officer only needs to have reasonable cause to believe that the subject had committed a crime.

The plaintiffs object to the requested instruction on probable cause on several grounds.  First, the requested charge presents **four different definitions of probable cause** in the same instruction.  Second, the "official expertise" instruction is not supported by Second Circuit case law.  Third, the "official expertise" instruction invites

the jury to defer to the "expert" judgment of the police defendants. Fourth, the "official expertise" instruction requires the jury to determine the extent and nature of the defendant officers' "official expertise." The evidence required to do this, which would include evidence concerning the professional standards imposed by the MTAPD and the training the particular officers received, was not disclosed by the defendants in discovery, and so the defendants are barred from offering such evidence at trial. A party is entitled only to instructions that are actually supported by evidence. Fifth, the word "chance" in the "substantial chance" instruction invites the lay jury to speculate and consider possible facts not actually in evidence, and to the lay person's mind the word "chance" carries with a connotation of events that are inherently unlikely.

### A. Plaintiff Objects to Duplicative and Confusing Instructions

The parties agree on one widely-known definition of probable cause: "Probable cause to arrest exists when an officer has knowledge of, or reasonably trustworthy information about, facts and circumstances which are enough to cause a reasonable person to believe that by the person to be arrested is committing, or has committed, a crime or offense." The defendants incorporated this definition (hereinafter, for convenience, the "Agreed Probable Cause Instruction") in their proposed instructions, as the second sentence in the extract quoted above. Because the parties agree on the Agreed Probable Cause Instruction, if the Court adopts this definition, no party has grounds for complaint or appeal on that basis.

However, the defendants' proposed instruction also contains three other sentences, each of which perform the same function as the Agreed Probable Cause Instruction, of providing a definition of probable cause. The first sentence in the quoted instruction above (beginning "[Probable cause] means…," hereinafter "Sentence One")

defines probable cause in a sentence with parallel structure to the Agreed Probable Cause Instruction, but using somewhat different language. The third sentence in the quoted instruction (beginning "It requires only…," hereinafter "Sentence Three") has different sentence structure but redundantly performs the same function as the Agreed Probable Cause Instruction and Sentence One: defining probable cause. The fourth sentence in the quoted instruction (beginning "A police officer only needs …," hereinafter "Sentence Four") offers yet another definition for probable cause.

The defendants' proposed instruction contains three definitions of probable cause too many. The redundancy is inherently confusing. Consider the Agreed Probable Cause Instruction and Sentence One, in contrast. They are very similar in form and content, both speaking of the kind of information the officer must have at the time of the arrest, both identifying the standard as one of reasonableness, both referencing crime, and both referencing the past/current (but not future) temporality of the possible crime. If the two definitions are intended both to express **<u>equivalent</u>** ideas in similar wording, then one is redundant, and jurors might even be confused by searching for a (nonexistent) distinction between two slightly different statements. If, on the other hand, the two definitions are intended to communicate **<u>different</u>** concepts, then the similarity of many of the terms in each definition renders it a confusing failure. When two further definitions of the term "probable cause" are added into the mix in Sentence Three and Sentence Four, jury confusion is inevitable.

In the plaintiff's proposed instruction, the instruction on probable cause contains the Agreed Probable Cause Instruction and only one additional sentence (hereinafter, "Plaintiff's Supplemental Sentence"): "Probable cause requires more than mere

suspicion; however, it does not require that the officer have evidence sufficient to prove guilt beyond a reasonable doubt." (See paragraph 106 of the Plaintiff's Proposed Instructions). Unlike the defendants' proposed instruction, the Plaintiff's Supplemental Sentence does not attempt to restate the definition of what probable cause is. That is, it does not offer an alternative way of saying the same thing that the Agreed Probable Cause Definition tries to say. Rather, it attempts to refine the definition by stating what probable cause is **not**. It does this by cabining that definition of probable cause within a range established by two other easily understood and familiar concepts: guilt beyond a reasonable doubt and mere suspicion. In doing so, it is helpful to the jury by distinguishing the probable cause concept from these other concepts. It provides a high and low, allowing the jury to understand that probable cause is somewhere in the middle, and that exactly **where** it is in the middle is to be determined based on the undisputed single sentence definition of the Agreed Probable Cause Instruction.

The Plaintiff's Supplemental Sentence appears in the Model Jury Instructions of the Third Circuit (4.12.2).[1] Because of differences in underlying state law, and for other reasons, there are some substantive differences between Third Circuit and Second Circuit law which mean that Third Circuit instructions cannot be imported wholesale into a jury instruction in the Second Circuit. However, the Plaintiff's Supplemental Sentence is well supported by Supreme Court and Second Circuit case law. For example, the Second

_____

[1]     Available at: http://www.ca3.uscourts.gov/sites/ca3/files/4_Chap_4_2015_July.pdf. The Court may also wish to note that the Ninth Circuit's instructions define probable cause in only one sentence, generally similar to the Agreed Probable Cause Instruction, omitting any further elaboration on the standard. *See* Ninth Circuit Civil Jury Instructions 9.20, available at: http://www3.ce9.uscourts.gov/jury-instructions/sites/default/files/WPD/Civil_Jury_Instructions_2014_6.pdf.

Circuit recently held, "probable cause requires more than 'mere suspicion,' [but] it does not demand 'hard certainties.'" *Southerland v. City of New York*, 681 F.3d 122 (2d Cir. 2012) (quoting *Mallory v. United States*, 354 U.S. 449, 454 (1957)). *See also Walczyk v. Rio*, 496 F.3d 139, 156 (2d Cir. Conn. 2007) ("probable cause requires more than a 'mere suspicion," of wrongdoing'") (quoting *Mallory v. United States*, 354 U.S. 449, 455 (1957)); *United States v. Manley*, 632 F.2d 978, 984 (2d Cir. N.Y. 1980) (probable cause requires "more than mere suspicion of wrongdoing, [but] also gives police a permit to act with less than absolute certainty of guilt.") (quoting *United States v. Webb*, 623 F.2d 758, 761 (2d Cir. 1980)).

> **B.      The Official Expertise Standard is Not Second Circuit Law;**
> **         And Is Improperly Suggestive**

Sentence One of the defendants' proposed probable cause instruction states that probable cause is to be measured from the perspective of a "reasonable person who possesses the same official expertise as [the arresting] officer." This "official expertise" instruction is not supported by Second Circuit case law, and the instruction invites the jury to defer to the "expert" judgment of the police defendants.

The disputed definition seemingly comes from one of the Honorable Judge Leonard Sand's "Modern Federal Jury Instructions" published some time before 1997 (the defendants cited no authority for this element of the instruction).[2] A Lexis search for all instances of the phrase "official expertise" within 50 words of the phrase "probable cause" in the **entire** federal database returned only four results.[3] All four cases appear to

---

[2]      *See Garner v. Meoli,* 19 F. Supp. 2d 378, 390 (E.D. Pa. 1998) (citing Sand, MODERN FEDERAL JURY INSTRUCTIONS, (8/94) Instruction 87-74A [Date/Edition Omitted]).

[3]      *Wisniewski v. Stevens*, 1997 U.S. App. LEXIS 6744 (4th Cir. Md. Apr. 11, 1997); *Ishay v. City of New York*, 158 F. Supp. 2d 261 (E.D.N.Y. 2001); *Whitton v. Williams*, 90

be discussing trials in which Judge Sand's instruction was used, without detailed discussion of the language. None of the four cases involve application of the probable cause concept in a criminal case.

In a jury instruction, referring to the "official expertise" of the defendant officers (even if the phrase accurately stated the legal standard) would invite the jury to consider the defendants to be experts whose judgment could not reasonably be questioned by a lay person. In other contexts, courts have recognized the danger of a jury "conferring an aura of expertise on a witness without satisfying the reliability standard for expert testimony set forth in Rule 702." *United States v. Haynes*, 729 F.3d 178, 195 (2d Cir. N.Y. 2013). Furthermore, such a claim to expertise should not be permitted where the same officers also seek to be excused from liability on a theory of qualified immunity which is utterly inconsistent, on a philosophical level, with the notion that defendant police should be regarded as experts.

**C. Defendants Waived Arguments Concerning "Official Expertise" by Failing to Produce Evidence In Discovery**

The "official expertise" instruction requires the jury to determine the extent and nature of the defendant officers' "official expertise." In order to do this, the jury must be presented with evidence relating to what that level of expertise is. This would certainly include evidence concerning the relevant professional standards imposed by the MTA

---

F. Supp. 2d 420 (S.D.N.Y. 2000); *Garner v. Meoli*, 19 F. Supp. 2d 378 (E.D. Pa. 1998). In contrast, a Lexis search for phrases characteristic of the Agreed Probable Cause Instruction (the phrase "reasonably trustworthy information" within 50 words of the phrase "probable cause") in the entire federal database returned more than 3000 results. Tellingly, a search limited to the same time period in which the four results for Judge Sand's definition appeared (1997-2001) yielded 505 results, with 163 of these coming from the Supreme Court or within the Second Circuit. The agreed definition is one that is employed in both civil and criminal contexts, at various stages of the proceedings, nationwide.

Police Department (relating to, for example, probable cause, statutory interpretation and enforcement, known patterns of wrongdoing), and the training the particular officers actually received. Such information fell within the scope of the plaintiff's discovery demands, and was not produced. To the extent that the defendants possess such evidence and did not produce it, they should be barred from offering such evidence at trial.

Because the defendants cannot produce evidence to establish the extent and nature of the "official expertise" possessed by the defendants, the defendants are not entitled to an instruction asking the jury to render a verdict unsupported by evidence. *See Saleh v. City of Buffalo*, 80 Fed. Appx. 119, 121 (2d Cir. 2003) ("We have held that '[a] litigant is entitled to an instruction on a claim where that claim is supported by evidence of probative value.'") (quoting *Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. N.Y. 1994)). *See also Jones v. Poole*, 403 Fed. Appx. 617, 618 (2d Cir. N.Y. 2010) (citing *Blazic v. Henderson*, 900 F.2d 534, 541 (2d Cir. 1990) ("due process does not require the giving of a jury instruction when such charge is not supported by the evidence.") (referring to criminal defendants' due process rights).

D.     **The Plaintiff Objects to the Probability / "Substantial Chance" Instruction**

Sentence Three of the defendants' proposed jury instruction contains a phrase, "substantial chance," whose use threatens to confuse the jury in a way that is prejudicial to the plaintiff. In its entirety, Sentence Three states: "It requires only a probability or a substantial chance that a crime has taken or is taking place."

Unlike other portions of the defendants' proposed instructions, the use of the phrase "substantial chance" within a definition of probable cause is not without basis in Second Circuit case law. *See United States v. Valentine*, 539 F.3d 88, 93 (2d Cir. N.Y.

2008) (also stating, as per the Plaintiff's Supplemental Sentence, that "mere suspicion is not enough"). The Supreme Court has used the phrase "substantial chance" only three times, and only when discussing probable cause to search (rather than arrest).[4] The defendants have not provided any citation holding that this formulation is appropriate for a jury instruction, as opposed to a use of the term in the course of a decision explaining the court's reasoning in rendering a decision.

The word "chance" has a strong connotation of something that is unlikely and of low probability. The adjective form of the noun also signifies something uncertain and unlikely to occur. *See, e.g., United States v. Gardiner*, 576 Fed. Appx. 71, 75 (3d Cir. Pa. 2014) (quoting a judge as describing something "chancy" being like "buying lottery tickets"). Certainly, an instruction which communicated to the jury that probable cause exists even if guilt is **unlikely**, would lead the jury to error. Given that the parties agree on the Agreed Probable Cause Instruction, which is sufficient unto itself as a definition for probable cause, the risk of confusion is not worth it.

## IV. The Defendants' Instruction on the Crime of Theft of Service Is Unsupported and Misleading

The defendants' proposed instruction on the claim for false arrest asks the Court to instruct the jury that:

> In this case, Plaintiff was arrested for Theft of Services for failure to display a valid LIRR transportation pass for verification. Failure to display a valid LIRR transportation pass for verification would provide probable cause to arrest the Plaintiff. Therefore, if you find by a preponderance of the evidence that the Plaintiff failed to display a valid LIRR transportation pass for verification, Defendant police officers had probable cause to make the arrest of Plaintiff, and you must return a verdict in favor of the Defendants."

---

[4]    *See Safford Unified Sch. Dist. #1 v. Redding*, 557 U.S. 364, 371 (2009); *New York v. P. J. Video, Inc*., 475 U.S. 868 (1986); *Illinois v. Gates*, 462 U.S. 213 (1983).

This is the entirety of the proposed instruction on the elements of Theft of Services.

The defendants have provided no citation supporting the instruction that failure to display a pass would provide probable cause for arrest. That alone is reason enough for the Court to decline to adopt the instruction. And, in the context of this case, the instruction would be erroneous. The plaintiff possessed a valid spousal pass, and the jury could find that probable cause to arrest for theft of service did not exist even if the plaintiff did not display it.

The crime of theft of services is codified in Penal Law § 165.15(3), which states:

> A person is guilty of theft of services when … With intent to obtain railroad, subway, bus, air, taxi or any other public transportation service without payment of the lawful charge therefor, or to avoid payment of the lawful charge for such transportation service which has been rendered to him, he obtains or attempts to obtain such service or avoids or attempts to avoid payment therefor by force, intimidation, stealth, deception or mechanical tampering, or by unjustifiable failure or refusal to pay.

Essentially, the offense boils down to four elements: 1) with unlawful intent, 2) obtaining a service, and 3) avoiding payment therefor, 4) by improper means (where the improper means are limited to the following: "force, intimidation, stealth, deception or mechanical tampering, or by unjustifiable failure or refusal to pay").

As to the first element, the Second Circuit holds that the requisite intent is the "intent to steal transit services." *Simpson v. City of New York*, 793 F.3d 259, 267 fn. 7 (2d Cir. N.Y. 2015). A jury could conclude that, where the plaintiff possessed a spousal pass which belonged to her, which was valid, which had not expired, and which could be used for travel on that train (all facts which are not in serious dispute), the plaintiff clearly lacked "intent to steal transit services." A jury could then conclude that the defendants

lacked probable cause for the plaintiff's arrest, regardless of whether she displayed the pass. For this reason, the proposed charge is erroneous, and the Court should decline to issue the instruction.

## V.     The Instruction on Failure to Intervene Is Misleadingly Limited to "Excessive Force"

The defendants' proposed jury instruction for failure to intervene is misleadingly and incorrectly limited to intervention to prevent the use of excessive force. The instruction states that a required element of the claim is that: "police officers have a duty to intervene to prevent the use **of excessive force** by a fellow officer." (emphasis added). The plaintiff no longer has any excessive force claims. The duty to intervene, however, is engaged whenever any constitutional right is violated. As the Second Circuit recently explained: "An officer who fails to intercede in the use of excessive force **or another constitutional violation** is liable for the preventable harm caused by the actions of other officers." *Terebesi v. Torreso*, 764 F.3d 217, 243 (2d Cir. Conn. 2014) (emphasis added) (citing *Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994)).

In addition, the proposed instruction fails to make clear that one defendant, by their inaction, can be responsible for the violations of a **_different_** officer. Without this instruction, a jury might misunderstand the charge.

The proposed instruction is unsupported by citations to case law, and is clearly erroneous as to a critical element of the cause of action. The Court should decline to adopt the instruction.

## VI.     The Jury Should Not Be Instructed on Qualified Immunity or Allowed to Decide the Issue

The defendants ask the Court to instruct the jury on qualified immunity, and to allow the jury to decide the issue of qualified immunity. The entire instruction is approximately two and a half pages (Def. Proposed Instructions, pp 6-8), and so the instruction will not be quoted in full here. The plaintiff objects to the instruction in its entirety.

**A.    The Court Decides Qualified Immunity; Instructions Asking the Jury to Decide the Issue Should Not Be Given**

The instruction should not be given, because in the Second Circuit the jury is not asked to return a verdict on qualified immunity, a decision which is reserved for the Court. *See Stephenson v. Doe*, 332 F.3d 68, 80 (2d Cir. N.Y. 2003) ("The court should charge the jury on excessive force, but not on qualified immunity. If the jury returns a verdict of excessive force against Dingler, the court should then decide the issue of qualified immunity."). *Accord Matusick v. Erie County Water Auth*., 757 F.3d 31, 56 fn. 16 (2d Cir. N.Y. 2014) (citing Stephenson).[5] The defendants have not cited any case in

_____

[5]    Most circuits appear to be in agreement on this point. The Third Circuit's model jury instructions simply state: "Note: For the reasons explained in the Comment, the jury should not be instructed on qualified immunity. Accordingly, no instruction on this issue is provided." Third Circuit Model Jury Instructions, § 4.7.2, available at: http://www.ca3.uscourts.gov/sites/ca3/files/4_Chap_4_2015_July.pdf. The Ninth Circuit's instructions similarly omit instructions on qualified immunity. See Ninth Circuit Civil Jury Instructions, § 9.26, available at: http://www3.ce9.uscourts.gov/jury-instructions/sites/default/files/WPD/Civil_Jury_Instructions_2014_6.pdf. The Eighth Circuit omits such instructions without comment. See Eighth Circuit Civil Jury Instructions, §§ 4.40 et seq., available at: http://juryinstructions.ca8.uscourts.gov/model_civil_jury_instructions_2014_FINAL_20141210.pdf. The Seventh Circuit omits a qualified immunity instruction, stating that it is an issue for decision by the Court. See Seventh Circuit Civil Jury Instructions, § 7.18, available at: http://www.ca7.uscourts.gov/Pattern_Jury_Instr/7th_cir_civil_instructions.pdf. The Eleventh Circuit does not provide a qualified immunity instruction. See Eleventh Circuit Pattern Jury Instruction, available at: http://www.ca11.uscourts.gov/sites/default/files/courtdocs/clk/FormCivilPatternJuryInstruction.pdf. Only the Fifth Circuit appears to use a qualified immunity instruction. See

which a jury decided qualified immunity.  All of the defendants' cited authority for this instruction comes from decisions on motions for summary judgment.[6]

As the Second Circuit has explained:

> We have recognized that qualified immunity is in essence a legal decision whether on the basis of the law as it existed at the time of the particular incident, the lawfulness of the officer's conduct was reasonably clear or was a matter of doubt. Juries are hardly suited to make decisions that require an analysis of legal concepts and an understanding of the inevitable variability in the application of highly generalized legal principles. Moreover, such an analysis would seem to invite each jury to speculate on the predictability of its own verdict. *Stephenson*, 332 F.3d 68, 81 (2d Cir. N.Y. 2003) (quoting *Finnegan v. Fountain*, 915 F.2d 817, 821 (2d Cir. N.Y. 1990).

Careful attention should be paid to the last sentence by the Second Circuit in the quotation above, because it underlines that there are solid and practical reasons, beyond mere technicalities, why juries are not asked to decide probable cause in this Circuit. "[T]o invite each jury to speculate on the predictability of its own verdict" will confuse the jury.  *Stephenson*, 332 F.3d at 81.  Consider that the Agreed Probable Cause Instruction asks the jury to decide what a "person of reasonable caution" would do with the information the defendant officers possessed.  To decide qualified immunity, one

_____

Fifth Circuit Pattern Jury Instructions, § 10.3, available at: http://www.lb5.uscourts.gov/viewer/?/juryinstructions/Fifth/2014civil.pdf.   Unlike in the Fifth Circuit, in the Second Circuit the defendant has the burden of proof on qualified immunity.  *See Rogoz v. City of Hartford*, 796 F.3d 236, 247 (2d Cir. 2015) (stating that "the issue of qualified immunity" is "an affirmative defense on which Watson [a defendant officer] has the burden of proof either at trial or on a motion for summary judgment" (citing Gomez v. Toledo, 446 U.S. 635, 640 (1980)).

[6]      *Jenkins v. City of New York*, 478 F.3d 76 (2d Cir. 2007) (deciding motion for summary judgment); *Brosseau v. Haugen*, 543 U.S. 194 (U.S. 2004) (deciding motion for summary judgment); *Safford Unified Sch. Dist. #1 v. Redding*, 557 U.S. 364 (2009) (deciding motion for summary judgment); *Jaegly v. Couch*, 439 F.3d 149 (2d Cir. N.Y. 2006) (deciding motion for summary judgment); *Droz v. McCadden*, 580 F.3d 106, 109 (2d Cir. N.Y. 2009) (deciding motion for summary judgment); *Crenshaw v. City of Mount Vernon*, 372 Fed. Appx. 202 (2d Cir. N.Y. 2010) (deciding motion for summary judgment).

must decide – in essence -- if it was reasonable to be unreasonable.  This is something of a mindbender even for the experienced jurists to whom the Second Circuit has entrusted this task.  To ask a jury to make such a fine legal distinction is asking too much.

### B.    The Proposed Instruction Is Extremely Confusing

Even assuming that the jury should be given the task of deciding qualified immunity, the defendants' proposed instruction would not be a proper instruction for the jury.  It is long, confusing, redundant and conflicting with the probable cause instruction, and seemingly invites the jury to make purely legal determinations.

The confusion begins immediately, when the instructions state that "police officers are entitled to qualified immunity from liability if there was probable cause to arrest the plaintiff."  The instructions then provides yet another definition of probable cause (the fifth),[7] and then (repetitively) instructs: "Therefore, if you find that the Defendant police officers had probable cause to arrest the Plaintiff, you must find that the officers are entitled to qualified immunity from any liability to Plaintiff."  There is no citation for this instruction, and I doubt that any court has ever issued such an instruction.  If there was probable cause for the arrest, then there is no need for qualified immunity.  One can imagine the jury puzzling over this portion of the instruction, trying to reconcile it with other instructions on probable cause.

---

[7]    "Probable cause to arrest someone exists where the facts and circumstances within an officer's knowledge is sufficient in itself to warrant a person of reasonable caution in the belief that an offense has been or is being committed."  The definition is similar to, but not exactly the same as, the Agreed Probable Cause Instruction.  Whatever its merits, a fifth definition is not needed.

Worse than this, the proposed instruction contains **EIGHT** competing statements of the criteria for qualified immunity.[8]  If qualified immunity is a mindbender to begin with, jurors' minds will not merely bend, but break, when confronted with this instruction.  If the Court decides to issue an instruction on qualified immunity, it should not be this one.

The proposed instruction contains the phrase "arguable  probable cause," and (twice) asks the jury to rule for the defendants if arguable probable cause is present.  The Second Circuit has long warned that this phrase is subject to misinterpretation, repeatedly reminding attorneys and district judges that "'[a]rguable' probable cause should not be misunderstood to mean 'almost' probable cause."  *Gilles v. Repicky*, 511 F.3d 239, 246-247 (2d Cir. N.Y. 2007).  *See also, e.g., Schwartz v. Marcantonatos*, 567 Fed. Appx. 20,

---

[8]      ONE: "A police officer is entitled to qualified immunity when (1) his conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known, or (2) it was 'objectively reasonable' for him to believe that his actions were lawful at the time of the challenged act."  TWO: "If an officer facing Section 1983 liability did not clearly violate the Constitution, he should not be subject to liability."  THREE: "Defendant police officers are entitled to qualified immunity from liability if there was probable cause to arrest the plaintiff, or even if there was arguable probable cause for them to arrest Plaintiff."  FOUR: "As for arguable probable cause, arguable probable cause to arrest exits when a reasonable police officer in the same circumstances and possessing the same knowledge as the officer in question could have reasonably believed that probable cause existed in the light of well-established law."  FIVE: "A particular Defendant will be not be entitled to qualified immunity if, at the time of the complained of conduct, he should have known that his conduct was contrary to clearly established federal law."  SIX: "A particular Defendant is entitled to "qualified immunity" only if a reasonable police officer in that Defendant's position would not have been expected at the time to know that his conduct violated clearly established federal law."  SEVEN: "If you find that a reasonable police officer in the Defendant police officers' situation would have believed that his (the officer's) conduct was lawful, he is protected from liability by "qualified immunity."  EIGHT: "To summarize, if you are convinced by a preponderance of the evidence that the Defendant police officer's conduct did not violate clearly established federal law with respect to the plaintiffs' Section 1983 claims, then you must return a verdict in favor of the Defendant on that claim. This is so even though you may have previously found that the same Defendant violated the Plaintiff's federally protected rights."

23 (2d Cir. N.Y. 2014) (same); *Gonzalez v. City of Schenectady*, 728 F.3d 149, 157 (2d Cir. N.Y. 2013) (same). The phrase invites jury confusion. Jurors might be tempted to think, "Well, if we are arguing here in the jury room, then it must be 'arguable' probable cause." But the test is whether reasonable officers might disagree, not reasonable jurors.

The Court is much more likely to be able to observe these fine distinctions than a jury. The Court should decide probable cause, not the jury.

### C. The Proposed Instruction Fails to State that Defendants Have the Burden to Prove Qualified Immunity

The Second Circuit is clear: "the issue of qualified immunity" is "an affirmative defense on which [a defendant officer] has the burden of proof either at trial or on a motion for summary judgment." *Rogoz v. City of Hartford*, 796 F.3d 236, 247 (2d Cir. 2015) (citing *Gomez v. Toledo*, 446 U.S. 635, 640 (1980)). The defendants' proposed instructions say nothing about the burden of proof on the affirmative defense of qualified immunity except for an indirect reference in the last sentence of this portion of the charge: "If you find that the Defendant police officer has not proved that he is entitled to 'qualified immunity' on the Plaintiff's false arrest claim, then you should proceed to consider the issue of damages." If any instruction on qualified immunity is given, it must include a clear statement that qualified immunity is an affirmative defense on which each defendant bears the burden of proof.

To summarize, the Second Circuit is clear that "the ultimate determination of whether the officer's conduct was objectively reasonable is to be made by the court," not the jury. *Zellner v. Summerlin*, 494 F.3d 344, 368 (2d Cir. N.Y. 2007). No qualified immunity instruction – especially not the defendants' proposed instruction – should be given.

## VII. Defendants' Instructions on Determination of Credibility Are Incorrect and Incomplete

The defendants have proposed an instruction on the jury's determination of the credibility of witnesses. The plaintiff also proposed such an instruction. (see Plaintiff's Proposed Instructions ¶¶ 35-41). The plaintiff objects to two particular aspects of the defendants' proposed instruction. These are: 1) the failure to include an instruction that the jury that police witnesses are not inherently more credible than non-police witnesses, and 2) the defendants' inclusion of an erroneous and misleading charge concerning prior inconsistent statements. The plaintiff generally contends that the plaintiff's instructions are superior, and were submitted earlier, and the plaintiff's instructions on this aspect of the jury's task should be the one adopted by the Court.

### A. Instruction that that Police Witnesses Are Not Inherently More Credible

The defendants' proposed instruction lacks an instruction to the jury that police witnesses should not be regarded as more credible simply because they are police. The plaintiff respectfully requests that the Court include the plaintiff's proposed instruction on this issue:

> Lastly, the testimony of a law enforcement officer should be considered by you just as any other evidence in this case, and in evaluating an officer's credibility you should use the same guidelines which you apply to the testimony of any witness. You should not give either greater or lesser credibility to the testimony of a witness merely because he or she is a law enforcement officer. (Plaintiff's Proposed Jury Instructions, ¶ 41).

In a juror, the belief that a police officer witness is inherently more credible than a non-police officer witness is a kind of bias. *See Hughes v. United States*, 258 F.3d 453,

456, 461 (6th Cir. Mich. 2001).[9]  *Accord United States v. Jones*, 193 F.3d 948, 949, 951 (8th Cir. Mo. 1999) (holding that a juror who believed that police officers are "less likely to be untruthful or to lie" was "impermissibly biased," requiring a new trial); *People v. Hausman*, 285 A.D.2d 352, 355 (N.Y. App. Div. 1st Dep't 2001) (same).

If it is impermissible bias for a juror to give greater credit to a police officer's testimony solely because of that officer's profession, then it follows that it is proper to instruct a jury not to indulge in this kind of bias. *See Robinson v. Griffin*, 2014 U.S. Dist. LEXIS 97804, *48 (S.D.N.Y. Apr. 24, 2014), *adopted by* 2014 U.S. Dist. LEXIS 96828 (S.D.N.Y., July 16, 2014) ("In this case, the jury was properly instructed that they were not required to give any more weight, or to find any more credible, the testimony of police officers than other witnesses simply because of the officers' occupations.") (applying New York State law, ruling on instructions in a criminal trial).[10]

For this reason, the plaintiff respectfully requests that the plaintiff's proposed jury instruction, set forth in paragraph 41 of the plaintiff's proposed instructions, be included in any instruction the Court may give on issues of witness credibility.

### B.    Instruction on Prior Inconsistent Statements

The defendants have asked for an instruction concerning prior inconsistent statements.  The requested charge is:

> With respect to a prior inconsistent statement of a witness, you are instructed that an inconsistency may be utilized by you solely for the purpose of determining the credibility of that witness, subject to the

---

[9]     In Hughes, the defendant's trial attorney failed to object to a potential juror who, among other things, refused to answer the question of whether "they would find a witness more credible if the witness were a police officer."  *Id.* at 453.  The court's finding that this juror was a biased juror was the basis for its grant of a new trial.

[10]    In the limited time available for legal research this close to trial, counsel for the plaintiff has not found a case that ruled on the propriety of this instruction )either favorably or unfavorably) in the context of a civil trial.

following exception: if the inconsistency appears in a pre-trial deposition (which, of course, would have been taken under oath and subject to cross examination), then such inconsistent statement may also be considered, to the extent you deem appropriate, as "substantive evidence" - in other words, for the truth of the matters asserted in the earlier statement.

The plaintiff objects to the requested charge.

First, the proposed charge is **not** a complete or accurate statement of the rules applicable to prior statements. For example, the Federal Rules treat prior statements of a non-party witness differently from those of a witness who is a party. While it is generally true that a statement that is made out of court is hearsay (*See* Fed. R. Evid. § 801(c)). Rule 801(d)(2) states that a **party**'s prior statement is **not hearsay**, if "the statement is offered against an opposing party," and the statement was either made by, or is attributable to, the opposing party. Thus, a party's prior statement (unlike that of another witness), is exempt from the general rule excluding hearsay (Fed. R. Evid. § 802).[11] Furthermore, Rule 803 establishes almost two dozen other exceptions to the hearsay rule, several of which could be applicable to a witness's prior statement. This instruction would lead jurors to erroneously exclude such evidence.

Second, the charge relates to nuances of the Federal Rules of Evidence which a jury is unlikely to understand. The instruction relies on the jurors to reach a correct understanding of terms of art like "prior inconsistent statement" (seemingly simple, but concerning which there is much interpretive case law), "pre-trial deposition," "substantive evidence" and "for the truth of the matters asserted." If the instruction addressed a critical issue, further explanatory instructions could remedy this problem.

---

[11]     A party's prior statement which is not hearsay may or may not be admissible (*See* Fed. R. Evid. §§ 401-403, etc.), but the statement's status as a prior out of court statement – if made by a party and presented by the opponent – is not a valid basis for exclusion of the evidence.

However, the issue is marginal and the jury's attention will already be sorely tested by he duration and variety of the substantive instructions which **must** be given.

Finally, there is a far better solution near to hand. The Court can instruct the jury on particular statements as they are discussed in testimony, at the time they are discussed, and let the jury know whether such statement is to be considered for the truth of the matter asserted and as substantive evidence, or should be considered merely for its consistency or inconsistency with prior testimony. This is much less likely to confuse the jury, and much more likely to accomplish the underlying goal of ensuring that the jury does not give evidentiary consideration to material presented purely for impeachment purposes.

## VIII.  Instruction on the State Law Claim of False Arrest is Unnecessary

The instruction on the state law claim of false arrest in unnecessary and uninformative to the jury. The parties appear to agree that, at least from the jury's perspective, the elements of a claim of false arrest under federal law are essentially the same as the elements of false imprisonment under New York State law. The instruction, with its technical reference to pendent claims, is therefore unnecessary. The jury can simply decide whether the plaintiff was falsely arrested.

DATED:  New York, N.Y.
     June 20, 2016

               Respectfully submitted,

               _____//s//_____
               David A. Thompson, Esq.
               Stecklow & Thompson
               *Attorneys for the Plaintiff*
               217 Centre Street, 6th Floor
               New York, N.Y. 10013
               Phone: (212) 566-8000

Fax:    (212) 202-4952
dave@sctlaw.nyc