UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
TAMIKO GARRIS-RIVERS,　　　　　　　　　　　　Index No. 13-cv-9034(GBD)(RLE)

　　　　　　　　　　　　Plaintiff,

　　-against-

THE METROPOLITAN TRANSPORTATION
AUTHORITY, THE METROPOLITAN
TRANSPORTATION AUTHORITY POLICE
DEPARTMENT, THE LONG ISLAND RAIL ROAD,
MTAPD POLICE OFFICER ELOISE BRODERICK,
MTAPD POLICE OFFICER GREG BUEHLER, MTAPD
POLICE OFFICER CHRIS MCDERMOTT, MTAPD
POLICE OFFICER JOUAN OLIVARES, MTAPD
POLICE OFFICER ROBERT RAU, MTAPD POLICE
OFFICER MATTHEW REILLY, MTAPD POLICE
OFFICER MICHAEL HAGGERTY, MTAPD POLICE
OFFICER SHEK, MTAPD POLICE OFFICER "JOHN
DOE" ALSO KNOWN AS POLICE OFFICER "WILLETT",
LIRR EMPLOYEE BENJAMIN GARDNER, and
LIRR EMPLOYEE JOHN MANCINI,

　　　　　　　　　　　　Defendants.
------------------------------------------------------------------X

# MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR JUDGMENT AS A MATTER OF LAW, OR, ALTERNATIVELY, FOR A NEW TRIAL

　　　　　　　　　　　　　　　　　　　Bee Ready Fishbein Hatter & Donovan, LLP
　　　　　　　　　　　　　　　　　　　By: Andrew K. Preston
　　　　　　　　　　　　　　　　　　　170 Old Country Road, Suite 200
　　　　　　　　　　　　　　　　　　　Mineola, New York 11501
　　　　　　　　　　　　　　　　　　　(516) 746-5599
　　　　　　　　　　　　　　　　　　　Attorney for Defendants

## PRELIMINARY STATEMENT

Defendants submit this memorandum of law in opposition to Plaintiff's motion for judgment as a matter of law or, alternatively for a new trial. For the reasons discussed herein, This Honorable Court should not disturb the jury verdict finding that Plaintiff failed to prove by a preponderance of the evidence that Defendant Robert Rau falsely arrested the Plaintiff Tamiko Garris-Rivers on May 6, 2013.

## STATEMENT OF FACTS

The Defendants do not recite the evidence presented at trial because This Honorable Court presided over same. Instead, we respectfully refer the Court to the transcript of proceeding annexed to Plaintiff's declaration in support of the instant application. (DE: 123).

## ARGUMENT

### POINT I

**Plaintiff's Motion Pursuant to Rule 50(b) of the Federal Rules of Civil Procedure for Judgment as a Matter of Law Must be Denied.**

Rule 50(b) provides the mechanism for the court to re-consider a movant's Rule 50(a)(2) motion made at trial after the presentation of evidence but before submission to a jury. The standard governing motions for judgment as a matter of law pursuant to Rule 50 is well established. See *Galdieri–Ambrosini v. Nat'l Realty & Dev. Corp.*, 136 F.3d 276, 289 (2d Cir.1998) A Rule 50 motion "may only be granted if there exists such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture, or the evidence in favor of the movant is so overwhelming that reasonable and fair-minded [persons] could not arrive at a verdict against [him]." *Kinneary v. City of New York*, 601 F.3d 151, 155 (2d Cir.2010) (quoting *Brady v. Wal–Mart Stores, Inc.,* 531 F.3d 127, 133 (2d Cir.2008)). In considering the motion, "[a]

court 'must give deference to all credibility determinations and reasonable inferences of the jury,' and may not weigh the credibility of witnesses or otherwise consider the weight of the evidence." *Caruolo v. John Crane, Inc.,* 226 F.3d 46, 51 (2d Cir.2000) (quoting *Galdieri–Ambrosini*, 136 F.3d at 289); see also *This is Me, Inc. v. Taylor*, 157 F.3d 139, 142 (2d Cir.1998) (The issue on a Rule 50 motion is whether " 'the evidence is such that, without weighing the credibility of the witnesses or otherwise considering the weight of the evidence, there can be but one conclusion as to the verdict that reasonable [persons] could have reached.' ") (quoting *Cruz v. Local Union No. 3, Int'l Bd. of Elec. Workers*, 34 F.3d 1148, 1154–55 (2d Cir.1994)).

In the instant action, there is not "one conclusion as to the verdict that reasonable [persons] could have reached" *Id.* The Plaintiff brought suit alleging false arrest. A trial was held where Defendants raised the affirmative defense of probable cause to support that arrest. The Court charged the jury with a lengthy instruction regarding theft of services and probable cause:

> Now, the defendant has the burden of proving the existence of probable cause. Whether probable cause existed depends upon whether a reasonably prudent person would have believed that the plaintiff had committed theft of services on the basis of the facts known to the defendants at the time of the arrest and detention or what they reasonably believed to be true. The fact that the defendants personally believed that plaintiff had committed theft of services is not enough if a reasonably prudent person would not have believed that to be the case.
> Now, a person is guilty of theft of services when, with intent to obtain railroad service without payment of the lawful charge for such service, that person obtains or attempts to obtain such service by stealth, deception or by unjustifiable failure or refusal to pay. If you find that the facts reasonably appeared to the defendants as they claimed and that, based on those facts, a reasonably prudent person would have believed that the plaintiff had committed theft of services, your finding will be that the defendant had probable cause for believing that the plaintiff committed theft of services and you need proceed no further.
> If a police officer has probable cause at the time of the initial arrest, the officer is not required to conduct further investigation to eliminate the possibility that the person arrested is innocent. However, if the officer learns new facts which conclusively show that the person arrested did not commit a crime, the police officer no longer has probable cause to further detain or confine the arrested individual.
> (DE: 123-4 pp131-133).

The defendants objected to the last sentence of this instruction as inapplicable to the instant case because this is not a case alleging false imprisonment; rather, it is a case alleging false arrest. (DE: 123-3 p. 404) Notwithstanding, the Court provided that instruction to the jury, which still returned a verdict for the defense.

We still contend that Plaintiff's argument, as well as the Court's jury instruction, are inapplicable to the case at bar. In the instant post-trial motion, Plaintiff cites *Lowth v. Town of Cheektowaga* 82 F.3d 563 (2d Cir. 2003) for the proposition contained in the last quoted sentence in the Court's jury instruction, namely "if the officer learns new facts which conclusively show that the person did not commit a crime, the police officer no longer has probable cause to further detain or confine the arrested individual". The *Lowth* case does not stand for the proposition for which it is cited. Indeed, it provides that courts "evaluating probable cause for an arrest must consider those facts available to the officer at the time of the arrest and immediately before it" Id, 569. The question of law addressed in *Lowth* was whether the officers in that case were guilty of **malicious prosecution**. Malicious prosecution is not at issue in the instant action.

*Lowth* is inapplicable because the case at bar does not involve allegations of malicious prosecution, *Lowth* also does not stand for the proposition that probable cause can somehow be vacated forcing release of an individual who Police Officers had already arrested with probable cause to do so, as Plaintiff claims. This is true because "the existence, or lack, of probable cause is measured at a different point in time in a malicious prosecution action than a false arrest action". *Mejia v. City of New York*, 119 F.Supp.2d 232 (EDNY 2000). Moreover, even if *Lowth* were applicable to the case at bar, the court affirmed the lower court's granting of summary judgment to the defendants because the officers' belief that the subject had committed a crime was "not clearly unreasonable". Id, 572. Indeed, the question to be decided at trial in the case at bar was whether the

officers had probable cause for Plaintiff's arrest based upon "those facts available to the officer at the time of the arrest and immediately before it" *Lowth,* 569. The defendants produced multiple witnesses who testified at trial that the Plaintiff did not comply with a Police Officer's lawful order to produce a ticket for travel in the time period leading up to Plaintiff's arrest. A reasonable jury could therefore conclude –as this jury did—that the Officers had probable cause to arrest the Plaintiff.

The second case which Plaintiff cites for the proposition that she should have been released after her spouse pass was found in a search incident to arrest is *Coleman v. City of New York* 177 F.Supp.2d 151 (SDNY 2001). Similarly to *Lowth*, this case addresses probable cause to **prosecute,** not arrest. The only semblance of language in *Coleman* which is mirrors the jury instruction at issue is contained in the section of the *Coleman* decision entitled "Malicious Prosecution", and provides that:

> Under New York law, even if there was probable cause to arrest an individual, that does not necessarily mean there is probable cause to prosecute him. If subsequent to an individual's arrest, new facts were to arise which made it apparent to investigators that charges against the individual were groundless, probable cause would no longer exist. Thus, the Court must evaluate whether Defendants had probable cause to prosecute at the time the prosecution was initiated.
> *Coleman,* 177 F. Supp 2d 151, 158

The case at bar alleges false arrest and does not contain a malicious prosecution claim. Indeed, the City of New York would have been responsible for the prosecution of this action, and the City was dismissed from this action by stipulation dated May 9, 2014. (DE: 17) Citations to *Lowth* and *Coleman* are both inapplicable and misleading. The facts which are relevant in this false arrest case are those available to the officers at the time of Plaintiff's arrest and the time period immediately before it; information available to officers *after* plaintiff was already arrested is irrelevant.

There is ample testimony in the record for the jury to conclude that Detective Rau (who, at the time of Plaintiff's arrest, held the title of Police Officer) had probable cause to believe the Plaintiff

4

committed the crime of theft of services at the time he arrested her. Detective Rau testified that he handled hundreds of fare disputes over nine years of patrol duty assignment in Jamaica station, and that he had occasion to make arrests during some of those fare disputes. (DE:123-1, pp 48-49). Detective Rau testified that his understanding of probable cause is "sufficient reason, based upon evidence, to believe that a crime was in fact committed" (DE:123-1, p.49). Detective Rau further testified that he believed that he witnessed the Plaintiff commit the crime of theft of services when she refused to provide proof of fare upon his lawful demand. (Id, pp. 50-51).

Plaintiff argues that the facts of this case satisfy the standard outlined in *Leblanc-Sternberg v. Fletcher*, 67 F.3d 412 (2d Cir. 1995) that "reasonable and fair minded men could not arrive at a verdict against [the Plaintiff]". Detective Rau testified that he believed Plaintiff's failure to produce a ticket when lawfully demanded by a Police Officer constituted theft of services. (DE: 123-1 p. 50) Police Officer Jouan Olivares also provided testimony to explain why he holds the same belief. (DE:123-3 p.60). Officer Olivares testified that he heard the Plaintiff refuse Officer Rau's lawful demand for her to produce a pass for travel, and that upon the refusal, he believed he had probable cause to arrest her. (DE: 123-3 p. 60). Regarding his understanding of whether Plaintiff committed a crime in his presence, Officer Olivares testified as follows:

> Q. Is it your understanding of the crime of theft of services that if someone has a valid fare but refuses to show it, that that still satisfies the requirement for probable cause?
> Mr. Thompson:  Objection, your Honor
> The Court:  I will let you cross examine on it. You can answer
> Q. You can answer
> A. Yes. Once theft of service – she is offered the opportunity [to display the pass] three times. At that point, the crime has already been committed, in my presence.
> Q. And after that crime was committed, if she then offers to pay, does that change the fact that a crime was committed in your presence?
> A. No, it does not.
> (DE: 123-3 pp. 62-63)

5

This testimony alone provides sufficient evidence for a reasonable and fair minded jury to arrive at a verdict against the Plaintiff.

Plaintiff argues that she could not possibly be guilty for theft of services because she possessed a spouse pass – even though she failed to show it. This argument fails for a number of reasons. In this case, the jury heard testimony from Long Island Rail Road conductor Jon Mancini that he approached the Plaintiff with his standard request of "Tickets, please". (DE: 123-2 p. 13) After Conductor Mancini was unable to validate the Plaintiff's ticket, he reported a fare dispute to the Police. (DE: 123-1 p.65)

> Where, as here, the complainant and the accused have no prior relationship, the arresting officer has no duty to embark upon a collateral investigation into the credibility of the complainant. Such a requirement would place an unwarranted burden upon those charged with the responsibility to enforce the law. It is the function of the factfinder, not the arresting officer, to decide whether the complainant's story is credible. Once officers possess facts sufficient to establish probable cause, they are neither required to nor allowed to sit as prosecutor, judge or jury. Their function is to apprehend those suspected of wrongdoing, and not to … determine guilt, through a weighing of the evidence.
> *Feinberg v. City of New York* 2004 WL 1824373 (SDNY 2004)

When Plaintiff failed to display the pass to Conductor Mancini, she had committed the crime of theft of services and Police Officer Rau had probable cause to arrest her based on Conductor Mancini's complaint because he believed Conductor Mancini's complaint to be credible. The Plaintiff confirmed the fact that Police Officer Rau had probable cause to arrest her when she disobeyed his order for her to produce the pass.

## POINT II

### GRANTING A NEW TRIAL WOULD BE IMPROPER

Plaintiff also seeks a new trial pursuant to Fed. R. Civ. P 59(a). Under Second Circuit case law treatment of Rule 59(a), a "motion for a new trial should ordinarily be denied unless the trial

court is convinced that the jury has reached a seriously erroneous result or that the verdict is a miscarriage of justice" *Harewood v. Braithwaite* 64 F.Supp.3d 384 (EDNY 2014 (citing *Atkins v. New York City* 143 F.3d 100 (2d Cir. 1998))). It is especially "proper for the court to refrain from setting aside the verdict and granting a new trial" where, as here, "the resolution of the issues depended on assessment of the credibility of the witnesses." *Id*, p. 404. The Jury heard testimony from three police officers who witnessed the incident. The Jury also heard testimony from a Long Island Rail Road Transportation Manager and a Long Island Rail Road Conductor that the Plaintiff failed to show her pass, and the credibility determinations made by the jury resulted in a defense verdict. For these reasons, as well as those articulated in Point I, *supra*, the granting of a new trial in this matter would be improper.

## POINT III

## QUALIFIED IMMUNITY IMMUNIZES ALL INDIVIDUALLY NAMED DEFENDANTS

Qualified immunity is not a defense to liability, but rather immunity from a lawsuit. *See Hunter v. Bryant*, 502 U.S. 224, 227 (1991); *Loria v. Gorman*, 306 F.3d at 1281. Government officials performing discretionary functions are entitled to qualified immunity from civil damages liability as long as their conduct did not violate clearly established constitutional rights, or it was objectively reasonable for such government officials to believe that their acts did not violate those rights. *See*, *e.g.*, *Anderson v. Creighton,* 483 U.S. 635, 638-39 (1987) (internal citations omitted); *Loria*, 306 F.3d 1271 at 1281; *Danielak v. City of New York*, 02-CV-2349, 2005 U.S. Dist LEXIS 40901, at *25-*26 (E.D.N.Y. 2005). If the Court determines that a government official's conduct did not violate a constitutional right, no further inquiry is needed and the government official is entitled to qualified immunity. *Loria*, 306 F.3d at 1281. However, if the Court determines that the government official's actions violated a constitutional right, then the Court must decide whether the

constitutional right was clearly established at the time of the alleged violation. *See Loria*, 306 F.3d at 1281. The standard is one of objective reasonableness. *See Anderson,* 483 U.S. at 639; *Loria*, 306 F.3d at 1282; *Danielak*, 2005 U.S. Dist LEXIS, at *26*.

The availability of the "qualified immunity" defense depends on whether a reasonable government official could have believed his action to be lawful, in light of clearly established law and the information possessed. *See Anderson,* 483 U.S. at 641; *Hunter v. Bryant*, 502 U.S. at 227 ("where the [government official] acted reasonably under settled law in the circumstances, not whether another reasonable, or more reasonable, interpretation of the events can be constructed [] years after the fact."); *Loria*, 306 F.3d at 1281; *Danielak*, 2005 U.S. Dist LEXIS 40901, at *27-*29. A government official is entitled to qualified immunity if he reasonably believed that his actions did not violate the plaintiff's rights, even if that belief was mistaken. *See Anderson,* 483 U.S. at 641 (remanded to determine whether FBI agents could have believed that warrantless search of a home comported with the constitution, even though it did not); *Hunter*, 502 U.S. at 227-29 (finding that the Federal agents were "entitled to qualified immunity because their decision was reasonable, even if mistaken."); *Loria*, 306 F.3d at 1282; *Danielak*, 2005 U.S. Dist LEXIS, at * 28-29.

Plaintiff's arrest was predicated upon Defendant Mancini's objectively reasonable attempt to ensure that Plaintiff was in possession of a valid train pass, and Plaintiff's refusal to produce same. As discussed above, each of the Police Officers who participated in the arrest of Plaintiff testified that they believed she was guilty of theft of services when she refused to display a valid pass for travel. The jury agreed that the officers had probable cause to arrest the Plaintiff for Theft of Services. This is why the jury returned a verdict for the defense after several hours of deliberation. Indeed, during the deliberation process, the jury asked the Court to send a copy of the theft of services statute into the deliberating chamber. It was objectively reasonable for police officers to believe that Plaintiff had

committed the offense of theft of services as Mancini described it to them, as well as in light of their own observations. *See Simpson v. City of New York*, 12-cv-6755, 2015 WL 2359251 (S.D.N.Y. 2013). Therefore, Qualified Immunity immunizes all individually named defendants.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that, pursuant to Federal Rule of Civil Procedure 56, the Court issue an order granting the Defendants summary judgment and directing that all the claims in the Plaintiff's complaint be dismissed with prejudice, along with such other relief as the Court deems just and proper.

Dated: Mineola, New York
      August 22, 2016

                        Respectfully yours,
                        **BEE READY FISHBEIN**
                        **HATTER & DONOVAN, LLP**

              By:      /S/_____
                      Andrew K. Preston (AP-5857)
                      *Attorneys for Defendants*
                      170 Old Country Road, Ste. 200
                      Mineola, New York 11501
                      T. 516-746-5599 – F. 516-746-1045
                      File No.: 6178-1307

**TO:**    **STECKLOW COHEN & THOMPSON**
        By: **DAVID A. THOMPSON (DT 3991)**
        *Attorneys for Plaintiff*
        10 Spring Street, Suite 1
        New York, New York 10012
        T. 212-566-8000 – F. 212-202-4952